IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**(Southern Division)**

| | |
|---|---|
| ESTATE OF KE ZHENGGUANG,<br><br>       Petitioner<br>  -against-<br><br>YU NAIFEN STEPHANY<br>(a/k/a STEPHANY YU,<br>a/k/a STEPHANY NAIFEN YU,<br>a/k/a STEPHANY N. DOMBROWSKI),<br><br>       Respondent. | Case No. 8:18-cv-03546-PWG<br><br>**AMENDED PETITION TO<br>RECOGNIZE AND ENFORCE<br>FOREIGN ARBITRAL AWARD** |

Petitioner, by and through its undersigned attorneys, for its Amended Petition to Recognize and Enforce Foreign Arbitral Award against Respondent, alleges as follows:

**NATURE OF ACTION**

1. This is a proceeding to recognize and enforce a foreign arbitral award. Petitioner has commenced this proceeding pursuant to the Convention on the Enforcement and Recognition of Foreign Arbitral Awards (the "**New York Convention**"), as implemented in Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C §§ 201, *et seq*. A final arbitral award was rendered in favor of Petitioner and against Respondent on February 23, 2018 (the "**Final Arbitration Award**") in Hong Kong by the Hong Kong International Arbitration Center ("**HKIAC**"). The Final Arbitration Award contained nine enumerated, specific Orders.

2. The parties subsequently submitted post-arbitration arguments to HKIAC in clarification proceedings ("**Clarification Proceedings**") regarding certain of the enumerated Orders contained in the Final Arbitration Award. On December 19, 2018, the Arbitral Tribunal

issued an Interpretation, Correction, and Supplementation of Arbitration Award (the "**Clarification Award**").

3. Although Petitioner in its initial petition sought only recognition and enforcement of Order 9 of the Final Arbitration Award (Order 9 was not subject to the Clarification Proceedings), the Clarification Award has since been issued and it is now appropriate to seek relief based on the full set of Orders contained therein.

4. Petitioner now amends its petition to seek an order from this Court under § 207 of the Federal Arbitration Act recognizing and confirming the Final Arbitration Award in its entirety, including all nine enumerated Orders, and entry of judgment thereon pursuant to 9 U.S.C. § 13. The Final Arbitration Award meets the criteria for recognition and enforcement under the New York Convention, and none of the specific enumerated, limited grounds for non-enforcement applies.

**PARTIES**

5. Petitioner is the Hong Kong-domiciled Estate of Ke Zhengguang (referred to as the "Second Applicant" in the Final Arbitration Award). The Administrators of the Hong Kong-domiciled Estate of Ke Zhengguang are Mdm. Zhang Yuejin (widow to Mr. Ke Zhengguang) and Mdm. Ke Yeying (daughter of Mr. Ke Zhengguang). Both Administrators are domiciled in Hong Kong; there also exists an Estate of Mr. Ke Zhengguang which is domiciled in the People's Republic of China (PRC) and is not a party either to this proceeding or to the Final Arbitration Award.

6. Respondent Yu Naifen Stephany (a/k/a Stephany Yu, a/k/a Stephany Naifen Yu, a/k/a Stephany N. Dombrowski) is, upon information and belief, a U.S. citizen who

resides at 15400 River Road, Germantown, Maryland 20874.  Ms. Yu ("**Respondent**") is referred to as the "Second Respondent" in the Final Arbitration Award.

## JURISDICTION AND VENUE

7. This Court has original and subject-matter jurisdiction over this action pursuant to 9 U.S.C. § 203, because this proceeding seeks the recognition and enforcement of a foreign arbitral award that falls under the New York Convention.

8. This Court has personal jurisdiction over the Respondent, because the Respondent is a resident of Maryland.

9. Venue is proper under 9 U.S.C. § 204 because the Respondent resides within the District of Maryland and because the Final Arbitration Award and this proceeding fall under the New York Convention. Venue is also proper under 28 U.S.C § 1391(b)(1) because the Respondent is a resident of the District of Maryland and/or under 28 U.S.C § 1391(b)(3) because Respondent is subject to this Court's personal jurisdiction.

