# EXHIBIT C



HKIAC 香港國際仲裁中心
Hong Kong International
Arbitration Centre

香港欧华律师事务所
香港中环皇后大道中十五号
置地广场公爵大厦 17 楼
致：杨大明 / 陈启源 / 姚其昕
仅手递

敬启者，

案件编号：　**HKIAC/A13028**
申请人：　　**(1) 徐宏标 （中国大陆）**
　　　　　　**(2) 柯铮光之遗产（中国大陆）**
被申请人：　**(1) 绿洲投资集团有限公司（英属维京群岛）**
　　　　　　**(2) 俞乃奋（美国）**
　　　　　　**(3) 俞乃雯（中国大陆）**
　　　　　　**(4) 俞乃筠（中国大陆）**
有关：　　　**2010 年 4 月 28 日关于执行《股份重组初步协议》的协议书的争议**

题述案件。

　　我们确认本函所附仲裁裁决为本案仲裁庭（即杨炎龙律师为首席仲裁员，郑若骅资深大律师和黄旭伦资深大律师各作为边裁）按照 2008 年版《香港国际仲裁中心机构仲裁规则》在香港作出的日期为 2018 年 2 月 28 日的《最终裁决（利息与仲裁费除外）》的真实副本。

　　谢谢垂注。



　　　　　　　　　　　　　　　　　　　　　　　　　　　　香港国际仲裁中心

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　谨启
　　　　　　　　　　　　　　　　　　　　　　　　　黄子宜，法律顾问
　　　　　　　　　　　　　　　　　　　　　　　　　2018 年 6 月 27 日

附件：日期为 2018 年 2 月 28 日的《最终裁决（利息与仲裁费除外）》的真实副本

38/F Two Exchange Square 8 Connaught Place Hong Kong
香港中環交易廣場第二座 38 樓

T 電話 (852) 2525 2381E 電郵 adr@hkiac.org
F 傳真 (852) 2524 2171　　www.hkiac.org

HKIAC is a charitable institution limited by guarantee

在香港国际仲裁中心（"HKIAC"）

依据香港国际仲裁中心规则（2008 年 9 月 1 日生效）

（"《HKIAC 规则》"）仲裁之案件

**HKIAC/A13028**

徐宏标

第一申请人

柯铮光之遗产

第二申请人

和

绿洲投资集团有限公司

第一被申请人

俞乃奋

第二被申请人

俞乃雯

第三被申请人

俞乃筠

第四被申请人

———————————————

**最终裁决 （利息与仲裁费除外）**

———————————————

**目录**

| 章节 | | 页码 |
|---|---|---|
| I. | 当事人 | 1 |
| II. | 仲裁协议和适用法律 | 2 |
| III. | 仲裁庭 | 2 |
| IV. | 事实背景 | 24 |
| V. | 争议事项及双方立场 | 26 |
| VI. | 申请人和被申请人的请求 | 34 |
| VII. | 仲裁庭的分析和理由 | 37 |
| VIII. | 仲裁庭的裁决和命令 | 58 |
| IX. | 仲裁费 | 59 |

**最终裁决**
**(仲裁费用和利息除外)**

I.   **当事人**

1.   本案申请人是:

**第一申请人: 徐宏标**先生, 中国公民, 中国身份证号码 310104196403192854, 通讯地址为中国上海市中山西路 555 号绿洲大厦 419 室, 邮政编码: 200051。

**第二申请人: 柯铮光之遗产**, 2013 年 12 月 15 日前为**柯铮光**先生(以下简称"**柯先生**"或"**第二申请人**")。柯先生生前为中国公民, 中国身份证号码 310109195601033237。2013 年 12 月 15 日, 柯先生逝世。之后, 本案第二申请人变更为柯先生之遗产。柯先生之遗产管理人为: (1)张跃进女士(柯先生的遗孀, 以下简称"**张女士**"); 及(2)柯烨颖女士(柯先生的女儿, 以下简称"**柯女士**")。通讯地址为中国上海市中山西路 555 号绿洲大厦 419 室, 邮政编码: 200051。

以下合称为"**申请人**"。

2.   本案中, 申请人的授权代理律师原是周卓立 陈启球 陈一理律师事务所, 地址: 香港干诺道中 130-136 号诚信大厦 3 楼。2013 年 12 月 15 日, 柯先生逝世。2015 年 12 月 28 日, 香港高等法院签发遗产管理委任书(Letters of Administration), 委任张女士及柯女士为柯先生之遗产管理人。2016 年 1 月 12 日, 贝克•麦坚时国际律师事务所上海代表处(后其香港办公室亦有参与本案, 与其上海代表处合称"**贝克**")(地址: 中国上海浦东新区世纪大道 88 号金茂大厦 1601 室/香港中环夏悫道 10 号和记大厦 14 楼)作为张女士及柯女士的代表律师致函仲裁庭, 正式代表第二申请人参与本案。第一申请人的授权代理律师则仍为周卓立 陈启球 陈一理律师事务所。

3.   本案被申请人是:

**第一被申请人: 绿洲投资集团有限公司**(以下简称"**绿洲投资**"), 一家注册于英属维京群岛的股份有限公司, 通讯地址为中国上海市中山西路 555 号绿洲大厦 12 楼, 邮政编码: 200051

**第二被申请人: 俞乃奋**女士, 美国公民, 美国护照号码 710714118, 通讯地址为中国上海市中山西路 555 号绿洲大厦 12 楼, 邮政编码: 200051

第三被申请人：**俞乃雯**女士，中国公民，中国身份证号码 310101196304040864，通讯地址为中国上海市中山西路 555 号绿洲大厦 12 楼，邮政编码：200051

第四被申请人：**俞乃筠**女士，中国公民，中国身份证号码 310106197207062822，通讯地址为中国上海市中山西路 555 号绿洲大厦 12 楼，邮政编码：200051

以下合称为"**被申请人**"。

4. 被申请人的授权代理律师原为美迈斯律师事务所，地址：香港中环干诺道 1 号友邦金融中心 31 楼。2016 年 10 月 12 日后，被申请人的代表律师团队成员加入盛德律师事务所（Sidley Austin LLP）（地址：香港中环国际金融中心二期三十九楼），盛德律师事务所被申请人指示在本案中继续代理被申请人。

5. 以下申请人和被申请人一方各称为"**当事人**"，双方称为"**各方当事人**"。

**II. 仲裁协议和适用法律**

6. 本仲裁涉及各方当事人为对第一被申请人及其下属子公司进行拆分，于 2010 年 4 月 28 日签订的《关于执行<股份重组初步协议>的协议书》（以下简称"**4.28 协议**"）。本仲裁之提起依据为《4.28 协议》第 4.2 条，该条约定：

*"4.2 因本协议或与本协议有关的争议、争执和索偿，违约终止或合同无效等（以下称"争议"）各方应友好协商解决。协商不成时，任何一方均有权将争议提交香港国际仲裁中心以仲裁解决，由该中心按照其届时有效的仲裁规则在香港进行仲裁。仲裁以中文进行。仲裁庭由三名仲裁员组成，绿洲投资及控股股东有权指定一名仲裁员，参股股东有权指定一名仲裁员，第三名及首席仲裁员由香港国际仲裁中心主席指定。仲裁结果是终局的，对各方均有约束力。"*

7. 以上仲裁条款所述"参股股东"为本案申请人，绿洲投资及"控股股东"（即第二、第三及第四被申请人）为本案被申请人。

8. 依据上述援引的《4.28 协议》第 4.2 条，本仲裁程序须由 HKIAC 管理并依照《HKIAC 规则》进行。仲裁地为香港，仲裁语言为中文。

9. 《4.28 协议》第 4.1 条约定协议受香港法律管辖。

**III. 仲裁庭**

2

10.    本案仲裁庭由以下仲裁员组成:

（1）    黄旭伦资深大律师，地址：香港中环雪厂街十号新显利大厦十楼，由申请人提名；

（2）    郑若骅资深大律师，地址：香港中环置地广场告罗士打大厦 38 楼，由被申请人提名；及

（3）    杨炎龙先生（以下简称"首仲"），地址：香港中环康诺广场 8 号交易广场一座 18 楼，由 HKIAC 理事会依据各方当事人之间仲裁协议规定指定为本案第三位及首席仲裁员。

11.    仲裁庭于 2013 年 6 月 4 日正式组成，且各方当事人于同日被通知仲裁庭组成。

**仲裁程序**

12.    仲裁庭认为没有必要在此列出双方当事人的代理人在本案过程中的所有往来信函。仲裁庭的所有程序指令均已通过书面形式作出，在此不另赘述。需要强调的是，仲裁庭作出指令前均全面考虑了各方当事人在其书面陈述、证人证言和开庭审理时提出的主张，且所有指示、命令和决定是由三位仲裁员商议后作出的。因此，本单元仅就本案的关键程序事项作一概述。

13.    2013 年 2 月 22 日，申请人针对被申请人在香港向 HKIAC 提交了《仲裁通知》（案号 HKIAC/A13028），以解决《4.28 协议》项下的争议。

14.    2013 年 4 月 12 日，被申请人提交了《对仲裁通知的答复》。

15.    2013 年 4 月 8 日，HKIAC 出函确认指定申请人提名的黄旭伦资深大律师为本案仲裁员。2013 年 4 月 22 日，被申请人通知 HKIAC 提名郑若骅资深大律师为本案仲裁员。次日，即 2013 年 4 月 23 日，HKIAC 通知郑若骅女士其被提名，同日，郑若骅女士通知 HKIAC 接受该提名。2013 年 4 月 30 日，HKIAC 出函确认指定郑若骅女士为本案仲裁员。

16.    2013 年 6 月 4 日，HKIAC 通过信函确认指定杨炎龙先生为本案首席仲裁员。2013 年 6 月 4 日，仲裁庭正式组成。

17.    2013 年 6 月 4 日，HKIAC 出函通知各方当事人，仲裁庭已依据《HKIAC 规则》组成。

3

18.　2013 年 6 月 7 日， 首仲代表仲裁庭出函通知各方当事人仲裁庭已组成，并请各方当事人确认其对仲裁庭的组成不持异议、仲裁规则、仲裁语言和适用管辖法律等事项。仲裁庭同时提供了一份草拟的暂行时间表（后续将化为程序令），请各方当事人商议并（在可能的情况下）就相关文件的提交日期达成共识，并于 2013 年 6 月 14 日下午 6 时前回复仲裁庭。

19.　2013 年 6 月 14 日，申请人致函首仲，确认上述 18 段提到的相关事项，并提交了申请人建议之程序指令草稿。同日，被申请人亦向仲裁庭提交了被申请人的时间表建议及根据该时间表补充完整的仲裁庭程序令草稿，并确认上述 18 段提到的相关事项。

20.　考虑了各方当事人的书面意见后，首仲代表仲裁庭于 2013 年 6 月 25 日作出程序指令（一）（以下简称"**指令（一）**"），内附一份经修改后的程序时间表。

21.　2013 年 8 月 30 日，被申请人通过电邮及专人快递向 HKIAC 提交了其《答辩及反诉书》及附件清单。仲裁庭同日以电邮确认收悉电子版本。

22.　2013 年 10 月 8 日，申请人通过电邮向仲裁庭提交其《回复及反诉答辩书》。

23.　2013 年 11 月 12 日，被申请人致函仲裁庭，向仲裁庭提交其《对申请人的回复及反诉答辩书的进一步答复书》。仲裁庭于同日以电邮确认收悉。

24.　2013 年 11 月 22 日，申请人致函仲裁庭，指称被申请人 2013 年 11 月 12 日向仲裁庭提交《对申请人的回复及反诉答辩书的进一步答复书》的行为严重违反了指令（一），理由是指令（一）并未允许被申请人可就申请人的回复作进一步的答复。申请人要求仲裁庭下达命令撤销被申请人进一步答复书中的第 1 段至第 32 段（即对申请人的回复作进一步的答复之内容），并要求被申请人向申请人支付因其提交该进一步答复而引致之律师费。

25.　同日，即 2013 年 11 月 22 日，被申请人致函仲裁庭，否认其向仲裁庭提交《对申请人的回复及反诉答辩书的进一步答复书》的行为违反了指令（一），理由是该进一步答复书的内容仅限于对申请人反诉答辩的回复，但鉴于申请人"反诉答辩"部分与其他部分的内容紧密相连且交叉重叠，故其对申请人"反诉答辩"部分的回应涉及到其他部分的内容且格式上是按照申请人《回复及反诉答辩书》的段落顺序逐一回复，故要求仲裁庭对申请人的要求予以驳回。

4

26. 2013年11月25日，仲裁庭通过电邮回复各方当事人，称经仲裁庭考虑，不予以命令被申请人撤销其《对申请人的回复及反诉答辩书的进一步答复书》之第1段至第32段。但是，仲裁庭允许申请人在一周内（即11月30日或之前）针对该些段落作出进一步书面陈述。仲裁庭同时询问各方是否需要延缓指令（一）规定的各当事人提交其文件出示请求的期限（即11月26日）。

27. 同日，即2013年11月25日，申请人通过电邮回复仲裁庭，鉴于被申请人确认其进一步答复书的内容仅限于对申请人反诉答辩的回复，申请人将不再作出进一步书面陈述，故11月26日的期限亦无须延缓。

28. 2013年11月26日，被申请人向仲裁庭呈交《被申请人的文件出示请求》。

29. 同日，即2013年11月26日，申请人向仲裁庭呈交《申请人之文件清单》。

30. 2013年12月5日，仲裁庭通过电邮确认收到被申请人和申请人分别于2013年11月26日提交的《被申请人的文件出示请求》和《申请人之文件清单》。仲裁庭同时提醒申请人其似乎没有提交指令（一）第7段提到的文件出示请求，并要求申请人于2013年12月6日下午6时之前澄清其是否会向被申请人提出任何文件出示请求。

31. 2013年12月6日，申请人通过电邮向仲裁庭确认现阶段其没有文件出示请求。

32. 2013年12月17日，申请人通过电邮向仲裁庭提交了申请人对被申请人文件出示请求的合理异议，并通知各方当事人，柯先生日前突然不幸病逝。申请人表示其将尽快与柯先生之亲属商讨关于第二申请人继续本案之相关法律程序事宜，并将在获取柯先生亲属的有关指示后尽快向仲裁庭作出建议。

33. 2013年12月20日，仲裁庭通过电邮要求被申请人在2013年12月27日针对申请人对被申请人文件出示请求的合理异议作出回应，并允许申请人对被申请人的回应在2014年1月7日作出最后答复。仲裁庭同时指出虽然指令（一）没有明示，但为了仲裁庭更好地作出决定而增加了该环节。此外，仲裁庭表示等待申请人就第二申请人继续本案之相关法律程序事宜的建议。

34. 2013年12月27日，被申请人向仲裁庭呈交《被申请人对文件出示请求之反对意见的反驳理由/更新立场》（以下简称"《反驳理由/更新立场》"）。

5

35.　2014 年 1 月 9 日，仲裁庭通过电邮确认收到被申请人递交的《＜被申请人的文件出示请求＞包含申请人的反对意见及被申请人的反驳理由/更新立场》。鉴于申请人对该文件的最后复期限（2014 年 1 月 7 日）已过，仲裁庭要求申请人于当日下午 6 时前确认其对该文件是否会作出答复。同时，仲裁庭亦请申请人就第二申请人继续本案之相关法律程序事宜作出陈述或建议。

36.　同日，即 2014 年 1 月 9 日，申请人通过电邮向仲裁庭申请，将仲裁程序暂缓至 2014 年 1 月 15 日，并将申请人答复被申请人《反驳理由/更新立场》的最后期限延至 2014 年 1 月 15 日。申请人表示其将在该日前向仲裁庭提交申请人对被申请人《反驳理由/更新立场》的答复及对柯先生逝世对此案的影响作出进一步的陈述或建议。

37.　2014 年 1 月 10 日，仲裁庭通过电邮批准申请人上述延期申请，即暂缓仲裁程序至 2014 年 1 月 15 日，将申请人对被申请人《反驳理由/更新立场》的答复最后答复期限延至 2014 年 1 月 15 日，同意让申请人代表律师在该日对柯先生逝世对此案的影响作出进一步的陈述或建议，并也保留权利让被申请人对该陈述或建议作出回复。

38.　2014 年 1 月 15 日，申请人致函仲裁庭，附上申请人对被申请人《反驳理由/更新立场》的答复，并基于柯先生之妻子及其家属的实际困难，申请将柯先生逝世对此案的影响作出进一步的陈述或建议的时间再次延期至 2014 年 1 月 30 日。

39.　2014 年 1 月 16 日，仲裁庭通过电邮同意将仲裁程序暂缓至 2014 年 1 月 30 日。

40.　2014 年 1 月 24 日，申请人代表律师（周卓立陈启球陈一理律师事务所）通过电邮向仲裁庭详细说明了柯先生的家庭情况并主张仲裁可以推进。申请人代表律师表示其已接受柯先生之妻张女士及女柯女士的共同委托，已开始办理向香港高等法院申请准许张女士或其指定人柯烨乐以柯先生遗产管理人之身份代表柯先生之遗产继续进行本案的法律手续，并代表第一申请人及柯先生之妻张女士及女柯女士向仲裁庭申请准许张女士或其指定人柯烨乐在前述香港高等法院之准许未下达前，可以以柯先生遗产管理人身份继续进行本案所有程序而无须中止本案程序，同时其将于香港高等法院之准许正式下达后立即通知仲裁庭。

41.　同日，即 2014 年 1 月 24 日，仲裁庭通过电邮要求被申请人在 2014 年 1 月 29 日或之前针对申请人作出的上述请求作出回复。

42.　2014 年 1 月 29 日，被申请人致函仲裁庭，表示其原则上不反对申请人代表律师的请求，即柯先生的合法继承人继续进行本案而无须中止本案程

序，但需要申请人提供相关信息/澄清若干问题，包括柯烨乐、张女士与柯的身份以及提供相关文件，并请仲裁庭允许被申请人在收到所寻求信息后的一定时间内有机会发表最终意见。

43.    2014 年 1 月 30 日，仲裁庭通过电邮告知各当事方，其对于申请人代表律师在其 2014 年 1 月 24 日邮件中所主张的观点，即在香港高等法院未批准柯先生遗产管理人之前推进本案程序，在法律上有所顾虑。仲裁庭同时邀请申请人代表律师于 2014 年 2 月 14 日或之前对被申请人律师 2014 年 1 月 29 日的函作出回复。

44.    2014 年 2 月 11 日，被申请人致函仲裁庭，请求确认本案程序（含《指令（一）》第 10 项及其后的所有程序）仍处于暂缓阶段，直至仲裁庭作出进一步指示。仲裁庭于 2014 年 2 月 12 日致函各方当事人，确认暂时中止，表示将在收到第二申请人的进一步回复后（2014 年 2 月 14 日为限）后再作出进一步的指示。

45.    2014 年 2 月 14 日，申请人致函仲裁庭，回复被申请人 2014 年 1 月 29 日的函及仲裁庭 2014 年 1 月 30 日的电邮内的意见，主张鉴于香港附属法例第 4A 章高等法院规则内的第 15 号命令第 15 条规则及香港高院的判例（Lily Cheung v. The Official Solicitor and Another, [2008] 5 HKLRD 743 一案），仲裁庭可以委任张女士于本案程序作为柯先生遗产的代表继续本案程序。申请人随函附上张女士身份证明文件、与第二申请人的婚姻证明文件、第二申请人的死亡证明文件 1 及身份证明文件、及所引用案例的判决书。