## BACKGROUND

**The Agreement to Arbitrate**

10. The HKIAC arbitration proceedings and the Final Arbitration Award stem from business disputes that arose under an agreement between and among certain parties including Mr. Ke Zhengguang and Respondent entitled "Agreement on the Implementation of 'The Preliminary Share Restructuring Agreement,'" executed on April 28, 2010 (the "**4.28.10 Agreement**").

11. The 4.28.10 Agreement provides as follows, at Article 4.2:

> Any conflicts, disputes and claims resulted from this agreement or related to this agreement, breach of contract, termination of contract and void of contract (hereafter referred to as "disputes") shall be dealt with through amicable negotiations by all Parties. If negotiation fails, any Party is entitled to submit the

3

dispute to the Hong Kong International Arbitration Centre for arbitration. The arbitration is to be conducted in Chinese. The arbitration tribunal is to consist of three arbitrators. Oasis Investment and the Controlling Shareholders are entitled to nominate one arbitrator, the Non-controlling Shareholders are entitled to nominate another arbitrator, and the third arbitrator, who will be the chief arbitrator, is to be nominated by the Chairperson of the Hong Kong International Arbitration Centre. The outcome of arbitration is final and binding on all Parties.

12. Another provision of the 4.28.10 Agreement, Article 2.2.1, set forth the parties' payment obligations in Hong Kong dollars, and further set forth those obligations in the "RMB" equivalent of Hong Kong dollars. The RMB is the renminbi, the official currency of the PRC. As explained further below, RMB-denominated payments can only be made in certain geographic sites and through certain financial intermediaries. Such RMB-denominated obligations are commonly converted to Hong Kong dollars, as in the 4.28.10 Agreement, or to U.S. dollars.

**The Arbitration Proceedings in Hong Kong**

13. A Notice of Arbitration was filed on February 22, 2013 to the HKIAC in Hong Kong to resolve those certain disputes that arose under the 4.28.10 Agreement.

14. The Arbitral Tribunal was officially constituted on June 4, 2013.

15. Arbitration pretrial proceedings took place from June 4, 2013 to May 16, 2017.

16. After Mr. Zhengguang's death in late 2013, Mdms. Zhang Yuejin and Ke Yeying were granted letters of administration by the High Court of Hong Kong to administer the Hong-Kong-domiciled Estate of Ke Zhengguang, and the Arbitral Tribunal thereby permitted this Hong-Kong-domiciled Estate to join the Arbitration. Neither Mr. Zhengguang's separate, PRC-domiciled Estate, nor his separate, BVI-domiciled Estate, were permitted by the Arbitral Tribunal to join the arbitration.

17. The arbitration hearing was commenced on May 16, 2017 and was held on consecutive days in Hong Kong until May 25, 2017. On August 8, 2017 the Arbitral Tribunal held a further hearing for closing arguments.

**The Final Arbitration Award**

18. On February 28, 2018, the Arbitral Tribunal issued the Final Arbitration Award "after carefully reviewing and evaluating the evidence, witness statements, written statements and other documents provided by the parties concerned."

19. The Final Arbitration Award, at Chapter VIII, contains a "Ruling and Order of the Arbitral Tribunal" which contains the following nine separately enumerated Orders:

1. (Within 4 weeks from the day this ruling is passed) The Respondents are to cause Greencourt Real Estate to sign a "Shanghai Real Estate Sale and Purchase Contract" for the Jiuting Stores with the Applicants or a third party appointed by the Applicants, and transfer the ownership of the Jiuting Stores to the Non-controlling Shareholders or a third party appointed by them. (Article 3.1 of 4.28 Agreement)

2. (Within 4 weeks from the day this ruling is passed) The Respondents are to cause the First Respondent to appoint a third party to sign the "Shanghai Commercial Housing Presale Contract" for A2-type villas with SJHC, and complete the relevant presale registration procedures. (Article 3.2 of 4.28 Agreement)

3. All parties are ordered to settle and pay the debts of SJHC and the First Respondent within 4 weeks from the day the ruling is passed based on Paragraphs 304 to 324 of this ruling. (Article 3.6 of 4.28 Agreement)

4. The Applicants are ordered to submit an audit report to the relevant approval authorities within 2 months from the day the ruling is passed.