46.    2014 年 2 月 25 日，被申请人致函仲裁庭，要求申请人澄清是否不再要求指定柯烨乐为遗产管理人。被申请人也对申请人要求仲裁庭委任张女士于本案程序作为第二申请人遗产的代表继续本案程序的请求表示反对，主张仲裁庭应等到香港高等法院就第二申请人的遗产管理人的最终准许正式下达后再继续本案程序。

47.    2014 年 2 月 26 日，申请人通过电邮向仲裁庭申请于 2014 年 2 月 28 日或之前就被申请人 2014 年 2 月 25 日函作出回应。同日，仲裁庭通过电邮准于申请人的该等申请。

48.    2014 年 2 月 27 日，仲裁庭通过电邮通知各方当事人，仲裁庭拟于 2014 年 4 月 2 日下午于 HKIAC 召开半天的开庭，主要目的为：让各方当事人

---

1 死亡证书显示第二申请人于 2013 年 12 月 15 日 22 时 20 分在上海逝世。

针对柯先生不幸身故一事对于仲裁程序的影响充分表达其法律意见以及可行的方案，以便仲裁程序可以往前推进。

49.   2014 年 2 月 27 日，申请人就被申请人 2014 年 2 月 25 日函作出回应，并澄清张女士和柯女士愿意并希望仲裁庭委任张女士为柯先生的遗产管理人。

50.   2014 年 3 月 11 日，在考虑了各方当事人就开庭的往来邮件之后，仲裁庭制定时间表让双方当事人就柯先生不幸身故一事对于仲裁程序的影响问题提交法律意见。

51.   2014 年 3 月 25 日，就上述问题，各方当事人向仲裁庭分别提交了书面意见。就开庭日期，各方当事人表示尚未达成一致，并请仲裁庭考虑，是否在审阅各方本轮提交的书面材料后再决定是否需要开庭。

52.   2014 年 4 月 1 日，各方当事人分别向仲裁庭提交了对对方书面意见的反驳法律意见。

53.   2014 年 4 月 9 日，被申请人通过电邮致函仲裁庭，提议仲裁给予各方当事人两周时间，以协商委任张女士作为第二申请人代表参与本案而可能产生的法律风险向被申请人提出赔偿(indemnification)建议一事。同日，申请人通过电邮致函仲裁庭，表示被申请人对申请人提议的解读有不准确之处，同时向仲裁庭建议（并同时确认愿意无条件接受），如仲裁庭在考虑了各方当事人所提供的陈词及相关文件后认同被申请人所提出的潜在风险，在此情况下请仲裁庭直接作出以下具约束力的命令：

*"第一申请人须因张女士在本仲裁程序中的行为影响了被申请人的权利及其第二申请人的遗产管理人申请被高等法院驳回因而令被申请人遭受的全部损失，个人承担支付全部被申请人合理赔偿的弥偿担保责任。"*

54.   同日，即 2014 年 4 月 9 日，被申请人对申请人的回应表示遗憾，并请仲裁庭就申请人的相关申请作出决定。

55.   2014 年 4 月 29 日，仲裁庭通过电邮指示各方当事人，鉴于各方当事人递交的法律意见以及书面材料充足，仲裁认为没有开庭的必要。

56.   2014 年 5 月 30 日，仲裁庭作出《第二申请人不幸身故一事对于仲裁程序的影响的决定》（"《决定（一）》"），仲裁庭裁决如下：（1）仲裁庭不具有委任第二申请人的遗产管理人的管辖权；（2）由于仲裁庭不具有上述管辖权，因此第二申请人的案子必须等到香港高等法院委任第二申请人的遗产管理人之后才能进行；（3）有鉴于此，仲裁庭目前唯一合理的处理方式是实时中止仲裁案直至香港高等法院委任第二申请人的遗

8

产管理人之后；（4）仲裁庭决定保留对此次申请的律师费的分配的决定。

57. 2014 年 6 月 4 日，HKIAC 将《决定（一）》原件发送各方当事人。在此之后直至 2015 年 4 月 2 日以前，本案无新进展。

58. 2015 年 4 月 2 日，申请人代理律师代表第一申请人通过电邮向仲裁庭提出以下申请（以下简称"**撤销/追加申请**"）：（1）要求仲裁庭下令命令撤销本仲裁程序中的第二申请人，并将第二申请人之遗产加入作为本仲裁程序中的第五被申请人；（2）准许申请人修订仲裁申请书反映撤销第二申请人，及加入第二申请人之遗产为第五被申请人；（3）恢复本仲裁程序。申请人随电邮附上：第一申请人的简短陈述书，第一申请人之非宗教形式誓章和草拟之修订仲裁申请书。同日，仲裁庭要求被申请人于 2015 年 4 月 10 日下午 6 时之前向仲裁庭提交其针对申请人申请之法律意见。

59. 2015 年 4 月 9 日，被申请人通过电邮向仲裁庭申请，将其提交法律意见的期限延长至 2015 年 4 月 30 日。同日，申请人通过电邮向仲裁庭建议，鉴于本案程序自第二申请人过世后已中止超过 15 个月，故仅将宽限期延至 2015 年 4 月 17 日。

60. 2015 年 4 月 10 日，经慎重考虑，仲裁庭决定把被申请人的回复期限延至 2015 年 4 月 23 日（下午 6 时以前）。

61. 2015 年 4 月 20 日，贝克作为张女士和柯女士的代理律师致函仲裁庭，主张第一申请人在张女士和柯女士不知情的情况下，向仲裁庭提出将第二申请人（之遗产）从本案的申请人变更为第五被申请人的申请，此举严重损害了第二申请人及/或其法定继承人的合法权益。贝克主张仲裁庭尚未充分听取其意见之前，不应就上述申请作出任何决定。贝克同时表示，张女士和柯女士正在办理相关手续，以获取香港高等法院对其作为第二申请人之遗产管理人的委任，并请仲裁庭向其提供第一申请人上述申请之副本及相关文件。

62. 2015 年 4 月 23 日，被申请人致函仲裁庭，主张第二申请人的遗产管理人应当有权利对申请人"撤销本仲裁程序中的第二申请人，并将第二申请人之遗产加入作为本仲裁程序中的第五被申请人"的申请表达意见，而在第二申请人的遗产管理人尚未被指定或确认前，仲裁庭不应当就上述事宜作出决定。被申请人同时主张，第一申请人的申请缺乏必要依据，鉴于各方关系的变化，仲裁庭应以更加审慎的态度处理程序，暂不应就该申请作出支持的决定。就被申请人是否可以要求第一申请人共同及连带承担履行《4.28 协议》下申请人的全部义务的责任，被申请人提出若

9

干具体问题，要求申请人作出答复。同日，申请人通过电邮向仲裁庭申请在 14 日内（即 2015 年 5 月 7 日或之前）就被申请人的上述函件向仲裁庭提交书面回应。仲裁庭于同日通过电邮批准申请人的该等时限申请。

63. 同日，即 2015 年 4 月 23 日，仲裁庭通过电邮回复贝克，表示鉴于张女士和柯女士尚未经法庭委任为本案之第二申请人的遗产管理人，因此其二人并非本案的当事人，也不具条件向仲裁庭作出任何申请。若柯女士和张女士将来正式经法庭委任为第二申请人的合法遗产管理人，则其可以再向仲裁庭另作申请。

64. 2015 年 5 月 6 日，申请人申请将上述第 62 段提及的提交书面回应的时限延至 2015 年 5 月 21 日或之前。仲裁庭于 2015 年 5 月 7 日批准该延期申请。

65. 2015 年 5 月 21 日，申请人向仲裁庭提交了《第一申请人的书面回复》。申请人主张鉴于张女士和柯女士不愿继续委托申请人的代理律师承办遗产手续，申请人代理律师在法理上根本不能继续代表第二申请人。而张女士和柯女士向香港高等法院申请委任第二申请人的遗产管理人一事经过一年多仍无结果，令第一申请人相信张女士和柯女士受到申请人影响而故意不办理遗产或拖延办理，故仲裁庭及各方当事人不应无限期等待第二申请人的遗产继承。因此，第一申请人建议仲裁庭撤销第二申请人，并加入第二申请人为第五被申请人，或若仲裁庭认为不能或不应加入第五被申请人，请仲裁庭考虑单独继续第一申请人的仲裁。

66. 2015 年 6 月 16 日，贝克致函向仲裁庭，表示其已于 2015 年 6 月 12 日代表柯女士和张女士向香港高等法院提交了有关委任第二申请人之遗产管理人的申请。2015 年 6 月 19 日，仲裁庭将此函转发各方当事人，指示其针对委任第二申请人之遗产管理人申请已提交一事于 2015 年 6 月 25 日或之前提交书面意见，尤其是仲裁庭还有没有必要考虑第一申请人作出的申请。

67. 2015 年 6 月 25 日，各方当事人依仲裁庭 2015 年 6 月 16 日之指示，向仲裁庭提交了书面意见。

68. 2015 年 6 月 26 日，仲裁庭通过电邮指示各方当事人，仲裁庭经审阅各方当事人就第一申请人提出的撤销/追加申请所做的书面陈词/意见后，认为该申请相对复杂，有必要对该申请开一次庭，听取并澄清各方的观点及立场。

69. 2015 年 6 月 29 日，第一申请人通过电邮答复仲裁庭，其已与被申请人商定双方适合的开庭日期及地点。

10

70.   2015 年 7 月 13 日，仲裁庭就第一申请人提出的撤销/追加申请开庭审理。同日开庭后，仲裁庭通过电子邮件询问各方当事人是否同意将三个附件（即贝克日期为 2015 年 7 月 10 日致仲裁庭的函，日期为 2009 年 11 月 9 日的《绿洲投资集团有限公司股权重组初步协议》及关于 Warwick Film Productions Ltd and Another v. Eisinger and Others 的案例材料）加入申请人方提交的聆讯文件夹（并列为文件编号 24、25、26，页数为 207 至 218）。第一申请人及被申请人同日分别通过电子邮件确认同意。

71.   2015 年 8 月 6 日，仲裁庭通过电子邮件告知各方当事人，其就第一申请人于 2015 年 4 月 2 日之申请作出决定（该邮件内附决定之电子版本），HKIAC 会把原件寄给各方当事人。仲裁庭同时要求各方律师尽快协商制定一份仲裁程序时间表供仲裁庭参考。

72.   2015 年 8 月 26 日，第一申请人以电子邮件向仲裁庭建议，仲裁程序按 2013 年 6 月 25 日的程序指令（一）继续推进，有关仲裁程序时间表应延续或指令并调整相应时间段（具体调整列于邮件中）。第一申请人请求仲裁庭能采纳上述时间表并作出相应指令。

73.   2015 年 8 月 27 日，被申请人以电子邮件向仲裁庭表示，第一申请人前日提议的程序时间表并非与被申请人协商后的建议。被申请人建议仲裁庭给予各方当事人七天时间就第一申请人的提议进行协商并尽量达成共识，因此，请求仲裁庭暂缓就仲裁程序时间表作出指示。

74.   2015 年 8 月 29 日，仲裁庭指令各方当事人于 2015 年 9 月 3 日或之前呈交一个经各方协商后达成共识的程序时间表。若各方不能达成共识，仲裁庭要求其各自提出意见，供仲裁庭参考。

75.   2015 年 9 月 1 日，第一申请人以电子邮件向仲裁庭表示其同被申请人于 2015 年 8 月 27 日建议的程序时间表，并请仲裁庭能采纳上述经各方当事人达成共识的时间表并作出相应之指令。

76.   2015 年 9 月 14 日，仲裁庭以电子邮件表示同意被申请人建议的程序时间表。鉴于第二申请人的遗孀张女士和女儿柯女士是由贝克代表，仲裁庭请第一申请人律师和被申请人律师确认他们已把仲裁庭于 2015 年 8 月 6 日作出的决定已经以注册函的方式通知了贝克。同日，第一申请人以电子邮件向仲裁庭确认，其已于当日（即 2015 年 9 月 14 日）把仲裁庭于 2015 年 8 月 6 日作出的决定以注册函的方式向贝克发出。2015 年 10 月 8 日，被申请人向仲裁庭表示，有鉴于第一申请人已将决定发送贝克，被申请人未向贝克重复发送该决定，但被申请人确定第一申请人 2015 年 9 月 1 日发送的程序时间表反映了各方当事人达成的共识，并请仲裁庭发出新的程序指令。

11

77.   2015 年 12 月 21 日，仲裁庭以电邮指示各方当事人，鉴于申请人已于 2015 年 9 月 14 日将仲裁庭 2015 年 8 月 6 日作出的决定以挂号函的方式寄送贝克，因此被申请人无需向贝克再发送该决定。同时，仲裁庭作出程序指令（二）（以下简称"**指令（二）**"），内附一份经修改后的程序时间表。

78.   2015 年 12 月 24 日，贝克致函仲裁庭，称香港高等法院于 2015 年 11 月 6 日初步决定授予柯女士及张女士成为第二申请人之遗产管理人之委任，并期待于近日收到香港高等法院的正式决定。

79.   2016 年 1 月 12 日，贝克致函仲裁庭，称香港高等法院于 2015 年 12 月 28 日签发遗产管理委任书（Letters of Administration），委任张女士及柯女士为第二申请人之遗产管理人。该函同时附上该遗产管理委任书之复印件。在该函中，贝克同时请求仲裁庭向其提供第二申请人过世后仲裁庭向各方当事人发送的本案的卷宗材料。同日，仲裁庭将该函转发第一申请人及被申请人，并指示其于 2016 年 1 月 15 日下午六时或之前就贝克提出反对或不反对的意见。

80.   2016 年 1 月 14 日，第一申请人通过电邮向仲裁庭表示，贝克向仲裁庭提供的遗产管理委任书之复印件不完整，但如果贝克能提供完整复印件表明有关遗产管理人根据该遗产管理委任书在法律上有权代表第二申请人管理或处理其在 4.28 协议及/或本案中之具法权产（choses in action）及法律责任（liabilities），则第一申请人将不反对贝克 2016 年 1 月 12 日函之要求。

81.   2016 年 1 月 15 日，仲裁庭以电邮方式向各方当事人发出《<被申请人的文件出示请求>仲裁庭决定》（"**决定（二）**"）。

82.   2016 年 1 月 15 日，被申请人通过电邮向仲裁庭确认，其不反对贝克 2016 年 1 月 12 日信函中的请求。

83.   2016 年 1 月 18 日，贝克致函仲裁庭，请求仲裁庭告知本案的最新进展，下一步的程序和时间安排及提供其在 2016 年 1 月 12 日函中请求提供的文件。

84.   2016 年 1 月 19 日，仲裁庭以信函方式回复贝克，要求其提供遗产管理委任书之完整复印件，以便仲裁庭全面考虑贝克的要求。同日，第一申请人致函仲裁庭，就贝克 2016 年 1 月 12 日函之事宜，提交进一步之补充书面意见。

85.   2016 年 1 月 27 日，第一申请人通过电邮向仲裁庭确认，与仲裁庭决定（二）中的相关文件出示请求有关的文件并不存在。

86. 2016 年 1 月 29 日，贝克致函仲裁庭，因遗产管理委任书之完整复印件涉及第二申请人之私人信息，柯女士及张女士就向仲裁庭提供完整复印件有顾虑，并请仲裁庭谅解或释明需要披露之原因。

87. 2016 年 2 月 2 日，仲裁庭致函贝克，表明其之前提供之文件未能表明有关遗产管理人根据该遗产管理书在法律上是否有权代表第二申请人管理或处理其在 4.28 协议及/或本案中之具法权产（choses in action）及法律责任（liabilities），并要求其提供该遗产管理书所附之日期为 2015 年 5 月 25 日的资产及负债清单（Schedule of Assets and Liabilities）以确定上述问题。

88. 2016 年 2 月 17 日，贝克致函仲裁庭，就香港高等法院出具的遗产管理书的附件清单不会对该等域外具法产权予以披露的原因作出说明。

89. 2016 年 2 月 17 日，仲裁庭通过电邮向各方当事人宣布，依据仲裁庭于 2015 年 12 月 21 日所定的指令（二），文件出示阶段结束。不过，仲裁庭保留其在 2013 机构仲裁规则下第 22.3 条的权利。

90. 2016 年 2 月 19 日，第一申请人通过电邮向仲裁庭提交第一申请人之传召专家证人申请，第一申请人之专家证人名单及第一申请人之事实证人名单的电子版。同日，被申请人向仲裁庭申请将提交证人申请和名单的期限延长至 2016 年 3 月 4 日。随后亦于同日，第一申请人就该延期请求，向仲裁庭提出回复意见，表示其反对将期限延长至 2016 年 3 月 4 日，但同意延至 2016 年 2 月 26 日。2016 年 2 月 20 日，仲裁庭以电子邮件批准将被申请人的提交期限延至 2016 年 2 月 26 日下午 6 时。

91. 2016 年 2 月 25 日，仲裁庭致电邮给第一申请人和被申请人，附上了仲裁庭与贝克所有的往来邮件/信函，并邀请第一申请人和被申请人就柯女士和张女士是否可以在本案中代表第二申请人最迟于 2016 年 3 月 11 日提交最终的书面意见。

92. 2016 年 2 月 26 日，被申请人以信函向仲裁庭提交被申请人拟传召的事实证人名单及被申请人拟传召的专家证人名单和相关申请。

93. 2016 年 3 月 4 日，被申请人致函仲裁庭，表示鉴于第一申请人尚未提交被申请人寻求的有关专家证人的相关信息，故其保留对第一申请人拟传召证人提出意见的权利及提名一名中国建筑测量师作为专家证人的权利。被申请人同时表示就专家证人事宜，各方应遵循指令（二）相关项的安排。

94. 同日，即 2016 年 3 月 4 日，第一申请人就被申请人于 2016 年 2 月 26 日信函内提交的证人的必要性，提出书面意见。

13

95.　2016 年 3 月 9 日，贝克致函仲裁庭，请求仲裁庭就第二申请人之遗产管理委任书附件清单中有关具法产权和法律责任的信息，及其 2016 年 1 月 12 日、2016 年 1 月 18 日函中提出的请求作出答复。

96.　2016 年 3 月 10 日，第一申请人就柯女士和张女士是否可以在本案中代表第二申请人提交《第一申请人的补充书面意见和相关案例书面意见》。第一申请人认为鉴于贝克已确定的遗产管理委任书不包含第二申请人于 4.28 协议中之具法产权及法律责任，柯女士和张女士欠缺法律权限在本案中代表第二申请人。

97.　2016 年 3 月 11 日，被申请人以电邮向仲裁庭重申其在 2016 年 1 月 15 日函件中的意见，即不反对仲裁庭将本案的卷宗材料提供给柯女士和张女士阅览，亦不反对柯女士和张女士在本案中代表第二申请人。同日，即 2016 年 3 月 11 日，被申请人在另封电邮中，向仲裁庭提交其对第一申请人 2016 年 3 月 4 日提交的有关证人必要性异议的回复。

98.　2016 年 3 月 24 日，贝克致函仲裁庭，重申其立场，即柯女士和张女士有权在本案中代表第二申请人参加本案，并认为仲裁庭在有关第二申请人之遗产管理人委任的问题尚未作出正式决定前，应即时中止本案的进行。

99.　2016 年 3 月 29 日，被申请人通过电邮向仲裁庭表示，其与第一申请人达成共识，将各方当事人交换其证人证词的期限（即指令(二)第 15 项）延长至 2016 年 4 月 15 日，请仲裁庭批准。同日，即 2016 年 3 月 29 日，仲裁庭以电邮批准该申请。