5. (Within 2 months from the day this ruling is passed) The First Respondent is ordered to arrange for and cause Shibang Company to acquire the 80% equity interest of SJHC held by the First Respondent's subsidiary Greencourt Properties. (Article 2.3.1 of 4.28 Agreement)

6. (Within 2 weeks from the day this ruling is passed) The First Respondent and Non-controlling Shareholders are to sign, and the First Respondent is to cause their subsidiary, Greencourt Properties, to jointly sign, The Equity Purchase Option

5

> Agreement and Entrustment Agreement concerning Shibang Company. (Articles 2.3.1 and 2.3.2 of 4.28 Agreement)

7. (Within 2 months from the day this ruling is passed) The First Respondent is ordered to cause Oasis Kechuang to transfer its 20% equity in SJHC to Luhao Trading.

8. (Within 4 weeks after the execution of the orders numbered 1-6 above) The Respondents are to pay the final amount after making the adjustment set out in Article 2.2.1(4) of the 4.28 Agreement and in Paragraphs 232(4)(a)(b)(c) and 233 of this ruling.

9. The second respondent, third respondent, and fourth respondent are jointly and severally ordered to pay RMB10,346,211 to the applicants as compensation for their losses (using August 8, 2017 as reference date for calculation of losses).

**Clarification Proceedings**

20. In April 2018, the Estate of Ke Zhengguang submitted an application to interpret/correct/supplement the Final Arbitration Award.

21. Although the Arbitral Tribunal considered a number of corrections in the Clarification Proceedings, ultimately the Clarifications Award did not make any substantive changes to the Final Arbitration Award, only making a procedural change to Order 2 and a name change in Order 7 (both such changes were unopposed).

22. On December 19, 2018, the Arbitral Tribunal issued the Clarification Award, finalizing all nine Orders of the Final Arbitration Award.

**Respondent's Failure to Comply with the Final Arbitration Award**

23. Respondent has refused to comply with nearly all of her obligations under the nine Orders of the Final Arbitration Award, including both the monetary payment obligation to Petitioner under Order 9, and other, specific-performance Orders contained in the Final Arbitration Award.

24.     As an initial matter, Clauses 2.1.4[1] and 2.2.1[2] of the underlying 4.28.10 Agreement state that the cash components of the agreement are to be paid in Hong Kong and denominated in Hong Kong dollars.  That Clause goes on to give the actual value to be paid in the equivalent RMB figures.  (This practice of using equivalent RMB as a value currency is very common in Hong Kong.)  The Final Arbitration Award used RMB as the currency of payment just as the 4.28.10 Agreement did – to calculate the actual value of the payment to be made.  Thus, the underlying payments called for by the 4.28.10 Agreement were always to be paid in Hong Kong dollars.

25.     Payment in RMB, rather than Hong Kong dollars, is subject to additional considerations.  Petitioner is the Hong Kong-domiciled Estate of the decedent, Ke Zhengguang.  As a Hong Kong resident, Petitioner is unable to negotiate any RMB-denominated payments that are drawn on a PRC bank.  This is true because neither of the Estate's administrators is a citizen of the PRC or even resides in the PRC.  Furthermore, checks or wires issued in RMB from a mainland PRC financial institution cannot be cashed or sent to banks within Hong Kong.

---

[1] Clause 2.1.4 of the 4.28.10 Agreement provides: "All parties agreed that the cash portion of the repurchase consideration shall be divided into two equal portions in Hong Kong dollars in Hong Kong . . . ."

[2] Clause 2.2.1 of the 4.28.10 Agreement provides:

2.2.1 All Parties agree that the cash component of the repurchase is to be paid according to the following schedule:

(I) Hong Kong dollars equivalent to RMB 80 million ("1st" Payment") is to be paid within 10 days once the following prerequisites are met:

[. . . .]

(2) Hong Kong dollars equivalent to RMB 20 million ("2nd Payment") should be paid before 30 June 2011.