100.　2016 年 4 月 6 日，HKIAC 向各方当事人以电邮附件方式发送了仲裁庭日期为 2016 年 4 月 6 日的《关于第二申请人柯铮光先生之女儿柯烨颖女士及遗孀张跃进女士作为柯铮光先生之遗产管理人代表第二申请人之遗产参加仲裁案审理的决定》（"**决定（三）**"），仲裁庭裁定：（1）作为第二申请人之遗产管理人的柯女士及张女士有权代表第二申请人之遗产参加本案审理；（2）HKIAC 即时将第二申请人过世后有关本案发送给各方当事人的卷宗材料提供给该两位遗产管理人的代表律师贝克；（3）本案继续推进。次日，即 2016 年 4 月 7 日，仲裁庭亦将该决定（三）以电邮附件方式发送各方当事人。

101.　2016 年 4 月 14 日，贝克致函仲裁庭，请求鉴于其尚未收到本案的有关卷宗材料，在其有机会充分阅读和分析案件卷宗材料前，暂停当前仲裁程序的推进。

14

102. 2016 年 4 月 15 日，第一申请人致电邮给仲裁庭，内附第一申请人两位证人陈述书之电子版。同日，被申请人亦致电邮给仲裁庭，内附被申请人四位证人证言。

103. 2016 年 4 月 19 日，HKIAC 以快运方式向贝克提供了仲裁庭于决定（三）中指示提供的本案卷宗材料。

104. 2016 年 4 月 28 日，仲裁庭致电邮给各方当事人，要求贝克作为第二申请人的代理律师告知仲裁庭其当事人需要多少额外时间准备参加本案的审理。并鉴于贝克的加入，（1）建议与各方当事人召开案件管理会议，请各方当事人确定协商时间；（2）暂停 2015 年 12 月 21 日的程序时间表，以便让第二申请人有机会提交其证人证词（如有）。

105. 2016 年 5 月 3 日，仲裁庭致函各方当事人，指示贝克清楚表明其当事人是否要求参加本案的审理的立场。

106. 2016 年 5 月 4 日，第一申请人致电邮仲裁庭，确定案件管理会议召开时间。同日，第二申请人致电邮仲裁庭，确认柯女士和张女士将以第二申请人之遗产管理人的身份，参加本案的审理。

107. 2016 年 5 月 6 日，仲裁庭致电邮给各方当事人，指示案件管理会议以面对面方式进行，并请各方当事人预订会议地点。

108. 2016 年 5 月 10 日，第一申请人致电邮给仲裁庭，请求仲裁庭指令第二申请人遗产方须在 2016 年 6 月 2 日或之前，向仲裁庭及本案各方当事人就以下问题，确认其立场（1）第二申请人遗产方在本案中会否向第一申请人，及/或被申请人提出索赔；（2）第二申请人遗产方在本案中会否采纳现有之由第一申请人及第二申请人共同提交之仲裁申请书，作为其在本案申索之立场；（3）第二申请人遗产方在本案中会否提交其新的仲裁申请书/答辩书/回复书；（4）第二申请人遗产方是否只以旁听形式参与本案。同日，即 2016 年 5 月 10 日，仲裁庭致电邮给各方当事人，指示第二申请人不晚于 2016 年 5 月 12 日下午 6 时对第一申请人的申请提供其意见。

109. 2016 年 5 月 11 日，第二申请人致电邮给仲裁庭，请求将其答复第一申请人上述申请的时间延期至 2016 年 5 月 20 日。

110. 2016 年 5 月 12 日，被申请人致电邮仲裁庭，认为就第一申请人 2016 年 5 月 10 日邮件之要求，第一申请人应当首先表明其是否继续要求将第二申请人的遗产管理人转为被申请人或向第二申请人的遗产管理人提出申索。

15

111. 2016 年 5 月 13 日，仲裁庭致电邮各方当事人，批准第二申请人 2016 年 5 月 11 日邮件中之延期申请。

112. 2016 年 5 月 17 日，仲裁庭致电邮各方当事人，指示仲裁庭将等第二申请人在 2016 年 5 月 20 日的期限内回复了第一申请人的询问以后，再听取第一申请人的意见。

113. 2016 年 5 月 20 日，第二申请人致电邮仲裁庭，对第一申请人 2016 年 5 月 10 日邮件之询问作出答复，确认（1）第二申请人遗产方会以第二申请人的身份参加本案，且第二申请人不会在仲裁协议范围内对第一申请人提出任何申索；（2）第二申请人会采纳根据第二申请人之指示所提交的仲裁申请书，但第二申请人对第一申请人提交的修订仲裁申请书（即将第二申请人撤销并追加为第五申请人）表示反对；（3）第二申请人不会提交任何新的答辩书；（4）第二申请人会采纳旁听形式，但受限于邮件中列明的条件。

114. 2016 年 5 月 22 日，仲裁庭致电邮各方当事人，允许第一申请人不晚于 2016 年 5 月 27 日下午 6 时对第二申请人 2016 年 5 月 20 日的邮件作出回复。

115. 2016 年 6 月 3 日，仲裁庭致电邮各方当事人，提醒第一申请人其对第二申请人 2016 年 5 月 20 日的邮件作出回复的时限已过，指示其表明立场。2016 年 6 月 6 日，第一申请人致电邮仲裁庭，表示其将不迟于案件管理会 5 天前，提交第一申请人立场之书面陈词。2016 年 6 月 8 日，第二申请人致电邮仲裁庭，反对第一申请人的上述延期之举，并请求仲裁庭下令第一申请人不晚于 2016 年 6 月 13 日提交其回复。

116. 2016 年 6 月 14 日，第一申请人致电邮仲裁庭，内附其提交的回复第二申请人遗产方 2016 年 5 月 20 日之邮件《第一申请人的书面回复》。该回复中，第一申请人表示基于第二申请人遗产方 2016 年 5 月 20 日邮件之立场，第一申请人现时无需提出将第二申请人遗产方转为第五被申请人及对仲裁申请书做相应修订的申请。但鉴于第二申请人遗产方保留将来可能提出意见或进行补充等权利，如第二申请人遗产方提出与第一申请人不同或对其不利之立场，则第一申请人保留再次向仲裁庭申请将第二申请人遗产方转为被申请人之权利。第一申请人同时提议仲裁庭命令第二申请人遗产方作为本案"新增"的一方以状书及／或证人供词方式就其上述对于本案现有的立场及取态提交正式的书面陈述（包括对于现时本案已呈交的状书及／或证人供词确认没有意见及补充）。同时，第一申请人要求把现时的时间表的指引基于第二申请人遗产方的加入作相应的顺延。

16

117. 2016 年 6 月 21 日，仲裁庭致电邮各方当事人，指示第二申请人于 2016 年 6 月 23 日下午 6 点时前对第一申请人的书面回复提出其意见，尤其是以下两个问题：（1）第二申请人是否会在仲裁过程中采纳与第一申请人不一样的立场？（2）第二申请人是否会传召任何事实证人或专家证人？

118. 2016 年 6 月 23 日，仲裁庭致电邮各方当事人，指示被申请人尽快确认其是否会提名一名中国建筑测量师作为专家证人。

119. 同日，即 2016 年 6 月 23 日，贝克致电邮仲裁庭，内附《第二申请人之书面陈词大纲》及其《附件目录》。

120. 2016 年 6 月 24 日，仲裁庭与各方当事人召开案件管理会议。

121. 2016 年 6 月 28 日，仲裁庭致电邮各方当事人，内附日期为 2016 年 6 月 28 日的程序指令和庭审时间表（"**指令（三）**"）。指令（三）中，仲裁庭批准了第一申请人和被申请人分别传召的专家证人名单，并制定了庭审时间表。

122. 2016 年 6 月 29 日，被申请人致函仲裁庭，提交了被申请人之三位证人的证言。同日，第一申请人致电邮仲裁庭，确认其已于同日将第一申请人的事实证人陈述书连同附件的纸质版送达第二申请人代表律师。

123. 2016 年 7 月 21 日，贝克致电邮 HKIAC，确认其已收悉根据指令（三）的要求提供给其的，本案截至 2013 年 12 月 5 日第二申请人过世前提交给仲裁庭的所有文件（"**卷宗文件**"）。次日，即 2016 年 7 月 22 日，贝克致电邮仲裁庭，鉴于其实际收到上述卷宗文件的日期晚于指令（三）规定的截至日期，申请仲裁庭延长指令（三）庭审时间表中相关程序行动的截止日期。

124. 2016 年 7 月 26 日，贝克致电邮仲裁庭，称其注意到 HKIAC 提供给其的卷宗文件中尚缺被申请人《答辩及反诉书》之部分附件，并在此请求仲裁庭批准其于 2016 年 7 月 22 日提出的延时申请。

125. 2016 年 7 月 28 日，仲裁庭致电邮各方当事人，指示第一申请人和被申请人就第二申请人的延时申请提供意见。

126. 2016 年 7 月 29 日，第一申请人致电邮仲裁庭，表示第二申请人迟延收到卷宗文件系第二申请人自身原因所致，但在第二申请人向仲裁庭保证不会作出进一步的延期申请的前提下，不反对第二申请人所要求的延时申请。同日，被申请人致电邮仲裁庭，表示其不反对第二申请人的延时申请，并建议对庭审时间表中第 9-11 项的截止日期依国庆节假期相应顺延。

17

127. 2016 年 7 月 30 日，第二申请人致电邮仲裁庭，反驳第一申请人提出的第二申请人迟延收到卷宗文件系第二申请人自身原因所致的立场，并请仲裁庭作出下列指令：（1）批准第二申请人的延时申请；（2）被申请人在 7 天之内向第二申请人提供第二申请人尚未收悉的《答辩及反诉书》之附件（即附件 B46, C1－C30 及 D1－D30）；（3）第二申请人向被申请人支付上述《答辩及反诉书》之附件的合理影印费用；（4）第二申请人保留向第一申请人申索上述费用的权力；（5）各方当事人均有自由提出其它申请。

128. 2016 年 8 月 1 日，仲裁庭致电邮各方当事人，基于庭审时间保持不变的前提下，仲裁庭同意修改 指令（三），并颁布了新的程序指令及庭审时间表（"**指令（四）**"）。

129. 同日，即 2016 年 8 月 1 日，第二申请人致电邮仲裁庭，请求仲裁庭就其 2016 年 7 月 30 日邮件中的其他请求作出指令。

130. 2016 年 8 月 2 日，被申请人致电邮仲裁庭，同意有条件的提供第二申请人要求之《答辩及反诉书》之相关附件。

131. 2016 年 8 月 5 日，仲裁庭致电邮各方当事人，指示第二申请人与被申请人在就《答辩及反诉书》之相关附件的提供进行沟通后，告知仲裁庭结果。同日，第二申请人致电邮仲裁庭，确认以收到相关附件，并保留向第一申请人申索跟 HKIAC 和被申请人年取仲裁文件所产生的费用的权力。同日，第一申请人致电邮仲裁庭，否认第二申请人提出的"第一申请人从第二申请人处非法取走了文件"的指控，并附相关律师函。

132. 2016 年 8 月 15 日，第二申请人以邮件向仲裁庭提交柯女士的事实证人证词。同日，仲裁庭致电邮各方当事人，批准第二申请人传召叶永青先生作为专家证人的申请。

133. 2016 年 9 月 3 日，第一申请人致电邮仲裁庭，申请根据《香港国际仲裁中心机构仲裁规则 2013》2 第 18.1 条申请修改其《回复及反诉辩书》（"**修订申请**"），并附其《修订回复及反诉答辩书》的草拟本。第一申请人同时申请仲裁庭在仲裁庭及第二申请人及被申请人不反对第一申请人提交的《修订回复及反诉答辩书》的情况下，指示被申请人于第一申请人提交《修订回复及反诉答辩书》的 7 天内提交其《修改对申请人的回复及反诉答辩书的进一步答复书》。

---

2 仲裁庭注意到第一申请人援引了《香港国际仲裁中心机构仲裁规则 2013》，而本案应适用《香港国际仲裁中心机构仲裁规则 2008》。鉴于就一方当事人变更或补充其请求或答辩，两套规则中相关规定的差异对仲裁庭批准第一申请人修订申请无实质性影响，仲裁庭将视第一申请人的上述对《香港国际仲裁中心机构仲裁规则 2013》的援引为笔误。

134. 2016 年 9 月 8 日，被申请人致电邮仲裁庭，反对第一申请人提交《修订回复及反诉答辩书》。次日，即 2016 年 9 月 9 日，第一申请人致电邮仲裁庭，对被申请人的反对理由作出回复。

135. 2016 年 9 月 12 日，第二申请人致电邮仲裁庭，就第一申请人的修订申请表示同意，并恳请仲裁庭批准该申请。

136. 同日，即 2016 年 9 月 12 日，被申请人致电邮仲裁庭，表示各方当事人就指令（四）第 8、9 项的截止日期延期一周达成一致请仲裁庭批准。同日，仲裁庭致电邮各方当事人，批准该延期申请。

137. 2016 年 9 月 13 日，仲裁庭致电邮各方当事人，指示仲裁庭一致同意批准第一申请人的修订申请，但第一申请人必须支付各方当事人就此修订申请所产生的相关费用。仲裁庭同时要求第一申请人于 2016 年 9 月 15 日正式提交经修改的《回复及反诉答辩书》，并批准被申请人不晚于 2016 年 9 月 29 日提交其经修改的《对申请人的回复及反诉答辩书的进一步答复书》。

138. 同日，即 2016 年 9 月 13 日，第二申请人致电邮仲裁庭，请求仲裁庭给予其机会，就第一申请人对于《回复及反诉答辩书》的修改向仲裁庭提交回应。2016 年 9 月 21 日，仲裁庭致电邮各方当事人，表示不支持第二申请人就第一申请人对于《回复及反诉答辩书》的修改向仲裁庭提交回应书的申请。

139. 2016 年 9 月 14 日，第一申请人致电邮仲裁庭，正式提交其附件《修改回复及反诉答辩书》。

140. 2016 年 9 月 21 日，第一申请人致电邮仲裁庭，内附第一申请人的反驳事实证人陈述书两份。同日，第二申请人致电邮仲裁庭，内附柯女士的反驳证人证词及附件证据。同日，被申请人亦致函电邮仲裁庭，内附被申请人之三位证人即第二申请人、顾勇及刘毓平之补充证人证言共三份。

141. 2016 年 9 月 29 日，被申请人致函仲裁庭，内附被申请人之《修订对申请人的回复及反诉答辩书的进一步答复书》。

142. 2016 年 10 月 12 日，被申请人的代表律师致电邮仲裁庭，其团队成员已加入盛德律师事务所（Sidley Austin LLP）并受被申请人指示在本案中继续代理被申请人。

143. 2016 年 10 月 14 日，被申请人致电邮仲裁庭表示，经各方当事人达成一致，申请将仲裁庭指令（四）第 9 项中各方交换专家证人报告的期限由 2016 年 10 月 17 日延长 7 日至 2016 年 10 月 24 日，但这将不影响指令

19

（四）第 10 项及后续项目的截止日期。同日，仲裁庭致电邮各方当事人，在各方当事人达成一致的前提下，批准上述申请。

144. 2016 年 10 月 24 日，第二申请人致电邮仲裁庭，申请在不影响仲裁时间表中下一个截止日期（即 2016 年 11 月 28 日召开专家会）的前提下，将各方交换专家证人报告的时限延期至 2016 年 10 月 28 日。第二申请人表示其已就本申请征求第一申请人及其代理律师的意见，且被申请人代理律师已表示同意。但第一申请人律师尚未作出任何回复。同日，即 2016 年 10 月 24 日，第一申请人致电邮仲裁庭，表示不反对第二申请人的上述申请，但希望仲裁庭就此次延期申请下达"除非"命令（"unless order"）。仲裁庭于同日致电邮各方当事人，批准第二申请人的上述延期申请，并表示除非有异常特殊的原因，仲裁庭将不会再允许任何延期申请，以免影响开庭日期。

145. 2016 年 10 月 28 日，第二申请人致电邮仲裁庭，申请各方当事人当天在不影响权利的基础上提供未经签署的第一轮专家报告。同日，第一申请人致电邮仲裁庭，反对第二申请人提交未经签署的第一轮专家报告。之后，仲裁庭于同日致电邮各方当事人，请第二申请人澄清其专家报告未经签署的原因，何时能签署；及签署过的专家报告的内容是否与未签署报告的内容完全一致。随后，第二申请人致电邮仲裁庭，解释其申请的原因，并请仲裁庭下令第一轮的专家证人报告是否能在不影响权力的前提下交换。

146. 同日，即 2016 年 10 月 28 日，第一申请人致电邮仲裁庭，内附第一申请人的专家报告两份。同日，第二申请人和被申请人亦分别致电邮仲裁庭，表示其已在无损权益的前提下，将其经签署的专家证人报告送达其他各方当事人。

147. 2016 年 11 月 15 日，第二申请人致电邮仲裁庭，表示基于该邮件所述理由，第二申请人及被申请人一致认为专家讨论会应在无损权益 (without prejudice) 的基础上召开，且无须各当事人的代理律师参加。第二申请人请仲裁庭就此作出指示。

148. 2016 年 11 月 21 日，仲裁庭致电邮各方当事人，批准专家讨论会应在无损权益 (without prejudice) 的基础上召开。

149. 2016 年 12 月 13 日，被申请人致函仲裁庭，表示鉴于其收到第一申请人和第二申请人分别向被申请人作出的不同甚至相反的指示和/或要求，请求仲裁庭作出以下指令：（1）指示第二申请人（通过其遗产管理人）对于第一申请人 2016 年 12 月 9 日信函中的两项要求发表意见；（2）指示第一申请人对于张女士近期的要求发表意见；及（3）除非申请人达成一

20

致并共同给予被申请人要求，被申请人将不予接受第一申请人和第二申请人任何一边的单方指示。

150. 2016 年 12 月 21 日，被申请人致电邮仲裁庭，表示经各方当事人达成一致，申请将提交专家证人一致同意的观点陈述及不同意的观点陈述的联合报告的期限延长至 2017 年 1 月 4 日。

151. 2016 年 12 月 30 日，第二申请人致电邮仲裁庭，内附其对被申请人 2016 年 12 月 13 信函的回复。

152. 2016 年 12 月 31 日，第一申请人致电邮仲裁庭，就被申请人 2016 年 12 月 13 日函及第二申请人 2016 年 12 月 30 日函，作出回复。

153. 2017 年 1 月 11 日，仲裁庭致电邮各方当事人。仲裁庭表示其认为各方当事人的相互指责或指控与此案无关，故不予以考虑或裁断。就被申请人提交第一申请人方 12 月 9 日的无损权利信函，仲裁庭请各方当事人确认尽管该信函有抄送仲裁庭，仲裁庭可以继续审理本案，并提醒各方当事人提交专家联合报告。

154. 2017 年 1 月 12- 13 日间，各方当事人致电邮仲裁庭，确认仲裁庭可以继续审理本案。

155. 2017 年 1 月 13 日，被申请人致电邮仲裁庭，表示经各方当事人达成一致，申请将提交专家联合报告的期限延长至 2017 年 1 月 25 日。仲裁庭于 2017 年 1 月 19 日致电邮各方当事人，不影响整体庭审时间表的情况下，批准该延期申请。