(3) The remaining amount equivalent to RMB 150 million in Hong Kong dollars ("3rd Payment"), being the final payment subject to those adjustments agreed to or confirmed by all Parties under provisions of Article (4) below) is to be paid by 31 December 2012 once the following prerequisites are met [. . . .]

Petitioner has advised Respondent that Petitioner is willing and able to accept payment in RMB, but that such payment must be made through a check that can be deposited into a bank within Hong Kong. Respondent has refused to do so.

26. Given this background, Respondent's most recent gesture towards payment of Order 9 was plainly made in bad faith. In late December 2018, Respondent offered payment via a mainland-PRC check denominated in RMB (with a 10-day expiration, nonetheless). Respondent knew that Petitioner was completely unable to negotiate or deposit this check, but nevertheless issued it in order to create a false appearance of compliance with Order 9 of the Final Arbitration Award.

## LEGAL BASIS FOR PETITION

27. Under the New York Convention, parties may seek recognition and enforcement of foreign arbitral awards in the United States, where the award was made in the territory of another Contracting State. See New York Convention, Art. I, cl. 1. and cl. 3.

28. To obtain recognition and enforcement, a party must supply at the time of the application: "(a) The duly authenticated original award or a duly certified copy thereof; (b) The original agreement [containing the arbitration clause giving rise to the arbitral award] or a duly certified copy thereof." Id. Art. IV, cl. 1. Furthermore, if the award or agreement seeking recognition and enforcement is not made in the official language of the State it is seeking recognition in, then certified translations must also be supplied at the time of application. Id. Art. IV, cl. 2.

29. Once a party applying for recognition and enforcement under the New York Convention has produced the necessary documents, a federal district court must confirm an arbitral award falling under the New York Convention "unless it finds one of the grounds for

refusal or deferral of recognition or enforcement of the award specified in the said Convention."
See 9 U.S.C. § 207.

## COUNT ONE
### (Recognize and Enforce Arbitration Award)

30. Petitioner repeats and realleges each of the foregoing paragraphs as if more fully set forth at length herein.

31. The Final Arbitration Award in this proceeding was made in Hong Kong, a Contracting State to the New York Convention.

32. Petitioner at the time of application has supplied the following required documents:

| | |
|---|---|
| Exhibit A: | Duly Certified Copy of the 4.28.10 Agreement (arbitration agreement) |
| Exhibit B: | Certified Translation of the 4.28.10 Agreement (arbitration agreement) |
| Exhibit C: | Duly Authenticated Final Arbitration Award |
| Exhibit D: | Certified Translation of the Final Arbitration Award |
| Exhibit E: | Duly Authenticated Clarification Award |
| Exhibit F: | Certified Translation of the Clarification Award |

33. None of the grounds available for refusal or deferral of recognition or enforcement of an award specified in the New York Convention is applicable to the Final Arbitration Award.

**WHEREFORE**, Petitioner, the Hong-Kong-Domiciled Estate of Ke Zhengguang, respectfully requests this Court enter an Order:

(a) pursuant to 9 U.S.C. § 207, recognizing, confirming, and enforcing the Final Arbitration Award against Respondent and entering a judgment in favor of Petitioner in accordance with the Final Arbitration Award;

(b) directing Respondent to comply with the specific performance orders that Respondent is required to complete under the Final Arbitration Award;

(c) directing Respondent to pay Petitioner the sum of $750,824.53 (50% of the RMB award as required by Order 9 of the Final Arbitration Award);

(d) awarding Petitioner pre-judgment interest at the statutory rate from the date of the Final Arbitration Award to the date of entry of judgment;

(e) awarding Petitioner post-judgment interest at the statutory rate from the date of entry of judgment to the date the judgment is satisfied; and

(f) for such other and further relief as this Court may deem equitable and just.

Dated: March 4, 2019

*/s/ Cyril V. Smith*
Cyril V. Smith (Fed. Bar No. 07322)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel. No: (410) 949-1145
Fax No: (410) 659-0436
csmith@zuckerman.com


Michael D. Cilento (admitted *pro hac vice*)
The Seiden Group
469 7th Avenue, Suite 502
New York, NY 10018
(646) 766-1723
mcilento@seidenlegal.com