156. 2017 年 2 月 16 日，第一申请人致电邮仲裁庭，建议仲裁庭就庭审前程序会议的时间作出指示。

157. 2017 年 2 月 21 日，被申请人致函仲裁庭，内附其（1）代表申请人与被申请人共同提交的《关于股权转让问题、税费问题的联合专家意见》；及（2）代表第一申请人与被申请人共同提交的《关于房地产问题的联合专家意见》。

158. 2017 年 2 月 27 日，仲裁庭致电邮各方当事人，通知将于 2017 年 4 月 3 日召开的庭审前程序会议的具体时间，并告知各方，由于其中一名仲裁员有时间冲突，仲裁庭同意由首仲独自主持庭审前程序会议，请各方当事人确认。各方当事人于 2017 年 2 月 27-28 日，分别致电邮仲裁庭，确定同意上述安排。

21

159. 2017 年 3 月 1 日，被申请人致电邮仲裁庭，内附（1）余健女士的半岛君望项目评估顾问报告；（2）余健女士的绿庭尚城项目评估顾问报告；（3）季诺先生的专家意见书及援引法律法规摘要。

160. 2017 年 3 月 6 日，第一申请人致建议仲裁庭，投诉被申请人于 2017 年 3 月 1 日提交的"季诺先生的专家意见书及援引法律法规摘要"，相较 2016 年 10 月 28 日交换及提交的季诺先生的专家意见书，内容有重大添加或更改。第一申请人要求仲裁庭下达指示，不予接纳被申请人在 2017 年 3 月 1 日电邮所提交的所有专家报告，并不准许任何一方当事人提交任何新的或有改动的专家报告。

161. 同日，即 2017 年 3 月 6 日，第二申请人亦致电邮仲裁庭，亦反对被申请人提交与其于 2017 年 2 月 21 日交换之版本的专家报告内容不同的新专家报告，并请求仲裁庭驳回被申请人于 2017 年 3 月 1 日提交的专家报告。

162. 2017 年 3 月 7 日，仲裁庭致电邮各方当事人，指示被申请人于 2017 年 3 月 9 日下午 6 时前就第一申请人和第二申请人的上述观点和建议作出回复。

163. 2017 年 3 月 9 日，仲裁庭致电邮各方当事人，建议将原定在 2017 年 5 月 15 日至 26 日（十个工作日）的开庭时间因一位仲裁员的临时紧急安排调整到自 2017 年 5 月 16 日开始，并致需要的情况下，延长每日开庭时间。仲裁庭请各方当事人于 2017 年 4 月 3 日的庭审前程序会议之前确认以上仲裁庭建议的安排。各方当事人于 2017 年 3 月 9 日-10 日间，分别致电邮仲裁庭，确认同意上述安排。

164. 2017 年 3 月 9 日，被申请人致电邮仲裁庭，回复申请人 2017 年 3 月 6 日邮件中的驳回申请，并请仲裁庭驳回申请人的驳回请求。2017 年 3 月 10 日，仲裁庭致电邮各方当事人，指示第一申请人和第二申请人如拟对被申请人的邮件作出回复，需于 2017 年 3 月 14 日前作出。

165. 2017 年 3 月 13 日及 14 日，第一申请人和第二申请人分别致函仲裁庭，就被申请人的 2017 年 3 月 9 日的邮件作出回复。

166. 2017 年 3 月 29 日，第一申请人致电邮仲裁庭，内附各方当事人共同草拟的一份庭审前程序会议的议程。

167. 2017 年 3 月 30 日，被申请人致电邮仲裁庭，表示其愿意在 "de bene esse"（有条件的）的基础上 提供一份季诺先生的最终专家意见书与 2016 年 10 月 28 日版本的比较版（"**比较版**"），以证明最终版本并非如第一申请人所述"内容有重大添加或更改"。仲裁庭于同日以邮件指

22

示被申请人在此基础上，提供比较版，供仲裁庭与第一和第二申请人审核。

168. 2017 年 3 月 31 日，第二申请人致电邮仲裁庭，表示反对被申请人在 "de bene esse"（有条件的）的基础上提供比较版，亦反对被申请人正式提交比较版，并请求仲裁庭驳回被申请人提交比较版的请求，或不予考虑该比较版。同日，2017 年 3 月 31 日，被申请人致电邮仲裁庭，向各方当事人提供比较版。第一申请人亦于同日，对被申请人提交比较版的邮件作出回复。

169. 2017 年 4 月 2 日，仲裁庭致电邮各方当事人，总结各方当事人就比较版的往来邮件及主要立场，并表示将在庭审前程序会议上与各方当事人做进一步沟通。

170. 2017 年 4 月 3 日，仲裁庭与各方当事人在 HKIAC 召开了庭审前程序会议。

171. 2017 年 4 月 4 日，仲裁庭致电邮各方当事人，指示：（1）允许被申请人提交 2016 年 10 月 28 日季诺先生的专家意见书；（2）驳回被申请人 2017 年 3 月 1 日提交的季诺先生的专家意见书及援引法律法规摘要内对第 8 段、第 9 段和第 32 段的修改；（3）驳回被申请人 2017 年 3 月 1 日提交的季诺先生的专家意见书附件二中的注 3、注 7、注 22、注 23、注 24，以及删除掉的注 5（同时参照下面第 4 点指示）；（4）允许被申请人 2017 年 3 月 1 日提交的季诺先生的专家意见书附件二中的所有"参见法律法规摘要第[x]页"字句和《援引法律法规摘要》（注 3、注 7、注 22、注 23、注 24，以及删除掉的注 5 除外）；（5）允许被申请人 2017 年 3 月 1 日提交的《援引法律法规摘》；（6）不支持作出任何费用指令。

172. 2017 年 4 月 5 日，仲裁庭以邮件向各方当事人就庭审安排的细节作出程序指令（"**指令（五）**"）。

173. 2017 年 4 月 11、19 日，仲裁庭致电邮各方当事人，就庭审卷宗的有关问题作出补充指示。

174. 2017 年 5 月 5 日，第一申请人和第二申请人分别致电邮仲裁庭，内附其各自提交的庭审前的书面陈述（包括《法据典章》）的电子版。

175. 2017 年 5 月 5-6 日，各方当事人分别致电邮仲裁庭，表示因各方当事人未就大事记及涉案的人物介绍之内容达成一致，未能在指令（五）规定的限期前提交有关大事记和涉案的人物介绍。同时，被申请人建议将提交该等文件的期限延长至 2017 年 5 月 9 日下午 6 时。仲裁庭 2017 年 5 月 7 日，仲裁庭批准将该期限延至 2017 年 5 月 8 日下午 2 时。

23

176. 2017 年 5 月 8 日，被申请人致电邮仲裁庭，表示经与申请人两方达成共识，申请将被申请人提交庭审前的书面陈述的期限延长至 2017 年 5 月 9 日下午 6 时。仲裁庭于同日即 2017 年 5 月 8 日批准该申请。2017 年 5 月 9 日，被申请人致电邮仲裁庭，内附其提交的庭审前的书面陈述及《法据典章》的电子版。次日，即 2017 年 5 月 9 日，被申请人因《法据典章》的电子版有缺失页，重新以电邮向仲裁庭发送《法据典章》的电子版。

177. 2017 年 5 月 9 日，第二申请人致电邮仲裁庭，内附现附上各方当事人的：（1）大事记；及（2）涉案的人物介绍和关系图。第二申请人表示以上文件涵盖了各方当事人的立场，但由于各方当事人无法在指定期限内就该等文件内容完全达成共识，申请人方在文件中各方当事人意见不一致处已另加标注及评论，供仲裁庭参考。

178. 2017 年 5 月 14 日，仲裁庭致电邮各方当事人，指示各方于 2017 年 5 月 15 日下午 3 时之前通知仲裁庭证人出庭的时间和顺序，并指示届时仲裁庭希望收到一份各方达成一致的时间表。

179. 2017 年 5 月 15 日，第一申请人致电邮仲裁庭，内附申请人庭审前的书面陈述之 第一申请人的补充法律法规列表的电子版。同日，2017 年 5 月 15 日，被申请人致电邮仲裁庭，内附（1）修订后的被申请人方庭审前的书面陈述之《法据典章》3；（2）股权转让相关结构示意图和步骤总结表。

180. 2017 年 5 月 16 日，第一申请人致电邮仲裁庭，内附各方当事人共同磋商的证人出庭的时间和顺序。

181. 2017 年 5 月 16 日，仲裁庭与各方当事人开始庭审。庭审于 2017 年 5 月 16 日至 2017 年 5 月 25 日之间连续进行，并于 2017 年 5 月 25 日结束。2017 年 8 月 8 日，仲裁庭开庭，听取各方当事人的结案陈词。

182. 2017 年 5 月 16 日庭审第一天，各方当事人同意为庭审之目的，删除以下段落：即（a）徐宏标证词陈述书的第 56-65 段（B 卷宗的第 24-27 页）；(b)徐宏标反驳事实人陈述书的第 23-24 段（B 卷宗的第 104 页）；(c) 柯烨颖反驳证人证词的第 5-6 段（B 卷宗的第 134 页）、第 19-31 段（B 卷宗的第 135-137 页）和第 39-59 段（B 卷宗的第 138-142 页）。

## IV.　事实背景

---

3 被申请人的邮件及其附件中使用的原文为"法律典章"。

183. 绿洲投资（第一被申请人）是一家于 2001 年 7 月 26 日在英属维京群岛注册成立的公司。其亦是以下三家公司的母公司：上海绿庭房地产开发有限公司（"**绿庭地产**"）、绿庭置业有限公司（"**绿庭置业**"）及上海绿洲科创生态科技有限公司（"**绿洲科创**"）。除绿庭置业于香港成立外，绿庭地产和绿洲科创皆于中国境内成立。

184. 绿洲投资总发行股份共 48,000 股，原本的股权分布如下：徐宏标（第一申请人）持 8,000 股（占 16.6%）、柯铮光（已逝，其遗产为本案的第二申请人）持 8,000 股（占 16.6%）、俞乃奋（第二被申请人）持 23,520 股（占 49%）、俞乃雯（第三被申请人）持 8,000 股（占 16.6%）及俞乃筠（第四被申请人）持 480 股（占 1%）。由于俞乃奋、俞乃雯及俞乃筠三人的总持股量占 66.6%，故在 4.28 协议下被称为"控股股东"，而徐宏标和柯铮光则在 4.28 协议下被称为"参股股东"。

185. 自 2009 年初，参股股东与控股股东开始就绿洲投资的股权重组问题进行磋商。磋商经过及内容于下列文件可见：2009 年 3 月 24 日的《绿庭股东会、董事会关于资产拆分及其他相关事宜的决议》[D2/61/607]、2009 年 9 月 4 日的《绿庭 2009 年 8 月 20 日召开股东会会议纪要》（也称为"8.20 纪要"）[D2/63/615]、2009 年 11 月 9 日的《绿洲投资集团有限公司股权重组初步协议》（"**重组协议**"）[D2/68/622] 及 2010 年 2 月 3 日的《会议纪要》[D2/96/718]。

186. 最终，双方及相关公司于 2010 年 4 月 28 日签订了《4.28 协议》[4]，其主要内容如下：

(1) 柯铮光及徐宏标将其各自持有的绿洲投资股权分别转让予喜盈国际集团有限公司（"**喜盈国际**"）及 Focus Town Limited（"**Focus Town**"），在该等转让完成后，再由绿洲投资回购喜盈国际及 Focus Town 分别持有的绿洲投资股权（"**回购前股权转让**"）。被申请人同意以上安排并愿意提供必要的配合：见第 1.1 条 [D2/100/751]。

(2) 绿洲投资须就回购前股权转让向参股股东支付三部分对价，包括现金对价、股权对价及物业互换对价：

(3) **现金对价**部分合共人民币 2.5 亿元，分三期支付，分别为：8 千万元、2 千万元及 1.5 亿元；每一期付款均需满足一定先决条件：见第 2.1 及 2.2 条 [D2/100/752]。

---

[4] 4.28 协议有 10 个签署方，即(i) 绿洲投资; (ii) 俞乃奋; (iii) 俞乃雯; (iv) 俞乃筠; (v) 柯铮光; (vi) 徐宏标; (vii) 喜盈国际集团有限公司; (viii) Focus Town Limited; (ix) 绿庭置业; 和 (x)绿洲科创。

(4) **股权对价**部分以上海绿庭四季花城房地产开发有限公司（"**四季花城**"）100%的股权计付：见第 2.3 条 [D2/100/754]。4.28 协议下的安排旨在让参股股东全权拥有及控制四季花城。

(5) **物业互换对价**部分则是绿洲投资及控股股东须指定绿庭地产与参股股东(或其指定第三方)签署《上海市房地产买卖合同》，将绿庭地产持有的上海市松江区九亭绿庭尚城房产项目物业 商业用房约 8000 平方米（"**九亭商铺**"）转让给参股股东(或其指定的第三方)。与此同时，四季花城将与绿洲投资或控股股东指定的第三方签署《别墅定制合同》，将其开发的、位于上海市奉贤区奉浦工业区半岛名墅项目的中心岛 A2 型别墅 2 幢（"**A2 型别墅**"）转让给绿洲投资或控股股东指定的第三方。各方确认上述《上海市房地产买卖合同》及《别墅定制合同》所涉及房屋的价值均价作价人民币 7,200 万元。由于两者价格相等，此项对价视为相互抵消：见第 3.1 至 3.3 条 [D2/100/755]。

(6) 自协议签订之日起，四季花城与绿庭投资及其下属公司之间的关联交易应予终止；所有债权债务应在一个月内予以清理结算：见 3.6 条 [D2/100/756]。

187. 4.28 协议签订后，喜盈国际及 Focus Town 的回购前股权转让均于 2010 年 5 月 4 日完成 [D2/110 – 114/791 – 799]，即参股股东已及时履行了 4.28 协议下的部分义务。然而，参股股东与控股股东之间就股权回购的现金对价、股权对价、物业互换对价与债权债务的清结问题均产生了争议，并最终引发本次仲裁。

## V. 争议事项及双方立场

### A. 现金对价

188. 就现金对价部分，绿洲投资已按 4.28 协议规定支付第一及第二期（总额为人民币 1 亿元）的款项予参股股东。

189. 然而，绿洲投资至今尚未支付第三期款项(计人民币 1.5 亿元，最终金额应按 4.28 协议第 2.2.1（4）条的规定调整)。根据第 2.2.1（3）条，第三期款项须在下列先决条件获得满足的前提下，于 2012 年 12 月 31 日前支付：

(1) 四季花城股权转让的政府审批及登记手续已经完成；

(2) 绿洲投资已经完成回购参股股东股权所必需的股东变更登记手续；

26

(3)　　　参股股东与控股股东已经就第2.1条规定的现金对价支付安排及各项调整金额达成协议；

(4)　　　参股股东确认4.28协议第2.3.5款规定的股权对价支付已经完成且各方对此无争议；

(5)　　　4.28协议第3.1款所述之关于九亭商铺的《上海市房地产买卖合同》及4.28协议第3.2款所述之关于A2型别墅的《上海市房地产预售合同》已经签署并完成在房地产登记机关的过户或预售登记手续。

190.　　参股股东及控股股东均指称因对方违约导致上述先决条件第（1）、（3）、（4）及（5）项至今均未完全获得满足。双方无争议的是先决条件第(2)项已完成。

**B. 股权对价**

**股权转让架构**

191.　　4.28协议第2.3.1条约定：

*"绿洲投资已在香港新设立了世邦有限公司（"**世邦公司**"），并已经安排世邦公司收购了绿洲投资香港子公司[绿庭置业]所持有之[四季花城]80%的股权。该等股权收购完成后，绿洲投资应与[喜盈国际]和[Focus Town]签署一份《股权购买协议》，约定在下述第2.3.2款约定的托管期限届满后，将世邦公司100%的股权以港币一元对价转让给[喜盈国际]和[Focus Town]。"*

192.　　4.28协议第2.3.2条进一步规定：

*"各方约定：绿洲投资在世邦公司股权转让给[喜盈国际]和[Focus Town]的《股权购买协议》签署后，由绿庭置业与[喜盈国际]和[Focus Town]签署相关托管协议，该协议约定：（1）[喜盈国际]和Focus Town受绿庭置业委托管理世邦公司并代为行使股东权利三年（"托管期限"）；（2）托管期限内世邦公司及四季花城的所有债权债务、责任与风险均由参股股东承担。如因任何原因导致控股股东、绿洲投资或绿庭置业需承担世邦公司或四季花城在托管期间的债权债务、风险或责任时，参股股东需向控股股东、绿洲投资或绿庭置业提供全额赔偿。"*

193.　　4.28协议第2.3.3条则规定：

*"[四季花城]目前由绿洲投资下属[绿洲科创]持有的另外20%股权转让于参股股东指定的一家中国国内企业（"境内股权对价支付"）。如按照*

中国法律规定，该等股权转让需实际支付对价时，按照前述第 2.2.1 (4)（a)款的规定处理。"

194.    4.28 协议第 2.3.4 条规定：

"各方同意，因*境内*股权对价支付所产生的税收、费用，以及*境外*世邦公司托管安排及股权转让给[喜盈国际]和[Focus Town]的税收、费用由参股股东承担。除此之外的与股权对价支付有关的税收、费用的分担问题，由各方届时另行协商。因境内及境外股权对价支付相关的股权转让手续，即申请、登记、政府手续等项事宜均由参股股东负责办理，控股股东、绿洲投资提供必要的协助。"（下划线后加）

**C.    物业互换对价**

195.    4.28 协议规定的是双方的物业互换，即：以九亭商铺与 A2 型别墅互换且互为对价。申请人的立场为：4.28 协议确认了九亭商铺及 A2 型别墅价值均作价人民币 7,200 万元，相互抵清，双方不再实际支付物业价值，所以不存在九亭商铺与 A2 型别墅实际上是否等值的问题。而且，协议第 3.2 条亦订明两幢 A2 型别墅的"图纸面积各约 1200 平方米"，但协议从未提及或暗示人民币 7,200 万元的价值是以可销售建筑面积为基础计算的。

196.    被申请人则声称 A2 型别墅作价人民币 7,200 万元的计算是根据（1）两幢别墅共 2400 平方米的可销售建筑面积，及（2）每平方米建筑面积平均均价不低于人民币 31,500 元计算而来，被申请人声称这是双方同意 4.28 协议第 3.3 条的基础。

197.    以下，仲裁庭逐一概述各方对现金对价、股权对价、物业互换未能如约完成的主张。如仲裁庭没有在此裁决书中特别指明某一方当事人的陈述或观点，这不代表仲裁庭疏于考虑该部分陈述。鉴于各方当事人在本案的陈述之广，仲裁庭认为没有必要列明当事人的每一项陈述，而在本裁决中列明当事人的每一项陈述也是不现实的。仲裁庭已详细审阅并仔细考虑了各方当事人的陈述。仲裁成员也就各方当事人的陈述进行了讨论。

**现金对价的支付**

198.    申请人认为，根据 4.28 协议第 2.2.1(3)(d)条，控股股东支付现金对价中第三期款项的其中一个先决条件是参股股东确认 4.28 协议第 2.3.5 款规定的股权对价支付已经完成且各方对此无争议，而"仲裁双方就以下每个股权转让步骤均有争议：（1）世邦公司收购绿庭置业所持的 80%四季花城股权；（2）绿洲投资把世邦公司的股权转让给参股股东的 Focus Town

28

Limited 和喜盈国际；（3）绿洲科创把其持有的[20%]5四季花城股权转
让给参股股东制定的一家中国国内企业（即上海绿豪贸易有限公司（以下
简称 "**绿豪贸易**"）。"且这三项股权转让未获完成的原因应归责于被
申请人。

199. 被申请人认同先决条件未获完成的主张，但认为第 2.2.1（3）条第（B）
段至第（D）段规定的先决条件不成就的责任在于申请人。

200. 如上文第189至190段所述，因支付该笔款项的某些先决条件未获满足，
故绿洲投资未将该笔款项支付给参股股东。而先决条件未获满足的原因与
股权对价的支付未获完成相关，故仲裁庭将在下文涉及股权对价的部分概
述各方立场。

**股权对价的支付**

201. 就股权对价的支付，4.28 协议第 2.3.5 款规定，股权对价在以下两份协议
获签署后即视为已经完成：（1）第 2.3.1 款所述的《股权购买权协
议》，及（2）第 2.3.2 款所述的《托管协议》。根据 4.28 协议规定，
绿洲投资及控股股东应与喜盈国际和 Focus Town 签署《股权购买权协
议》，在该协议下，由绿洲投资将其在世邦公司 100%的股权以港币一元
为对价转让给参股股东所设立的喜盈国际和 Focus Town。在上述世邦
《股权购买权协议》签署后，由绿庭置业与喜盈国际和 Focus Town 签署的
《托管协议》，在该协议中各方会约定（a）喜盈国际和 Focus Town 受
绿庭置业委托管理世邦公司并代为行使股东权利三年，（b）该三年托管
期内，世邦公司及四季花城的所有债权债务、责任和风险由参股股东
承，且参股股东对控股股东就控股股东实际承担的此等债权债务、责任
和风险对控股股东承担全额补偿责任。

202. 申请人主张，四季花城的转让有三个步骤：（1）绿洲投资完成世邦公司
收购绿庭置业所持的 80%四季花城股权（"世邦收购"，即四季花城
80%股权转让的第一步）；（2）三年托管期满后，绿洲投资把世邦公司
的股权转让给参股股东设立的 Focus Town 和喜盈国际（即四季花城 80%
股权转让的第二步）；（3）绿洲科创把其持有的[20%]6四季花城股权转
让给参股股东指定的一家中国国内企业（即绿豪贸易）。申请人主张，
对以上每个股权转让步骤，仲裁双方均有争议。但四季花城的股权转让
未获完成的根本原因是控股股东违反其在 4.28 协议下的合同责任、严重
拖延所致。

---

5 申请人总结陈词中此处笔误写为 80%。

6 申请人总结陈词中此处笔误写为 80%。

29

203. 就第一步世邦收购未获完成，被申请人主张原因有三：（1）签署 4.28 协议时，绿庭置业在四季花城的股权仅为 69%，不能享受 2009 年 4 月 30 日财政部和国家税务总局下发的《关于企业重组业务企业所得税处理若干问题的通知》（下称 "59 号文"）的优惠税务处理待遇（最少 75% 方可），故需先增资最少到 75%，此增资 2011 年 7 月才完成（增到 80%）；（2）控股股东在第 2.3.1 条下只有 "安排" 世邦收购的义务，其设立世邦已经履行了该义务；（3）参股股东彼时对四季花城已有实际控制权，而其未提供四季花城的审计报告及/或评估报告，从而令控股股东无法向相关政府机构提交 "合理的股权转让价格"，而导致世邦收购未完成。

204. 申请人则主张：

第一，世邦收购未获完成的根本原因是控股股东违反 4.28 协议第 2.3.1 条的规定，连绿庭业与世邦之间就四季花城的 80% 股权转让这个最基本的股权转让协议（"80% 股转协议"）都不提供，导致转让手续无法开展（更不论完成）；

第二，根据 4.28 协议第 2.3.1 条的明确条文表述，世邦收购在 4.28 协议签署时已经进行，基于合约不容反悔的原则(contractual estoppel) 和协定不容反悔原则（estoppel by convention），控股股东不能反悔称其在该条下仅有 "安排" 世邦收购的义务，而无视 "收购" 本身的重要性，也不能反称世邦收购尚未完成。因此，即使在 4.28 协议签署时，世邦收购事实上因为四季花城增资工作尚未完成而未发生，也不影响参股股东依赖第 2.3.1 条的清晰含义和效力，也即，为使控股股东完成其在该条下将四季花城 80% 的股权最终转让至参股股东的义务（对此各方无争议），控股股东有完成世邦收购的责任；

第三，就被申请人提出的以下主张，即参股股东事实上知道 4.28 协议签署时，四季花城增资尚未完成，故其也知道彼时世邦收购尚未完成，申请人认为即使参股股东知道条文所写的概况并非事实，也不应影响合约不容反悔或协议不容反悔原则的应用，且本案的证据显示参股股东事实上并不知道在 4.28 协议签署时四季花城并未完成增资；

第四，就被申请人以 4.28 协议第 2.3.4 条为依据，称完成世邦收购是申请人的责任，申请人认为，4.28 协议第 2.3.4 条将需由参股股东主导并承担相关税费的范围限定在（a）因境内股权对价支付相关的转让手续（即绿洲科创将其在四季花城的 20% 的股权转让给绿豪贸易）及所产生的税费和 (b) 因境外世邦托管安排及将世邦股权转让给喜盈国际和 Focus Town 的转股手续和产生的税费，而不包括世邦收购本身的转股手续或税费；

30

第五，根据专家意见，80%股转协议是完成世邦收购的根本性申请文件，而被申请人从未向申请人提供此文件。而对于被申请人主张世邦收购系因参股股东未向控股股东提供彼时在参股股东控制下的四季花城的审计报告及/或评估报告，从而令控股股东无法向相关政府机构提交"合理的股权转让价格"，而导致世邦收购未完成，申请人认为，基于专家意见，审计报告及/或评估报告仅会影响股权转让手续完成后（即商委审批和工商登记完成后）税务主管机关对转让价格适当性的评估和调整，不会影响转让效力本身。至于被申请人提出的参股股东负有承担世邦收购的税费责任，申请人认为此等税费由控股股东承担是 4.28 协议中应有之意，否则各方会在该协议中订明。

205. 就四季花城 20%的股权转让未获完成，被申请人主张是由于申请人拖延至 2011 年 3 月才指定绿素贸易为 4.28 协议第 2.3.3 条下境内公司所致。申请人则主张，在绿洲科创在四季花城的持股比例降至 20%之前，即使申请人已经指定了境内公司，事实上也不能完成四季花城 20%的股权转让。

206. 被申请人主张，四季花城 80%和 20%股权的转让可以分开进行，因此，请仲裁庭分开考虑 80%和 20%股权转让的责任问题。被申请人亦提出，四季花城的控制权于 2009 年 11 月 15 日已完全交于申请人。

207. 被申请人认为，根据中国法律专家意见，四季花城 20%和 80%股权转让均须经过三个阶段的行政手续，即商务主管部门审批、工商变更登记、税务外汇等变更登记，其中季诺认为商务主管部门审批阶段已经开始体现审计机构对审计报告和评估报告的要求，商务主管部门会将审计报告或评估报告作为重要参考，而季诺和叶永青均同意，奉贤区经济委员会公布的《外资企业股权转让的审批程序》中要求的"会计师事务所出具的企业上年度的审计报告"实践中各方应提供，且转股协议中通常应包含购买的股权的数额及其价格或计算方法。

208. 就 20%股权的转让，被申请人认为，由于 2009 年 11 月 15 日起申请人已实际控制四季花城，因此只有申请人才能使审计师/评估师对四季花城的资产作出转股前最新的审计/评估，但申请人一直未提供该等最新审计/评估，故无法得出合理的股权转让价格，缺乏该条，就无法编写《股权转让协议》。因此，20%股权的转让未完成的责任在于申请人未履行其在 4.28 协议第 2.3.4 条项下的义务，促使四季花城准备最新的审计报告或评估报告，及时指定作为 20%股权受让人的境内企业，且在四季花城增资于 2011 年 7 月完成后（即绿洲科创在四季花城的股比降到 20%后），申请人仍未推进此部分转股。

31

209. 就 80%股权的转让，被申请人认为，这部分转让未获完成的关键在于绿庭置业向世邦转让其在四季花城的 80%的股权未获完成，而未完成的责任在于申请人。被申请人认为，根据4.28协议第2.3.4条的规定，绿庭置业向世邦转让其在四季花城 80%的股权属于"境外股权对价支付的其中一个步骤"，故被申请人对该转让仅有协助义务而无主导责任。申请人应负责此转让，包括拟备《股权转让协议》，而该协议也需要参考四季花城最新的审计报告或评估报告得出一个为主管机关接受的公允价格。同样，提供该审计报告或评估报告的责任在申请人。

210. 就在 4.28协议签署时，申请人是否知道四季花城 80%的股权尚未转让给世邦，被申请人认为，证据资料表明申请清楚知道。而 4.28协议第2.3.1条所写"绿洲投资…已经安排世邦公司收购了绿洲投资所持有之…四季花城 80%的股权"是一个笔误，若其彼时确实已完成该等收购，则此句应出现于 4.28协议序言而非第2.3.1条，且该条第二句"该等股权收购完成后…"亦无必要。对此处，各方的真实意图是绿洲投资已安排了世邦去收购该 80%股权。

211. 就 80%股权转让的税费承担，被申请人主张该税费应由申请人承担，原因如下：第一，把四季花城 80%股权以迂回的途径转让给申请人设立的喜盈国际和 Focus Town 是为了替申请人省税；第二，申请人没有证据证明各方同意被申请人未来承担这 80%股权转让的税费；第三，各方定约时的意图是如果万一不能用 59 号文来帮助申请人省税，被申请人愿意考虑届时另行协商承担本应由申请人承担的一定比例的税费；第四，在 4.28协议第2.3.4条下，也明确约定了"除此以外与股权对价支付有关的税收、费用的分担均属另行协商"；第五，申请人以合约不容反悔为由，主张既然 4.28协议签署时四季花城 80%的股权已由绿庭置业转让给世邦，则相关税费当然由绿庭/世邦承担，与申请人无关，对此被申请人认为合约不容反悔在此不适用；第六，如仲裁庭认为这 80%股权转让的税费承担不涵盖在 4.28协议第2.3.4条第二句下，则其应涵盖在该条第一句下。

### **物业互换的完成**

212. 申请人主张，根据4.28协议第3.1条至第3.3条的约定，四季花城仅有义务将其开发的、位于协议中上海奉贤区指定地点的两幢 A2 型别墅在达到交易标准后转让给绿洲投资或控股股东指定的第三方，而该两幢 A2 型别墅的图纸建筑面积各约为 1200 平方米，且各方确认其作价共计为人民币7200 万元。

213. 第一，对于何谓"图纸建筑面积"，申请人主张此即为上海奉贤区规划管理局批准的图纸所显示的建筑面积，而该图纸附于上海奉贤区规划管

32

理局于 2009 年 1 月 7 日（即四季花城仍在控股股东控制时）发出的《建设工程规划许可证》中，该许可证由控股股东移交参股股东，此后有关 A2 型别墅的建筑工程均依该图纸进行，图纸未经修改。基于上述原因，申请人主张，控股股东关于"图纸建筑面积"系指可销售面积或计容面积的说法不应被被采纳。

214. 第二，对于 4.28 协议第 3.3 条约定的是将 A2 型别墅与九亭商铺做物业互换还是等价交换，申请人主张，各方约定为物业互换，即各方均同意将 (i) 九亭商铺和 (ii) 2 幢 A2 型别墅均作价为人民币 7200 万，由于两者价格相等，故此项对价相互抵消。因此，九亭商铺和 2 幢 A2 型别墅的市场价格与物业互换无关。

215. 申请人认为，由于控股股东无正当理由拒绝接受 A2 型别墅，也拒绝进行九亭商铺的转让，对参股股东造成严重损失（包括因参股股东没有对九亭商铺二期 2000 平方米的控制权而不能将此部分正常出租的租金损失）。

216. 被申请人认为，申请人提供的 A2 型别墅的地上面积只有各 600 多平方米，完全不符合 4.28 协议第 3.2 条要求各别墅的地上面积应有约 1200 平方米的要求。被申请人强调，4.28 协议本身并未附任何图纸，控股股东在签署 4.28 协议前亦未有收到过显示每幢别墅合共建筑面积（含地上和地下建筑面积）约 1200 平方米的图纸。

217. 被申请人认为，4.28 协议第 3.2 条和第 3.3 条应理解为以 A2 型别墅与九亭商铺的价值均为人民币 7200 万元为出发点，即二者是做等价交换，而非物业互换。而要使两幢 A2 型别墅的估值达到共计人民币 7200 万元，以每平米人民币 31,500 元的单价计算，每幢别墅的地上面积必须各约 1200 平方米。被申请人主张"图纸建筑面积"一词在中国法律下没有特定的解释，需要根据协议各方在讨论和签署 4.28 协议时的具体情况去理解。

218. 被申请人认为，鉴于申请人提供的 A2 型别墅与 4.28 协议的要求不符，除非申请人[7]赔偿有缺陷的 A2 型别墅和被申请人应获得的别墅之间的差价（根据被申请人的计算为人民币 41,820,000 元），被申请人无义务接受该 A2 型别墅。而在此之前，被申请人亦无义务向申请人移交剩余 2000 平方米的控制权。

**债务清偿**

---

[7] 此处被申请人笔误写成"被申请人"。

219.   就债务清洁，申请人和被申请均就各方当事人有争议的债务清洁项目已在书面陈述中列出并表明其各自立场。

**VI.   申请人和被申请人的请求**

**申请人的请求**

220.   第一申请人和第二申请人均采纳同一份仲裁申请书。在该申请书的第 40 段，申请人列出以下请求：

(1)   命令第一被申请人或被申请人促使绿庭地产与申请人或其指定的第三方签署一份有关九亭商铺的《上海市房地产买卖合同》并将九亭商铺的所有权转让给参股股东或其指定的第三方；（4.28 协议第 3.1 条）

(2)   命令第一被申请人或被申请人促使其指定的第三方与四季花城签署 A2 型别墅的《上海市商品房预售合同》并完成有关的预售登记手续；（4.28 协议第 3.2 条）

(3)   命令被申请人根据申请人的往来核对表（即仲裁申请书的附件一）（自裁决作出之日起的 4 周内）向申请人清结并支付有关四季花城与第一被申请人的债务；（4.28 协议第 3.6 条）

(4)   命令第一被申请人安排及促使世邦公司收购第一被申请人的子公司绿庭置业所持有的四季花城 80% 的股权；（4.28 协议第 2.3.1 条）[8]

(5)   命令第一被申请人与参股股东（自裁决作出之日起的 2 周内）签署及促使其子公司绿庭置业共同签署有关世邦公司的股权购买权协议及托管协议；（4.28 协议第 2.3.1、2.3.2 条）[9]

(6)   命令被申请人或第一被申请人促使绿洲科创转让其所持有的四季花城 20% 的股权予绿豪贸易；[10]

---

[8] 世邦公司的董事会有四名董事，各方均有权任命两名董事。世邦公司的章程规定只要有两名董事签署决议即为有效。

[9] 按 4.28 协议的规定，应该是世邦公司收购四季花城的 80% 股权后，由绿庭置业委托喜盈国际和 Focus Town 代世邦公司管理该 80% 的股权。因此，托管协议应该由绿庭置业和喜盈国际及 Focus Town 签署。管理满 3 年之后，该 80% 的股权以 1 元港币为对价从世邦公司转到喜盈国际和 Focus Town 签署。有关股权购买权协议由绿洲投资与喜盈国际和 Focus Town 签署。

[10] 不需要有"第三方"字眼，因为申请人已经指定了绿豪贸易。

34

(7)    命令被申请人或第一被申请人促使绿庭地产清还有关九亭商铺全部抵押贷款或担保（包括利息）及解除九亭商铺现有的全部抵押担保；

(8)    作为（7）项的替换，命令被申请人赔偿申请人清还有关九亭商铺现有之全部抵押担保所需的总金额；[11]

(9)    命令被申请人支付回购股权现金对价的余款，即等值于人民币 1.5 亿的港币、并按 4.28 协议第 2.2.1（4）条调整后的最终金额。

**被申请人方的反请求**

221.   被申请人在其《答辩及反诉书》第 79-83 段，提出了四项反诉：

(A)    就股权对价的反诉

由于申请人的行为，股权对价未支付完成，被申请人的权益受到损害。被申请人要求仲裁庭裁定和/或宣告：

(1)    申请人违反 4.28 协议第 2.3.4 条；

(2)    申请人应立即办理世邦公司境外股权转让和绿豪贸易境内股权转让的相关手续（和/或促使相关手续的办理），包括但不限于：（i）对四季花城进行审计/评估以得出合理的股权转让价格；（ii）准备股权转让协议及其他相关交易文件以供被申请人阅览并且作为各方谈判的基础；（iii）联络相关政府审批机关获取审批需报送的材料，与被申请人沟通协调，并准备报送材料（在必要时向被申请人寻求协助）；（iv）向相关政府审批机关报送需审批的材料并按其需求补充材料（如有）；和（v）紧密关注审批过程并及时将更新的审批状况通知被申请人；

(3)    申请人应当共同和/或个别地承担世邦公司境外股权转让（即将四季花城 80% 的股权从绿庭置业转让至世邦公司）所可能产生的任何税收和费用（包括但不限于世邦公司境外股权转让可能产生的中国税收费用）。或者，替代的，申请人应当与被申请人协商就世邦公司境外股权转让所可能产生的税收和费用（包括但不限于世邦公司境外股权转让可能产生的中国税收费用）的承担问题。

(B)    就九亭商铺与 A2 型别墅互换的反诉

---

[11] 2017 年 8 月 8 日开庭时，申请人称由于抵押已取消，第（g）、（h）两项已不需要了：誊本（第 9 天），26 页，22—27 行。

35

申请人欲交付给被申请人的两幢 <u>A2 型</u>别墅有缺陷，导致被申请人的权益受到损害。被申请人要求仲裁庭裁定和/或宣告：

(1)　　申请人违反 4.28 协议第 3.2 条；

(2)　　被申请人因申请人的违约遭受损失（包括但不限于价值的损失），有权获得赔偿金。申请人应共同和/或个别地赔偿被申请人遭受的损失。该损失的赔偿额有待评估。

(C)　<u>就其他合约义务的债务清结的反诉</u>

因为申请人提出不合理的要求，未能善意地与被申请人进行相关债权债务的清算，该清结未能完成。被申请人权益受到损害。被申请人要求仲裁庭裁定和/或宣告：

(1)　　申请人违反 4.28 协议第 3.6 条

(2)　　申请人应依据（i）被申请人编制的《花城房产往来款核对明细表第四稿》为基础；或者（ii）其他仲裁庭认为适当的基础，完成债权债务的清结。

(D)　<u>就现金对价的反诉</u>

申请人的行为导致第三期付款的部分先决条件不成就，被申请人的权益受到损害。被申请人要求仲裁庭裁定和/或宣告：

(1)　　申请人违反 4.28 协议第 2.3.4、2.1.3、2.2.1（4）和/或 3.2 条；

(2)　　在第三期付款的先决条件全部满足（包括以上 A（2）和 A（3）段的诉求均实现以及 4.28 协议第 2.2.1(3)条(e)项规定的的九幸商铺与 A2 别墅互换完成）的前提下，被申请人才应当支付调整后的第三期付款。

(3)　　作为第三期付款的调整，被申请人可从第三期付款中扣除或冲抵（i）世邦境外股权转让可能产生的任何税收和费用（包括世邦境外股权转让可能产生的中国税收费用）；和/或（ii）B（2）诉求的损失赔偿金额；

(4)　　替代的，被申请人可从被裁定应支付申请人的款项中扣除或冲抵（i）世邦境外股权转让可能产生的任何税收和费用（包括世邦境外股权转让可能产生的中国税收费用）；和/或（ii）B（2）诉求的损失赔偿金额。

222. 被申请人的反诉请求建立在申请人是违约方的基础上。鉴于仲裁庭对此案的争议问题的分析和裁定，仲裁庭认为违反 4.28 协议的一方是被申请人。因此，被申请人的反诉请求均被驳回。

**VII. 仲裁庭的分析和理由**

223. 仲裁庭在仔细审阅并评估各方提供的证据、证人证词以及书面陈述书等文件后，做出以下分析。

**股权对价（四季花城股权的转让）**

224. 4.28 协议是控股股东和参股股东从 2009 年开始协商股权回购事宜的延续 - 见 4.28 协议引言的第 1 点：

"鉴于：1.控股股东和参股股东已与 2009 年 3 月 24 日作出股份重组的《股东会决议》[D3/607]，并于 2009 年 9 月 4 日签署了《会议纪要》[D2/615-616]，2009 年 11 月 9 日签署了《股份重组初步协议》（"**重组协议**"）[D2/622-625]。上述三份文件就绿洲投资回购参股股东持有的公司股份事宜确定了基本原则及交易架构。"

225. 4.28 协议引言的第 3 点阐明了协议的目的：

226. "鉴于：3.为解决股份回购中的具体问题，尽快完成《重组协议》所约定的各项交易，降低各方交易成本和时间成本，各方一直同意签署本协议，以明确回购价格、支付期限、支付方式及与此相关的其他问题。"

227. 有鉴于此，仲裁庭认为，各方签署 4.28 协议的主要目的是为了尽快完成《重组协议》所约定的各项交易。

228. 仲裁庭认为若 4.28 协议的内容有遗漏或模糊之处，可以参考上述三份文件的内容。事实上，4.28 协议的第 4.1 条也对此作了明确表述：

"本协议未涉及事项，以《重组协议》的约定为准。《重组协议》及本协议均未涉及的，由各方通过友好协商另行签订补充协议，补充协议与本协议有同等效力。"

229. 4.28 协议的第一条规定了"回购前的股权转让"。第 1.1 条明确了两个步骤：（1）柯铮光先生将其持有的绿洲投资股权转让于喜盈国际，徐宏标先生将其持有的绿洲投资股权转让于 Focus Town；（2）由绿洲投资回购喜盈国际和 Focus Town 分别持有的绿洲投资股权。第 1.2 条也明确了上述回购前股权转让的税收及其费用由参股股东承担。

230. 各方没有争议的是，第一条的回购前的股权转让已完成。

231.　4.28 协议第二条规定的是"绿洲投资回购对价"，也即是现金对价。各
方没有争议的是，绿洲投资回购对价的现金支付部分为等值于人民币 2.5
亿元的外汇（"现金对价"）：（第 2.1 条）。各方也同意，在实际支付
时，现金对价的金额应作如下调整：

"2.1.1 现金对价中应扣除应由参股股东承担的历史遗留往来款人民币
4100 余万元； [12]

2.1.2　现金对价中应增加绿洲投资及控股股东愿意有条件支付的一次性
额外补偿人民币 3000 万元（"**额外补偿**"）。该项额外补偿的支付条件
为《重组协议》及本协议项下的绿洲投资股份回购及对价支付已经完
成，双方对此无重大争议。

2.1.3　各方同意，在本协议签署后，涉及相关股权对价支付等相关事
宜，需要调整现金对价的支付金额时，各方将另行签署补充协议。

2.1.4　各方同意，回购对价之现金部分应在香港以港币分成二等份并按
下款（第 2.2 条）确定之时间，及时足额分别支付予参股股东所提供之喜
盈国际和 Focus Town Limited 的银行账户。"

232.　第 2.2 条规定的是现金对价的支付条件和支付期限（第 2.2.1 条）。各方
同意，回购对价现金部分支付时间如下：

"（1）相当于人民币 8 千万元的港币（"**第一期付款**"）…

（2）相当于人民币 2 千万元的港币（"**第二期付款**"），于 2011 年 6 月
30 日前支付。[13]

（3）余款相当于人民币 1 亿 5 千万元的港币（"**第三期付款**"），最终金
额均根据下述第（4）项之规定，由各方另行同意或确认的调整后金额为
准，在下列先决条件获得满足后的前提下于 2012 年 12 月 31 日前支付：

　　　(a)　　四季花城股权转让的政府审批及登记手续已经完成；

　　　(b)　　绿洲投资已经完成回购参股股东股权所必需的股东变更登
记手续 [14]

---

[12] 这笔 4,100 余万元的款项在 2010 年 2 月 3 日的会议纪要中（D2/723）曾被提到。

[13] 第一和第二期付款已付。

[14] 已经完成。

38

(c) 参股股东与控股股东已经就前述第 2.1 款规定的现金对价支付安排及各项调整金额达成协议；

(d) 参股股东确认下述第 2.3.5 款规定的股权对价支付已经完成且各方对此无争议；

(e) 第 3.1 款所述之《上海市房地产买卖合同》及第 3.2 款所述之《上海市房地产预售合同》已经签署并完成在房地产登记机关的过户或预售登记手续。

(4) 现金对价之金额调整。各方同意，在支付第三期付款前，各方应根据如下各款之约定，计算并确定现金对价的调整金额，并以调整后之金额作为第三期付款的最终金额：

(a) 按照《重组协议》及本协议的约定，绿洲投资及控股股东应以四季花城 100%的股权作为股份回购的对价的一部分（"股权对价"）。如因任何法律法规要求该等股权转让必须标明股权转让价款并且须实际支付时，则参股股东因此向绿洲投资及控股股东实际支付的股权转让价款（扣除税费后的净额）部分应增加至现金对价中；

1. 仲裁庭认为，上述第（a）款应解读为如有任何法律法规要求被申请人将四季花城 100%股权转让给申请人时必须附有一个固定的价格，而该要求导致该等申请人将不得不为上述股权转让向被申请人实际支付金额，则该等实际支付金额（扣除其所引发的税款后）应加入到被申请人理应支付申请人的现金对价中。其隐含之意则是，若各方必需为四季花城股权转让定一个价格，则申请人应负担任何税款。

(b) 上述第 2.1.1 及 2.1.2 款所约定之款项分担应反映在第三期付款的最终金额中；

2. 仲裁庭认为，根据第 2.1.1 条，申请人理应负担人民币 41,224,613.21 元[15]的总额，而根据第 2.1.2 条，申请人理应从被申请人处收到人民币 3000 万。两者相抵，则申请人将仅需负担的人民币 11,224,613.21 元，而该笔金额将从第三期付款（即人民币 1.5 亿）中扣除。

---

[15] LYP-1 [D1/253]; LYP-2 [D3/1199]。

39

(c)　根据本协议其他条款约定应由各方承担的税费分担应反映在第三期付款的最终金额中。

3.　仲裁庭认为，这意味着第三期付款必须参照各方根据 4.28 协议下的其他条款需要承担的税负做出调整。该等其他条款包括，比如，第 2.3.4 条。该条规定，因境内股权对价支付所产生的税收、费用，以及境外世邦公司托管安排及股权转让给喜盈国际和 Focus Town 的税收、费用由参股股东承担。除此之外的与股权对价支付有关的税收、费用的分担问题，由各方届时另行协商。因境内及境外股权对价支付相关的股权转让手续，即申请、登记、政府手续等项事宜均由参股股东负责办理，控股股东、绿洲投资提供必要的协助。基于上述理由，仲裁庭认为该第 2.3.4 条不适用于本案。

233.　综合以上的分析，第三期付款支付的最终金额应该以人民币 1.5 亿元作为基数，按照第 2.2.1 (4) 条作出调整。

234.　至于第三期付款的支付的期限，第 2.2.1 (3) 款规定了 2012 年 12 月 31 日，但同时也必须满足第（a）至（e）项的先决条件。

235.　双方没有争议的是，先决条件（b）已满足。

236.　至于先决条件（a），各方指责对方是该先决条件未获满足的根源。因此，仲裁庭必须对这个问题作出裁决。

237.　至于先决条件（c），双方对第 2.1 款规定的现金对价支付安排已达成协议，但对各项调整金额没有达成协议。因此，仲裁庭必须对这个问题作出裁决。

238.　至于先决条件（d），双方对第 2.3.5 款规定的股权对价支付已经完成且各方对此无争议没有达成协议。因此，仲裁庭必须对这个问题作出裁决。

239.　至于先决条件（e），双方对于第 3.1 款和第 3.2 款所述的合同没有签署的原因持有不同的意见。因此，仲裁庭必须对这个问题作出裁决。

240.　就先决条件（a）（即四季花城股权转让的政府审批及登记手续已经完成），仲裁庭首先分析 4.28 协议第 2.3 款的内容。第 2.3 款规定股权对价的支付方式：

40

"根据《重组协议》，绿洲投资回购对价中股权部分以[四季花城]100%的股权计付（"**股权对价**"）。"

241.   股权对价的支付方式包括了境外和境内两部分。境外的部分由第 2.3.1 款和第 2.3.2 款规定，境内部分则由第 2.3.3 款规定。

242.   第 2.3.1 款规定：

"绿洲投资已在香港<u>设立了</u>世邦公司，并<u>已经安排</u>世邦公司<u>收购了</u>绿洲投资香港子公司绿庭置业所持有之四季花城 80%的股权。该等股权收购完成后，绿洲投资应与喜盈国际和 Focus Town Limited 签署一份《股权购买权协议》，约定在第 2.3.2 款约定的托管期限届满后，将世邦公司100%的股权以港币一元对价转让给喜盈国际和 Focus Town Limited。"（下划线后加）

243.   第 2.3.2 款规定：

"各方约定：绿洲投资在…《股权购买权协议》签署后，由绿庭置业与喜盈国际和 Focus Town Limited 签署相关托管协议，该协议约定：（1）喜盈国际和 Focus Town Limited 受绿庭置业委托管理世邦公司并代为行事股东权利三年（"**托管期限**"）；（2）托管期限内世邦公司或四季花城的所有债权债务、责任与风险均由参股股东承担。如因任何原因导致控股股东、绿洲投资或绿庭置业需承担世邦公司或四季花城在托管期间的债权债务、风险或责任时，参股股东需向控股股东、绿洲投资或绿庭置业提供全额补偿。"

244.   第 2.3.3 款规定：

"四季花城目前由绿洲投资下属绿洲科创生态有限公司持有的另外 20%股权转让予参股股东指定的一家中国国内企业（"**境内股权对家支付**"）。如按照中国法律规定，该等股权转让需实际支付对价时，按照前述 2.2.1(4)(a)款的规定处理。"

245.   关于第 2.3.1 至 2.3.3 条，仲裁庭认为，有关四季花城的转让包括以下三个需要履行的步骤：

(1)   **首先**，由绿洲投资成立的世邦公司收购绿庭置业持有的四季花城 80%股权（简称为"**80%股权转让第一步**"）。第 2.3.1 条明确表述，绿洲投资<u>已在</u>香港<u>设立了</u>世邦公司，并<u>已经安排</u>世邦公司<u>收购了</u>绿庭置业所持有之四季花城 80%的股权。换句话说，80%股权转让第一步在 4.28 协议签署时已经完成。但是事实上，这第一步还未完成。

41

(2)　　**其次**，由绿洲投资把世邦公司的股权转让给第一及第二申请人分别拥有的喜盈国际和 Focus Town（简称为"**80%股权转让第二步**"）。

(3)　　在 80%股权转让第一步之后和 80%股权转让第二步之前，4.28 协议还约定参股股东和控股股东需要签署两份协议：一份是由绿洲投资与喜盈国际和 Focus Town 签署的《股权购买权协议》；另一份是由绿庭置业与喜盈国际和 Focus Town 签署的相关托管协议。

(4)　　至于四季花城另外的 20%股权，则是由绿洲科创转让给参股股东指定的一家中国国内企业（简称为"**20%股权转让**"）。根据第 2.3.3 条，参股股东指定的中国国内企业是绿豪贸易。根据第 2.3.3 条，参股股东在 2011 年 3 月 15 日的信函中指定绿豪贸易为四季花城 20%股权的受让方 [D3/901-903]。

246.　从第 2.3.4 条的内容清晰可见，此条文针对的是 80%股权转让第二步（即境外世邦公司托管安排及股权转让给喜盈国际和 Focus Town）和 20%股权转让（即境内股权对价支付）的手续和税务责任问题。此条文并不涵盖 80%股权转让第一步（即世邦公司收购绿庭置业持有的四季花城 80%的股权）。这是因为根据第 2.3.1 条，被申请人明确确定绿洲投资在 4.28 协议签署时已经完成 80%股权转让第一步。换句话说，绿洲投资履行 80%股权转让第一步的责任并不在第 2.3.4 条的范围内。

247.　关于四季花城的股权转让还有一段小插曲。绿洲投资是透过其两家子公司持有四季花城100%的股权：绿庭置业持有69%，绿洲科创持有31%。为了符合 4.28 协议的约定，四季花城必须增资，让绿庭置业增加其股份比例至 80%，绿洲科创降低其股份比例至 20%。

248.　2009 年 11 月 12 日，绿庭置业和绿洲科创签署了协议书 [D2/628-629]，就四季花城增加注册资本事宜达成协议。在该协议下，双方通过绿洲科创放弃新增注册资本的有限认缴权及绿庭置业单方增资，把双方的股权比例调整至 80%：20%。在同一天，四季花城也通过了董事会决议 [D2/631-632]，反映了上述股权调整。

249.　上海市商务委于 2009 年 12 月 21 日同意并批复了四季花城的增资[D2/705-706]。不过，国家外汇管理局上海市分局于 2010 年 3 月 23 日出具了不予行政许可决定书 [D2/728]。

250.　增资申请最终于 2011 年 7 月 27 日获批 [D3/980]，对此，双方没有争议。

251.　双方对于证据中的两份审计报告是否是四季花城股权转让的第一阶段审批过程中必须呈交的文件有不同的解释和立场。第一份审计报告 [D2/729]

42

是上海旭日会计师事务所于 2010 年 4 月 14 日作出。另一份审计报告 [D2/766-781]是 Crowe Howarth 浩华于 2010 年 4 月 28 日作出。

252.  第一申请人的主张是：证据显示申请人提供该两份审计报告给予被申请人是作为增资或清结所用的 [D1/255，257 第五点– 李毓平之证人证言附加 LYP-3《关于四季花城与绿洲投资及其下属公司之间债务债权清结问题》]。

253.  被申请人则主张，这两份审计报告支持了被申请人的观点，即：申请人必须聘请评估师对四季花城的 100%股权价值进行评估，并提供四季花城 2016 年度审计报告给被申请人审阅。

254.  综上，仲裁庭认为第一申请人对该两份审计报告的解释较为有说服力，并且在时间节点上与增资申请最后获批的日期（即 2011 年 7 月 27 日）吻合。因此，仲裁庭支持第一申请人的主张。

### 各方专家证人（马贝艺、叶永青和季诺）的专家意见 – 四季花城股权转让需进行的审批步骤

255.  关于股权对价的问题，各方均传召了中国法律专家证人对审批程序、审批所需文件及税费问题作出专家报告。第一申请人的专家证人是马贝艺；第二申请人的专家证人是叶永青；被申请人的专家证人是季诺。

256.  三位专家证人对于股权转让问题所出具的联合意见（"《**联合意见**》"）在 C/438。在《联合意见》的第 6 段，三位专家指出，四季花城是一家根据《中华人民共和国中外合资经营企业法》设立的中外合资经营企业，股东有两名：绿庭置业（香港公司，占 80%股权）和绿洲科创（中国公司，占 20%股权）。

257.  三位专家在《联合意见》的第 8 段指出，《中外合资经营企业法实施条例》适用于四季花城股权转让。该条例的第二十条第一款规定："合营一方向第三方转让其全部或者部分股权的，须经合营他方同意，并报审批机构批准，向登记管理机构办理变更登记手续。"《外商投资企业投资者股权变更的若干规定》第三条也规定："企业投资者股权变更应遵守中国有关法律法规，并按照本规定经审批机关批准和登记机关变更登记。未经审批机关批准的股权变更无效。"因此，作为中外合资经营企业，四季花城的两项股权转让均应取得审批机关的批准，并进而向登记机关办理相应的变更登记手续。

258.  三位专家在《联合意见》的第 9 段指出，四季花城股权转让需经历三阶段行政手续：（1）在收集并准备齐全法律规定的文件后，由合营企业提交申请文件，报经审批机关批准股权转让。考虑到四季花城的总投资额

43

及从事的产业类型，其股权转让的具体审批由上海地方商务主管部门负责；（2）取得批准后，合营企业需向登记管理机构，即上海地方工商部门办理变更登记；以及（3）合营企业根据相关法律法规的要求进一步办理税务、外汇等方面的变更登记。

259. 关于第一个阶段（四季花城应向商务部门提交申请文件进行审批），三位专家在《联合意见》的第 10 段列明了四季花城作为股权转让审批的申请人需向审批机关提交的申请文件，这里无需赘述。并且，《联合意见》第 12 段提及了各方在文件准备方面的分工。

260. 关于第二个阶段（四季花城应向工商部门申请变更登记），三位专家在《联合意见》的第 15 段列明了应提交的文件，这里也无需赘述。三位专家同意，工商部门收取的变更文件与第一个阶段报商务部门的申请文件类似。各专家又在《联合意见》的第 36-38 段补充了他们的意见。

261. 关于第三个阶段（四季花城进一步办理税务、外汇等方面的变更登记），三位专家一致同意工商变更登记完成后，合营企业即可基于股权转让审批和变更登记结果具体办理本企业的税务、外汇等变更登记手续。

262. 在《联合意见》的第 19、20 段，三位专家一致同意，就四季花城股权转让的审批（即上述第一个阶段），以目前看到的转让方和受让方已准备好的材料（于下文列出）尚不足以办理四季花城的审批和登记：

    (1) 绿庭置业的股东已出具日期为 2011 年 11 月 21 日的《香港绿庭置业有限公司股东会决议》，同意将其所持有的四季花城 80%的股权转让给世邦公司，在绿洲科创向绿萦贸易转让其所持有的四季花城 20%股权时，放弃绿庭置业的优先受让权。

    (2) 绿洲科创的股东已出具日期为 2011 年 11 月 21 日的《香港绿洲科创生态科技有限公司股东会决议》，同意将其所持有的四季花城 20%的股权转让给绿萦贸易，并在绿庭置业向世邦公司转让其所持有的四季花城 80%股权时，放弃绿庭置业的优先受让权。

    (3) 绿庭置业的股东已出具的《香港绿庭置业有限公司股东会决议》，同意将其所持有的 50%股权以一美元的价格转让给喜盈国际，另 50%股权以一美元的价格转让给 Focus Town。

263. 三位专家就下述两个问题未达成一致意见：

    (1) 关于四季花城股权转让的审批权属于市商委还是奉贤区经委？

(2)    关于在股权转让审批环节是否需要提交四季花城的审计报告或评估报告?

264.  在第(1)个问题上,马贝艺认为,四季花城属于外商投资房地产开发、经营企业,其股权转让的审批机关是市商务委。季诺则认为,在《外商投资产业指导目录》(2015年修订稿)实施日(2015年4月10日)之前,四季花城股权转让审批权限属于上海市级地方商务主管部门,在2015年4月10日后属于区级(奉贤)地方商务主管部门。叶永青则认为,由于本次股权转让交易本应发生在2015年4月10日即变更审批主体之前,故奉贤区商务主管部门并非本次股权转让的主管机关。

265.  在第(2)个问题上,马贝艺认为,没有任何资料表明评估报告与申请股权转让审批、办理变更登记等行政手续有关,因此,评估报告不属于合营企业需要准备的申请文件。至于审计报告,则是因为奉贤区经委网站显示,向其申请办理股权转让审批需要提供会计师事务所出具的合营企业上年度审计报告。马贝艺认为,该项要求不会构成合营企业申请股权转让审批的障碍,亦不属于合营企业必须准备的申请文件。叶永青认为,对于四季花城审计报告是否必须提供及由谁来负责准备的问题,一方面,《外商投资企业股权变更规定》未明文规定需提交审计报告,而考虑到四季花城的总投资额及其从事的产业类型,其股权转让的具体审批有上海地方商务主管部门负责,上海市商务部门公开的办事指南中的文件清单也不包括审计报告。另一方面,由于本次股权转让交易本应发生在2015年4月10日即变更审批主体之前,故奉贤区商务主管部门并非本次股权转让的主管机关,其文件要求并不构成商委审批的实质障碍。此外,叶永青认为,实践中上海市商务部门并无要求提供审计报告或评估报告的惯例,企业提交上一年度或最近月份的财务报表即可。因此,即使根据奉贤区商务主管部门的要求需要提交审计报告,实践中企业也往往可以提交上一年度或最近月份的财务报表替代。另外,对于是否对四季花城进行评估,叶永青认为,评估对于本次股权转让取得商务审批和工商、税务变更登记并无影响,仅在绿庭置业进行纳税申报而税务机关质疑该股权转让价格时可能需要。特别是,在完成商委审批和工商变更后四季花城的股权就已经实现转让,工商变更完成后四季花城的股权将会变更到世邦公司的名下,后续税务程序虽然是世邦公司收购需要完成的程序,但并不会影响股权转让的实现。而评估作为后续税务机关确定股权转让价格的可能方式之一,税务机关还可以根据股权转让协议中的约定价格、四季花城的净资产价格、绿庭置业账面的长期股权投资金额、或四季花城的注册资本金额等来确定股权转让价格,而上述价格或金额均是可以获得的信息。所以叶永青认为,在中国税收法律法规和地方性法规都没有明文规定的前提下,对四季花城进行评估并不是完成股权转让的必要流程。

45

266. 季诺认为,奉贤区商务主管部门是本案四季花城股权转让的审批主体,其网上公示的文件清单中明确要求审计报告,四季花城应当满足这一要求。(关于本次股权转让交易应当在什么时点发生、以及如果未按时发生的后果由哪一方承担,应由仲裁庭决定,季诺不在专家意见中讨论。)实践中,审批机关往往会要求合营企业提供审计报告或评估报告,作为审查股权转让价格合理性的重要参考(例如,当约定的价格显著偏离审计报告等材料所反映的情况,可能构成取得批准的障碍)。季诺认为,根据上述分析,在本案中,审计报告应当在审批环节予以准备,而审计报告的编制需以合营企业(即四季花城)提供的财务资料为基础,因此一般应有四季花城负责准备。如果四季花城未能提供审计报告,很可能构成取得批准的障碍。至于审批机关对于审计报告的形式、内容上有否特定要求,以及是否可以用其他类似文件(如评估报告、未审计的财务报表等)替代审计报告等问题,则取决于审批机关根据个案具体情况作出的裁量。

267. 仲裁庭认为:(1)关于四季花城股权转让的审批权属于哪个主管机构这一问题,应该从提交审批申请的时间点来看。三位专家均同意,在2015年4月10日之后,审批权属于上海奉贤区的商务主管部门。但是,4.28协议是在2010年4月底就已经签署,而各方在第2.2.1(3)条中的共识是余款应该在2012年12月31日前(在先决条件得以满足的前提下)支付。也即是说,各方认为4.28协议的先决条件应该可以在2年8个月内全部满足。因此,仲裁庭认为关键的时间点是在2015年4月10日之前,而当时的审批机关是市商务委,而非奉贤区商务主管部门。

268. 至于审计报告或评估报告,仲裁庭接受申请人的专家证人马贝艺和叶永青的意见,即:审计报告或评估报告在申请股权转让审批的环节中是不需要的。而且,该问题与判定哪一方违约的问题其实是无关的。因为股权转让的第一步,即世邦公司收购绿庭置业所持有的四季花城80%的股权都尚未完成,因此谈不上审批所需的文件。

269. 在仲裁程序启动之时(即2013年2月22日),双方连第一个阶段(四季花城向商务部门提交申请文件进行审批)都尚未开始,其原因何在?控股股东和参股股东都互相把矛头指向对方,指称对方没有负起其应负的责任。然而,一个不争的事实是,控股股东始终未履行4.28协议的第2.3.1条下的合同义务,安排世邦公司收购绿庭置业所持有的四季花城80%的股权。这导致四季花城的股权转让无法完成,更别谈先决条件之一(即4.28协议第2.2.1(3)(a)条下规定的先决条件)的四季花城的股权转让审批及登记手续的完成了。

270. 证据显示,控股股东的律师(君和律师事务所的陶旭东律师)于2010年5月13日发电子邮件给参股股东的律师(金杜律师事务所的 Jeremy

46

Wong/黄俊杰律师），提及四季花城股权转让的一些法律问题，并要求通过电话会议讨论[D2/826]。同日，金杜回复电子邮件给君和，提及其从徐宏标处收到了《股权购买权协议》和《托管协议》的中文稿，对其有一些想法，并同意电话讨论[D2/825]。2010 年 5 月 24 日，金杜向君和发电子邮件，附上其对《股权购买权协议》和《托管协议》的修改建议，同时也提醒控股股东确保绿洲科创持有的四季花城 20%股权也应按 4.28 协议第 2.3.3 条同时转让。邮件中还提到金杜现正草拟《世邦公司股权质押协议》及《世邦公司股东投票权代理协议》以配合上述两份协议的操作；待协议草拟完成，即发送给君和审阅[D2/824]。2010 年 6 月 1 日，君和发电子邮件给金杜询问何时能提供股权质押协议及投票权代理协议的文本，并说希望在看到所有文本后一并向金杜反馈意见[D2/830]。2010 年 6 月 9 日，金杜发电子邮件给君和，附上草拟的《股东投票权代理契约》及《股权质押契约》供君和审阅并给予反馈意见[D2/829]。2010 年 8 月 31 日，金杜发电子邮件给君和，指出其于 2010 年 6 月 9 日传阅《股东投票权代理契约》及《股权质押契约》草稿后，并未接获君和的反馈意见，并要求赐复[D2/829]。然而，根据徐宏标之证人陈述书第 23 段[B/14]，有违 4.28 协议约定的是，绿洲投资及控股股东至今未有交还其已签署的《股权购买权协议》及/或《托管协议》，或就其内容向参股股东作出任何回复或提出任何意见。

271.   综上，仲裁庭认为控股股东违约。

272.   三位专家证人均同意，在第一阶段中，四季花城作为股权转让审批的申请人，需向审批机关提交若干文件（见《联合意见》第 10-13 段）。其中非常关键的一份文件是四季花城 80%及 20%的股权转让协议。在《联合意见》第 29-35 段中，三位专家证人发表了各自不同的意见。其中，季认为，股权转让协议和办理审批、登记所需要其他文件一样，都是不可或缺的申请文件之一。任何股权转让都必须以相关各方达成合意为前提。但是，与一般的股权转让相比，本案情况特殊。如果四季花城的实际控制权和各项证照、公章都已在股权转让发生前由被申请人移交给了申请人，那么股权转让的审批和登记不仅仅取决于转让的直接当事方即绿庭置业、绿洲科创、世邦公司以及绿豪公司，还也取决于申请人是否认可该等股权转让，尤其是价格等关键条款，因为申请人已实际控制四季花城，并且对世邦公司并非完全无控制。如果四季花城的实际控制方不认可股权转让的条款和条件（特别是价格条款），即便各方签署了股权转让协议，四季花城也可以拒绝或消极推进审批和登记申请。另一方面，审批机关可能会考虑股权转让对价的合理性并通常要求企业提供审计报告。因此，谨慎起见，股权转让协议的订立需要合营企业（即四季花城）配合提供审计报告等材料供各方确定协议具体内容时参考。

47

273. 仲裁庭考虑了被申请人专家的意见后，认为被申请人专家的意见具有极大的猜测性。由于1.5亿港币（第三期付款）只能在若干先决条件得以满足后才支付给申请人，而其中一项先决条件是四季花城股权转让的政府审批及登记手续已经完成，申请人显然没有理由拒绝或消极推进审批和登记申请。因此，仲裁庭不予支持被申请人专家的意见。仲裁庭认为，被申请人完全可以以其控制的绿庭置业和绿洲科创的名义准备股权转让协议供世邦公司和绿豪贸易审阅，但是被申请人完全没有推动这个过程，反而以各种理由推搪。

274. 综上，仲裁庭认为被申请人明显违反了4.28协议的第2.3.1、2.3.2及2.3.3条的合同义务。

275. 关于审计报告这一问题，各方在开庭时（尤其是在2017年8月8日结案口头陈词当天）一致同意在目前这个阶段（而非在仲裁启动时），已经有必要提交最新的四季花城的审计报告给审批单位，作为审批过程审阅的文件之一：誊本(第9天)，32页，28-29行。

**各方专家证人的专家意见 – 关于税费问题的意见**[C/451-454]

276. 三位专家对股权转让在中国法律下可能产生的纳税义务达成一致意见如下：

    (1)   按照中国税法，绿庭置业作为世邦收购的股权转让方是企业所得税的纳税主体，但对于该笔税负经济上的实际承担，中国法律不禁止交易当事人自行约定；

    (2)   绿庭置业缴纳企业所得税的计税基础，有两种处理方式；

    (3)   实践中，主管税务机关对59号文(即《关于企业重组业务企业所得税处理若干问题的通知》)中各项条件的审查较为严格，特殊性税务处理在本案中使用的可能性较小；

    (4)   股权转让方及受让方有义务缴纳印花税。

277. 至于4.28协议的第2.3.4条中的"除此以外的与股权对价支付有关的税收、费用的分摊问题，由各方理解另行协商"的约定，仲裁庭认为，该段文字的意思应由仲裁庭按香港法（合同的实体法）来诠释，专家们的意见对于该问题并无帮助。

278. 4.28协议第2.3.4条第一句的前一半是："因境内股权对价支付所产生的税收、费用…由参股股东承担"。这里指的是绿洲科创把四季花城的20%股权转让绿豪贸易所产生的税收和费用。双方对此没有争议。

48

279.   4.28 协议第 2.3.4 条第一句的后一半是："境外世邦公司托管安排及股权转让给给喜盈公司和 Focus Town Limited 的税收、费用…由参股股东承担"。这句话的意思也是清晰的。

280.   4.28 协议 2.3.4 条第二句是："除此以外的与股权对价支付有关的税收、费用的分担问题，由各方届时另行协商。"[下划线后加]

281.   双方对于与绿庭置业把四季花城的 80%股权转给世邦公司有关的税费有争议。被申请人的立场是，第一句只包含了绿洲科创把四季花城的 20%股权转给绿豪贸易以及世邦公司与喜盈公司和 Focus Town 的托管协议，但不包含绿庭置业把四季花城的 80%股权转给世邦公司的协议。申请人的立场则是：由于 4.28 协议第 2.3.1 条中已清楚地表明了绿洲投资已在香港新设立了世邦公司，并已经安排世邦公司收购了绿洲投资香港子公司绿庭置业所持有之四季花城 80%的股权，因此该交易不应被视为"除此以外"的情况，也不构成双方另行协商的情况。仲裁庭同意申请人的观点。

282.   关于三位专家证人一致意见第（二）点（即"绿庭置业缴纳企业所得税的计税基础"），仲裁庭认为，《59 号文》的运用和诠释与 4.28 协议的解释没有直接的关系。根据俞乃奋的证人证词第 29 段中提到，各方当时并没有探讨如果世邦境外股权转让按《59 号文》享受"特殊性税务处理"，该交易所产生《59 号文》下的税款由谁承担[B/46]。第一申请人的证供否认申请人在签订 4.28 协议时曾与控股股东探讨《59 号文》的"特殊处理"（见徐 [B/100, §§12-15]）。无论是申请人还是被申请人，立场都是各方在签订 4.28 协议的时候，并没有讨论《59 号文》下税负由谁承担的问题。因此，仲裁庭认为无须对该问题做出解释。况且，仲裁庭已经对 4.28 协议的第 2.3.1 条作出了解释，因此没有必要再探讨《59 号文》是否适用。

**物业互换 (九亭商铺和 A2 型别墅的互换)**

283.   涉及物业互换的条款为 4.28 协议的第三条"与绿洲投资回购及回购对价的其他约定"：

"*3.1  本协议签署后 30 日内，绿洲投资和控股股东应指定其子公司上海绿庭房地产开发有限公司与参股股东或其指定第三方签《上海市房地产买卖合同》，约定由绿庭房产公司将已达到交易条件的松江区九亭绿庭尚诚房产项目商业用房约 8000 平方米（具体包括绿庭尚诚一期沿街三层商业用房约6000 平方米和二期中心广场西侧全部商业用房约2000 平方米）转让给参股股东或其指定的第三方。为避免歧义，（1）在《上海市房地产买卖合同》签署的同时，绿洲投资及控股股东应将该等商业用*

49

*房的使用权交付给参股股东或其指定的第三方，交付使用后的租金或其他收益归参股股东或其指定的第三方； (2) 2011 年 6 月 30 日之前，绿洲投资及控股股东应将该等商业用房的所有权转移给参股股东或其指定的第三方。*

*3.2    在上述第 3.1 款所述之《上海市房地产买卖合同》签署同时，四季花城将与绿洲投资或控股股东制定的第三方签署《别墅定制合同》，将其开发的、位于上海奉贤区奉浦工业区半岛名望项目中的中心岛 A2 型别墅 2 幢(图纸建筑面积约各 1200 平方米，绿洲投资和控股股东已收到该图纸并知晓其交房标准，确认其实际价格为下述价格) 在达到交房标准后转让与 (予) 绿洲投资或控股股东指定的第三方。为避免歧义，参股股东应促使四季花城于 2011 年 6 月 30 日与绿洲投资或控股股东指定的第三方签订《上海市房地产预售合同》并完成该等别墅的预售登记手续；*

*3.3    各方确认：上述《上海市房地产买卖合同》及《别墅定制合同》所涉之房屋的价值均作价 [16] 为 7200 万元。由于两者价格相等，为本协议之目的，此项对价视为相互抵消 (无论其财务方面是否能做抵消论处)，但双方约定不再实际支付。"*

284. 4.28 协议第 3.2 条约定，A2 型别墅的"图纸建筑面积约各 1200 平方米，绿洲投资和控股股东已收到该图纸并知晓其交房标准，确认其实际价格为下述价格"。"下述价格"是指第 3.3 条内的人民币 7200 万元。

285. 申请人指出，上述建筑图纸是在四季花城仍在控股股东的控制下时制定及获政府批准，并在控股股东知晓及授权下进行及完成。而且图纸一直由控股股东保管及控制，直至 2009 年 11 月 18 日才跟其他文件一起移交于参股股东。根据上海市奉贤区规划管理局于 2012 年 1 月 15 日颁发之 A2 型别墅的《建设工程竣工规划验收合格证》，当中载明的建筑面积比原先的图纸建筑面积还要大。

286. 再者，即使建筑图纸与 4.28 协议指明的图纸建筑面积有所不一致，被申请人亦清楚明了，并未于相关时间内提出异议。就第 3.2 条关于建筑图纸的条文及其效力，第二申请人引用 "合约不容反悔"原则 (contractual estoppel)及/或"协定不容反悔" 原则 (estoppel by convention)。

287. 被申请人则否认控股股东了解别墅项目的情况及向参股股东提供图纸。被申请人反指于 2010 年 6 月 2 日参股股东才向控股股东递送一份别墅设计图，被申请人口头告知该图纸与协议约定不符并予退回。之后申请人虽有充分时间，却未修改图纸。而被申请人是从申请人 2013 年 2 月 4 日

---

[16] "作价"：在出让物品、赔偿物品损失或以物品偿还债务时估定物品的价格，规定价格：合理作价｜作价赔偿。

50

的律师函才首次收到《上海市商品房预售合同》及了解申请人欲提供的别墅面积情况。

288. 被申请人指称申请人提供的别墅有以下缺陷，不符合他们按约定"量身定制"的别墅的要求：（1）别墅的可销售面积远低于 1200 平方米；（2）即使将不应计入可销售面积的地下室面积加入总面积的计算，别墅仍然不满足 4.28 协议约定的面积要求。如上所述，被申请人指的所谓"量身定制"别墅要求，明显与协议的条文不符。

**有关的书面往来**

289. 从参股股东及控股股东的书面往来可见，控股股东于 2011 年 3 月 25 日向参股股东发函，要求参股股东提供涉别墅的"设计图纸，表明该等别墅的座落、面积、建筑品质符合 428 享有的约定及通常别墅的要求"。

290. 参股股东于 2011 年 4 月 25 日回函，指出：

"贵方曾多次以我未能向中心岛 A2 型别墅图纸为由，迟迟不与我方签署二幢中心岛 A2 型别墅的定制合同，事实上，"4.28"协议 3.2 条款已明确中心岛 A2 型别墅"图纸建筑面积各约 1200 平方米，绿洲投资和控股股东已收到该图纸并知晓其交房标准，确认其实际价格"。更何况，我方在"4.28"协议签订生效后，我方有应贵方要求，于 2010 年 6 月 2 日再次将中心岛 A2 型别墅的相关图纸交送给贵方。贵方作了签收。故，贵方以我方未能提供中心岛 A2 型别墅图纸为由拒签定制合同是没有任何事实根据。"

291. 在控股股东 2011 年 4 月 28 日的回函中，他们指称"我方并没有收到贵方所提'图纸建筑面积各约 1200 平方米'的中心岛 A2 型别墅图纸，不知是否会有送错的情况？为慎重起见，烦请贵方再送一次，以便核实"。控股股东当时的立场，不是参股股东提供的图纸有无问题，而是他们根本连图纸也没收到。

292. 参股股东在 2011 年 5 月 3 日回函，重申"我方曾在 2010 年 6 月 2 日应贵方要求，将中心岛 A2 型别墅相关图纸送交给贵方，这有贵方签收的凭据加以证实。如贵方对该建筑图纸有疑议，可到我方查实"。

293. 直到 2011 年 7 月 15 日，控股股东才就建筑图纸一事回复。这次他们终于承认参股股东曾向他们提供图纸，但却改口说该图纸不符规格："贵方确实向我方提供图纸，但该图纸显示的别墅建筑面积与 4.28 协议有重大差异，我方亦已在收到图纸的当时即向贵方提出"。

**九亭商铺**

51

294. 申请人指被申请人至今未能或拒绝指定及促使绿庭地产与参股股东或其指定第三方签署转让九亭商铺的《上海市房地产买卖合同》，导致他们蒙受损失。 被申请人则指称由于申请人无法交付符合条件的别墅，被申请人无义务就九亭商铺签署《上海市商品房预售合同》及转移商铺的所有权给申请人或其指定方。 由此可见，双方争议的核心是申请人提供的别墅是否符合 4.28 协议的约定。

295. 被申请人亦提出，无论如何，控股股东已透过授权委托书供申请人使用及出租商铺，实际享受商铺的收益。双方就授权的范围及期限均有所争议。第二申请人指出，至今被申请人仍占用着二期中心广场西侧 2000 平方米的商业用房。

296. 仲裁庭认为，在 4.28 协议的第三条下，双方所约定的是物业互换，而所涉之房屋的人民币 7200 万元的价值仅仅是一个估算（这即是"作价"两个字的意思），而非精确地以每平米的价格乘以 1200 平米的面积计算出实际价格。另外，形容 A2 型别墅的"图纸建筑面积各约 1200 平方米"的文字也支持该理解。被申请人则声称 A2 型别墅作价人民币 7,200 万元的计算是根据（1）两幢别墅共 2400 平方米的可销售建筑面积，及（2）每平方米建筑面积平均均价不低于人民币 31,500 元计算而来，被申请人声称这是双方同意 4.28 协议第 3.3 条的基础，但仲裁庭认为该等主张与 4.28 协议的明文规定明显不相符。因此，仲裁庭接受申请人的主张，裁定被申请人违反了第 3.1 条下的义务。

**第二申请人对于九亭商铺损失的索赔**

297. 第二申请人在其结案书面陈述的附件一（原来的结案书面陈述的附件一在 2017 年 8 月 8 日被新的附件一取代，各方均没有异议）中列出损失计算如下：

| 九庭商铺租金损失计算 (2017年8月8日修订版) | |
| --- | --- |
| 租金损失总和 (包括办公区及铺损失) (元) | 10,346,211 |
| 带阳台的办公区 (2000 多平方米) | |
| | |
| 总面积 (平方米) | 2,140.30 |
| 四季花城占用的面积 (平方米) | 424.35 |
| 可出租面积 (平方米) | 1,715.95 |

柯烨颗证人证词: B/7/94,
第 46 段: 超市即是该段中
提到的第三方

52

| | | |
|---|---|---|
| 超市面积 (平方米) | 860.85 | 顾勇之补充证人证言: B/12/129, 第4.3段 |
| 控股股东方占用的面积 (平方米) | 855.10 | 柯烨颖证人证词: B/7/94, 第45段 |
| 市场租金价格 (元/平方米/天) | 2.50 | 顾勇证词: 第 5 天[44(22-27)] |
| 4.28 协议第 3.1(1)条项下参股股东应拥有商铺使用权租金的日期 | 5/28/2010 | 修订对申请人的回复及反诉答辩书的进一步答复书: A/6/97, 第 10.4 段 |
| 出租超市的日期 | 6/1/2016 | |
| 计算损失的基准日 | 8/8/2017 | |
| 超市区由于控股股东拒绝提供授权而空置的天数 | 2,196 | |
| 超市区空置导致的损失 (元) | 4,726,067 | |
| 控股股东有违 3.1(1)条占用商铺的天数 | 2,629 | |
| 控股股东约占用而导致的损失 (元) | 5,620,145 | |
| 带阳台的办公区租金损失总额 (元) | 10,346,211 | |

298. 第二申请人主张: 虽然 A2 型别墅在 2011 年已竣工, 但由于控股股东无理的拒绝接受 A2 型别墅, 也拒绝进行九亭商铺的转让, 对参股股东造成了严重损失。理由如下:

(1) 根据 4.28 协议第 3.1 条, 九亭商铺项目的商业用房约 8000 平方米, 具体包括 (i) 绿庭尚城一期沿街三层商业用房约 6000 平方米; 和 (ii) 二期中心广场西侧全部商业用房约 2000 平方米。

(2) 二期 2000 平方米的租金很有可能高于每天每平方米 2.5 元人民币。这一点也是控股股东的证人顾勇先生同意的。

(3) 由于控股股东导致九亭商铺的转让无法进行, 且又不把 2000 平方米的控制权正式授予参股股东, 导致参股股东无法把该部分出租。

(4) 虽然参股股东在2016年7月把2000平方米的一部分阳台办公室租给了一个与柯女士有私人关系的第三方, 那是一个特殊安排 (基于第三方对柯女士的信任)。

53

(5) 控股股东通过授权委托书将一期 6000 平方米的控制权交给了参股股东，但至今未有移交二期 2000 平方米的控制权。这一说法，控股股东的证人顾勇先生是同意的。

299. 根据 4.28 协议第 3.1 条："本协议签署后 30 内，绿洲投资和控股股东应指定其子公司上海绿庭房地产开发有限公司与参股股东或其指定第三方签署《上海市房地产买卖合同》，约定由绿庭房地产公司将已达到交房条件的松江区九亭绿庭尚城房产项目商业用房约 8000 平方米（具体包括绿庭尚城一期沿街三层商业用房约 6000 平方米和二期中心广场西侧全部商业用房约 2000 平方米）转让给参股股东或其指定的第三方。为避免歧义（1）在《上海市房地产买卖合同》签署的同时，绿洲投资及控股股东应将该等商业用房的使用权交付给参股股东或其指定的第三方交付使用后的租金或其他收益归参股股东或其指定的第三方；（2）2011 年 6 月 30 日之前，绿洲投资及控股股东应将该等商业用房的所有权转移给参股股东或其指定的第三方。"

300. 从第 3.1（1）条可以看到，被申请人应履行义务（即交付使用权）的时间点为 4.28 协议签署后的 30 天内，即不迟于 2010 年 5 月 28 日。而从第 3.1（2）条可以看到，被申请人应履行义务（即移交所有权）的时间点为 2011 年 6 月 30 日之前。

301. 第 3.1 条和第 3.2，3.3 条是挂钩的，也即是说，松江区九亭绿庭尚城房产项目商业用房约 8000 平方米和奉贤区奉浦工业区半岛名墅项目的中心岛 A2 型别墅 2 幢是作价相等的（即人民币 7200 万元）。这一点在上面第 296 段已有所述。

302. 在第二申请人提交的附件一中，索赔额分两部分：（1）控股股东占用的面积；（2）超市区由于控股股东拒绝提供授权而控制的天数。若以 2017 年 8 月 8 日作为计算损失的基准日，那么损失总额为人民币 10,346,211 元（5,620,145 加 4,726,067 元）。

303. 由于仲裁庭在第 271 段已经裁定被申请人违反了其在 4.28 协议第 3.1 条项下的义务，因此仲裁庭接受第二申请人的主张，裁定控股股东赔偿申请人人民币 10,346,211 元的损失（以 2017 年 8 月 8 日作为计算损失的基准日）。

**四季花城与绿洲投资及其下属公司的债权债务的清结**

304. 根据 4.28 协议第 3.6 条："关联交易：本协议签署之日起，四季花城与绿洲投资及其下属公司之间的关联交易应予终止；所有债权债务应在一个月内予以清结。本协议另有约定的除外。"

54

305.　各方经过努力协商，把原来的争议范围缩小到 Bundle E, Tab 5 中所列出的几项。

306.　4.28 协议的第 3.6 条是一项相对独立的条款，与上述的有关股权转让对价的条款没有关连。仲裁庭认为，双方不能在合同限定的时段内把债权债务结清的原因不能归咎于任何一方，主要的原因是因为双方对于问题的看法不同。因此，在这个问题上，仲裁庭的工作就是对问题作出裁决，而不将违约责任归咎于任何一方。

307.　在第 3.6 条下，需要进行清结的是四季花城与绿洲投资及其下属公司之间的所有债权债务。这与股权转让或回购无关。因此，清结之结果不会构成第三期付款的金额调整：见 4.28 协议第 2.2.1（4）条。

308.　各方对于大部分有争议的清结项目达成了协议，剩下需要仲裁庭裁断的争议项目在 E/5/15-19 的列表里可见，分别为：第 1、1a、7、8、22、23、28 项。

**1、1a. 2009 年 11 月移交时备料款余额**

309.　根据申请人的事实证人齐赤扬先生的证人陈述书第 4a 段："列于预付账款－预付备料款－项目 1 科目的借方余额 41224613.21 元双方无异议。"根据被申请人的事实证人李毓华女士证人证言第 11 段："根据移交给四季花城的财务资料，我计算出，截至 2009 年 11 月，第一类往来账款的余额为人民币 41224613.21，即截至 2009 年 11 月四季花城与科创的往来款余额。"因此，对这个数值，双方是没有争议的。

310.　但是，双方对于控股股东于 2016 年 1 月 29 日向升远支付的 1500 万元（1a项）可否冲抵往来款有争议。

311.　证据显示，绿洲投资、绿庭科创与四季花城于 2016 年 1 月 29 日签订了一份《往来账款预付协议》[D3/1207]。同日，四季花城、上海升远建筑工程有限公司、绿庭科创也签订了一份《三方协议》[D3/1213]。该两份协议是针对四季花城和升远于 2015 年 1 月 10 日签署的《协议书》（就"乐康苑二期"两笔工程款共计 26,198,239 元拖欠的问题）而签署的。由于四季花城没有足够资金支付该工程款，因此要求绿洲投资的子公司绿庭科创代为预付该款。科创以代四季花城支付第一期工程款的名义直接向升远支付人民币 1500 万元。

312.　第二申请人和被申请人同意，被申请人于 2016 年 1 月 29 日向升远支付的人民币 1500 万元应该按《往来账款预付协议》的约定视为第一被申请人已代四季花城预先偿付往来账款人民币 1500 万元。但第一申请人不同意上述立场。

55

313. 仲裁庭还注意到，第一申请人并未参与两份协议的谈判或签署。[徐宏标的非宗教形式誓章第 12 段]

314. 仲裁庭认为，4.28 协议第 3.6 条的意思非常明确，即：四季花城与绿洲投资及其下属公司之间的所有债权债务必须在 4.28 协议的一个月内（2010年 5 月 28 日）结清。尽管科创代四季花城直接向升远支付了人民币 1500万元，然而，该笔款是在 2016 年才支付的，远远超出了 4.28 协议约定的时限。因此，仲裁庭认为该笔 1500 万元的款项并不在 4.28 协议第 3.6 条所规定的债权债务清结范围之内。该笔 1500 万元的款项是否可以冲抵人民币 41224613.21 的往来款的问题，和 4.28 协议的条款无关。该问题不在仲裁庭的管辖权之内，仲裁庭不予受理。

**7、8. 柯铮光和徐宏标 2009 年 1-11 月工资费用**

315. 第一申请人和第二申请人 2009 年在绿洲投资领取工资费用社保金等人民币 3127591.77 元。这个数值是双方都确认的（见齐赤扬之证人陈述书第 9a 段；李毓平之证人证言第 12.3.1 段）。争议在于这笔钱应该由绿洲投资还是四季花城承担。被申请人的立场是，参股股东在《参股股东第一稿核对表》[D1/101]中曾同意由四季花城承担该费用，但在后续对账过程及双方往来函件沟通中又不同意由四季花城承担。控股股东主张依据股份回购原则，因参股股东自 2009 年初起只为四季花城提供服务，因此该费用应由四季花城自行承担。申请人则主张其 2009 年在绿洲投资领取的工资费用社保金是根据绿洲投资与柯、徐二人的雇佣关系产生的，与四季花城和绿洲投资及其下属公司的债权债务毫无关系，在 4.28 协议第 3.6 条所规定的债权债务清结范围之内，亦与 4.28 协议毫不相干。

316. 李毓平在其证人证言第 12.2 段中介绍了因员工薪酬和社保费用所产生的需调整或分摊费用这一问题的背景。她解释：该项调整或分摊主要基于：（a）绿洲投资下属中国子公司之间存在部分员工与某一子公司建立劳动关系，并自该子公司领取薪酬并参与社会保险但主要为其他子公司提供服务的情况，故在四季花城于 2009 年 11 月进行人员交接时，控股股东应安排绿洲投资下属公司(除四季花城外)返还四季花城 2009 年度为非服务于四季花城的员工支付的薪酬和社保费用；（b）因重组协议签署后，参股股东在 2009 年 11 月下旬拒绝支付四季花城所有员工的薪酬，后由绿洲投资下属公司以现金先行垫付，其中针对服务于四季花城员工的相应费用应由四季花城返还绿洲投资下属公司。

317. 仲裁庭认为，从 2009 年 11 月开始，柯、徐二人仅为四季花城（而非绿洲投资或除四季花城以外的下属公司）服务，因此按同样的逻辑，即使他们二位的薪酬与费用还是由绿洲投资支付，该笔数额也应当由四季花

城承担。况且，第一申请人和第二申请人在《参股股东第一稿核对表》中曾同意由四季花城承担该费用，之后才持不同意见。

318.   综上，仲裁庭支持被申请人的主张，命令四季花城承担并返还人民币3127591.77 元给第一被申请人。

**22.   乐康绿化工程尚未支付款项（人民币 1136313.42 元）**

319.   根据被申请人人事实人李毓平的证词，四季花城应向绿洲投资下属怡景公司支付肖塘乐康苑二期绿化工程款人民币 1136313.42 元，这笔款是怡景公司为肖塘乐康苑二期做绿化支付的工程款人民币 1136313.42 元，尚未向四季花城索回）[李毓平之证人证言第 28.4 段[B/72]]。李毓平也说明了这笔款也在 2016 年 1 月份她得知控股股东与参股股东对涉及升远公司的工程款展开了沟通后才添加到一份由她编制的《截至 2015 年 12 月 31 日的往来款核对明细表》当中。申请人人事实人齐赤扬则说，该笔工程款在交接时无相关记录，工程部称怡景公司与四季花城公司已结清乐康苑二期工程款。当时订立的施工合同造价 350 万元，所支付工程款数额为 422 万元，已经多付了 122 万元，超出合同造价35% [见齐赤扬之证人陈述书第 9d 段[B/37]]。李毓平在其补充证人证言第 15 段回复道："在回购基准日之后，怡景公司账面最终形成了四季花城乐康苑二期的工程成本 1136313.42 元。由于我当时认为双方已经根据回购基准日时的资产情况进行了拆分，因此这一块成本已经变成了怡景公司的亏空，所以我将其列入了往来款核对表。" [B/125]

320.   仲裁庭认为，未有足够证据显示怡景公司是应四季花城的要求代其支付该工程款，而被申请人方的证人也说该笔工程款是在回购基准日之后才形成的。因此，仲裁庭并没有证据基础来要求四季花城把该款项支付给怡景公司。综上，仲裁庭不支持被申请人的请求。

**23.   10 千伏开关站投资分摊金额（人民币 4700 万元）**

321.   李毓平在其证人证言第 28.3 段说，这笔款（四季花城应分摊上海四季生态科技有限公司开关站投资费用 470 万元）是在 2016 年 1 月份她得知控股股东与参股股东对涉及升远公司的工程款展开了沟通后才添加到一份由她编制的《截至 2015 年 12 月 31 日的往来款核对明细表》当中。齐赤扬则说，该分摊款是根据 2012 年四季花城就在建别墅专案与相邻专案开发时候四季生态科技发展有限公司订立之有关配电开发站投资分摊的协议而产生的，有关款项的支付责任或纠纷是由该 2012 年度分摊协定管辖，与 4.28 协议无关，亦不在 4.28 协议第 3.6 条所定的债权债务清结范围之内，因 4.28 协议第 3.6 条是就该协议签订日（2010 年 4 月 28 日）四季花城和绿洲投资及其下属公司之间的债权债务进行结算[B/37]。李毓

平在其补充证人证言第16段说，纵观4.28协议和11.9协议，没有一处对需要清结的债权债务所产生的时间做过限定。按照常理，在股权回购过程中进一步产生的债权债务也是需要结算的[B/125]。

322.　仲裁庭认为，第 3.6 条对债权债务的清结是有时间限定的，即 4.28 协议签订之后的一个月内 (2010 年 5 月 28)。因此，这笔470 万元的分摊款不包含在 4.28 协议的第 3.6 条内。仲裁庭不予以受理。

### 28.　绿洲投资及其下属公司占用四季花城资金所产生的利息；控股股东未付款项的利息

323.　申请人的立场是，利息清算是第3.6条的内容之一。分立前，集团内部资金同意调拨集中使用，根据需要由相应的单位、项目承担财务费用，以求集团整体综合效益最大化，这种模式可以理解。但是，四季花城以 2008 年 12 月 31 日为基准日分立后，绿洲投资控股方对四季花城仍采用这种模式无偿调用资金、摊派财务费用的管理核算模式，则有悖于相关协议精神：见齐赤扬之证人陈述书第7e段。李毓平在其证人证言第10段中对于集团资金调配做了解释。

324.　仲裁庭认为，尽管四季花城以 2008 年 12 月 31 日为基准日分立，但 4.28 协议是在大概一年半以后才签订，期间集团和四季花城有着所谓的"代管"关系。因此，事实上很难分割清楚到底是哪一方在利用或占用哪一方的资金。综上，仲裁庭不支持申请人方的要求。

## VIII.　仲裁庭的裁决和命令

基于上述原因，仲裁庭作出命令如下：

1. 命令被申请人（从裁决作出之日起的 4 周内）促使绿庭房产与申请人或其指定的第三方签署一份有关九亭商铺的《上海市房地产买卖合同》并将九亭商铺的所有权转让给参股股东或其指定的第三方。（4.28 协议第3.1 条）

2. 命令被申请人（从裁决作出之日起的 4 周内）促使第一被申请人指定的第三方与四季花城签署 A2 型别墅的《上海市商品房预售合同》并完成有关的预售登记手续。（4.28 协议第3.2 条）

3. 命令各方按裁决第 304 至 324 段的裁示在裁决作出之日起的 4 周内清结并支付有关四季花城与第一被申请人的债务。（4.28 协议第 3.6 条）

4. 命令申请人于本裁决作出之日起的 2 个月内向相关的审批机关提供一份审计报告。

5. 命令第一被申请人安排及促使世邦公司（从裁决作出之日起的 2 个月内）收购第一被申请人的子公司绿庭置业所持有的四季花城 80%的股权。（4.28 协议第 2.3.1 条）

6. 命令第一被申请人与参股股东（从裁决作出之日起的 2 周内）签署及促使其子公司绿庭置业共同签署有关世邦公司的股权购买权协议及托管协议。（4.28 协议第 2.3.1，2.3.2 条）

7. 命令第一被申请人（从裁决作出之日起的 2 个月内）促使绿洲科创转让其所持有的四季花城20%的股权予绿豪贸易。

8. 命令被申请人（从上述第 1-6 项命令履行后的 4 周内）按 4.28 协议的第 2.2.1(4) 条款及裁决第 232(4)(a)(b)(c)及第 233 段的裁示支付调整后的最终金额。

9. 命令第二被申请人、第三被申请人和第四被申请人共同支付给申请人人民币 10,346,211 元的损失作为损失赔偿（以 2017 年 8 月 8 日作为计算损失的基准日）。

## IX.   仲裁费

325. 关于仲裁费的问题，各方在结案时均同意仲裁庭在此阶段的裁决暂不处理，故仲裁庭将在各方提交相关证据文件后再对仲裁费做出裁定。

59

日期: 2018 年 2 月 28 日

仲裁地: 香港


_____
郑若骅资深大律师
仲裁员

_____
黄旭伦资深大律师
仲裁员


_____
杨炎龙
首席仲裁员
代表仲裁庭