# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **ESTATE OF KE ZHENGGUANG,** | * | |
| Plaintiff/Petitioner, | * | |
| v. | * | Case No.: 18-3546-PWG |
| **YU NAIFEN STEPHANY,** | * | |
| Defendant/Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Estate of Ke Zhengguang ("Estate") petitions this Court to recognize and enforce a foreign arbitral award pursuant to the Convention on the Enforcement and Recognition of Foreign Arbitral Awards (the "New York Convention"), as implemented in Chapter 2 of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. §§ 201, *et seq.* Am. Petition, ECF No. 35. Yu Naifen Stephany ("Stephany Yu"), the respondent, is a United States citizen who resides in Maryland. *Id.* at ¶¶ 6, 8-9. Stephany Yu seeks to dismiss the petition to enforce the award on the following grounds: (1) enforcement should occur in China under the doctrine of *forum non conveniens*; (2) all necessary parties have not been joined under Federal Rule of Civil Procedure 19; (3) enforcement of the payment at issue is moot because it was already tendered in China; and (4) enforcement would be contrary to public policy. Mot. Dismiss 1, ECF No. 40. Stephany Yu also requests that if any judgment is entered, it be denominated in the official Chinese currency (the renminbi, or "RMB") and deemed satisfied. *Id.*

The Petitioner has provided the required documentation for recognition and enforcement of the Final Award, and the Respondent has not sought to modify, annul, or vacate the award. The award has not been set aside or suspended in the jurisdiction where it was rendered. Also, the

Respondent has not asserted any of the limited, exclusive grounds on which a court may decline to recognize or enforce the foreign award under the New York Convention Article V.1, and she fails to satisfy her burden to show that enforcement of the award would violate public policy under the New York Convention Article V.2. For these reasons, discussed below, the foreign arbitral award shall be recognized, and Respondent's dismissal motion shall be denied.

## FACTUAL & PROCEDURAL BACKGROUND

In the early 2000s, Ke Zhengguang, Stephany Yu, her two sisters, Naiwen and Naijun Yu, and Xu Hongbiao entered into a complex real estate partnership to buy and develop real estate in China. Mot. Mem. 3, ECF No. 40-1. The partners formed a company, Oasis Investment Group Limited ("Oasis"), registered in the British Virgin Islands, which became the parent company of three subsidiary companies, one based in Hong Kong, the other two in China. *Id.*; Final Award[1] ¶ 183, ECF No. 35-4.[2] In 2009 and 2010, the partners entered into agreements to restructure and accomplish a separation of their various business arrangements. *Id.* at 3-4; Final Award ¶¶ 183-186. The parties and related companies concluded an agreement on April 28, 2010, which included detailed provisions for how the interests were to be divided using a cash buyback, a subsidiary transfer, and a property exchange. *Id.* at ¶ 186; Agreement,[3] ECF No. 35-2. The Agreement contained an arbitration clause:

> Any conflicts, disputes and claims resulting from this agreement or related to this agreement, breach of contract, termination of contract and void of contract (hereafter referred to as "disputes") shall be dealt with through amicable negotiations by all

---

[1] The Final Award, dated February 28, 2018, was issued in Simplified Chinese. This version was translated into English and certified by Transperfect Translations Ltd. on October 22, 2018 as a full and accurate translation of the source material. Final Award Certification, ECF No. 35-4 at p.2. This Court accepts the translation as filed.
[2] The Final Award is also filed on the docket at ECF No. 39-2.
[3] The Agreement dated April 28, 2010 was written in Simplified Chinese. This version was translated into English and certified by Transperfect Translations Ltd. On September 17, 2018. Agreement Certification, ECF No. 35-2 at p. 2. This Court accepts the translation as filed.

> Parties. If the negotiation fails, any Party is entitled to submit the dispute to the Hong Kong International Arbitration Centre for arbitration. The arbitration is to be conducted in Chinese. The arbitration tribunal is to consist of three arbitrators. Oasis Investment and the Controlling Shareholders are entitled to nominate one arbitrator, the Non-controlling Shareholders are entitled to nominate another arbitrator, and the third arbitrator, who will be the chief arbitrator is to be nominated by the Chairperson of the Hong Kong International Arbitration Centre. The outcome of arbitration is final and binding on all Parties.

Agreement ¶ 4.2.[4]

Disputes arose during the parties' attempts to implement the Agreement, and in February 2013, Xu Hongbiao and Ke Zhengguang, the Oasis Non-controlling shareholders, filed a Notice of Arbitration against Oasis and the Controlling shareholders, Stephany Yu and her sisters. Final Award ¶¶ 1, 3, 7, 13. The arbitral tribunal was officially constituted on June 4, 2013 and proceedings commenced. *Id.* at ¶¶ 11, 16. In December 2013, Ke Zhengguang died unexpectedly. *Id.* at ¶ 32. In April 2016, the arbitration panel authorized his wife and daughter to participate in the arbitration as administrators of his estate.[5] *Id.* at ¶ 100; *see also id.* at ¶ 1 (describing second applicant in the arbitration proceeding). The arbitration hearing was held on May 16, 2017 until May 25, 2017 in Hong Kong, and the tribunal heard closing arguments on August 8, 2017. *Id.* at ¶ 181. A final arbitration award was issued on February 28, 2018, containing nine separately enumerated Orders to resolve the transfers, exchanges, and cash purchases:

> 1. (Within 4 weeks from the day this ruling is passed) The Respondents are to [] cause Greencourt Real Estate to sign a "Shanghai Real Estate Sale and Purchase Contract" for the Jiuting Stores with the Applicants or a third party appointed by

---

[4] Stephany Yu (holding 49% of the shares) and her sisters were the Controlling Shareholders of Oasis, together holding 66.6% of the shares. Final Award ¶ 184. Xu Hongbiao and Ke Zhengguang were the Non-controlling shareholders, each holding 16.6% of the shares. *Id.*

[5] Petitioners distinguish between the Hong-Kong-domiciled Estate, which was permitted to join the arbitration, and the separate PRC-domiciled Estate and BVI-domiciled Estate, which were not permitted to join the arbitration. Am. Petition ¶¶ 5, 16. References to the Estate herein refer to the estate administered by Ke Zhengguang's wife and daughter as recognized by the arbitration panel.

3

the Applicants, and transfer the ownership of the Jiuting Stores to the Non-controlling Shareholders or a third party appointed by them. (Article 3.1 of 4.28 Agreement)

2. (Within 4 weeks from the day this ruling is passed) The Respondents are to cause the First Respondent to appoint a third party to sign the "Shanghai Commercial Housing Presale Contract" for A2-type villas with SJHC, and complete the relevant presale registration procedures. (Article 3.2 of 4.28 Agreement)

3. All parties are ordered to settle and pay the debts of SJHC and the First Respondent within 4 weeks from the day the ruling is passed based on Paragraphs 304 to 324 of this ruling. (Article 3.6 of 4.28 Agreement)

4. The Applicants are ordered to submit an audit report to the relevant approval authorities within 2 months from the day the ruling is passed.

5. (Within 2 months from the day this ruling is passed) The First Respondent is ordered to arrange for and cause Shibang Company to acquire the 80% equity interest of SJHC held by the First Respondent's subsidiary Greencourt Properties. (Article 2.3.1 of 4.28 Agreement)

6. (Within 2 weeks from the day this ruling is passed) The First Respondent and Non-controlling Shareholders are to sign, and the First Respondent is to cause their subsidiary, Greencourt Properties, to jointly sign, the Equity Purchase Option Agreement and Entrustment Agreement concerning Shibang Company. (Articles 2.3.1 and 2.3.2 of 4.28 Agreement)

7. (Within 2 months from the day this ruling is passed) The First Respondent is ordered to cause Oasis Kechuang to transfer its 20% equity in SJHC to Luhao Trading.

8. (Within 4 weeks after the execution of the orders numbered 1-6 above) The Respondents are to pay the final amount after making the adjustments set out in Article 2.2.1(4) of the 4.28 Agreement and in Paragraphs 232(4)(a)(b)(c) and 233 of this ruling.

9. The second respondent, third respondent and fourth respondent are jointly and severally ordered to pay RMB10,346,211 to the applicants as compensation for their losses (using August 8, 2017 as reference date for calculation of losses).

Final Award, Section VIII, p. 95-96.

In April 2018, the Estate submitted an application to interpret, correct, and supplement the award.[6] Am. Petition ¶ 20. The tribunal held clarification proceedings and considered corrections, ultimately issuing a Clarification Award on December 19, 2018 that made only a procedural change to Order 2 and a name change to Order 7. *See id.* at ¶¶ 21-22; Clarified Award,[7] ECF No. 35-6. Petitioner asserts that Respondent has refused to comply with her obligations under the nine Orders, including the monetary payment obligation under Order 9. Am. Petition ¶ 23. The petition, ECF No. 1, was filed with this Court on November 16, 2018, prior to the issuance of the Clarified Award, asking this Court to recognize and enforce only Order 9 of the Final Award (the cash payment Order). The Estate requests judgment in United States dollars equivalent to RMB 5,173,105.50, which represented half of the amount awarded under Order 9. Petition ¶¶ 21, 28. Stephany Yu had paid RMB 5,173,105.50 to Xu Hongbiao in partial satisfaction of Order 9. *Id.* at ¶ 20. The Estate asserts that, as a Hong Kong resident,[8] it cannot negotiate or deposit any RMB-denominated payments that are drawn on a PRC bank. *Id.* at ¶ 25. The Estate alleges that Stephany Yu's offer of payment via a mainland-PRC bank was, therefore, made in bad faith to create a false appearance of compliance with the Final Award. *Id.* at ¶ 26.[9]

After the Clarified Award was issued, Petitioner filed the Amended Petition on March 4, 2019, seeking recognition and enforcement of the Final Award in its entirety. Am. Petition ¶¶ 3-

---

[6] Clarification submissions were made with respect to Orders 1, 2, 3, 7, and 8, but Orders 4, 5, 6, and 9 were not subject to clarifications. Petition ¶ 19, ECF No. 1.
[7] The Clarified Award, dated December 19, 2018, was issued in Chinese. This version was translated into English and certified by Morningside Translations on January 21, 2019 as a full and accurate translation of the specified document. Final Award Certification, ECF No. 35-4 at p.2. This Court accepts the translation as filed.
[8] Petitioner is a Hong Kong-domiciled Estate, and neither of the Estate's administrators are citizens of the PRC or resident in the PRC. Am. Pet. ¶ 25.
[9] Stephany Yu asserts that she has tendered payment in full in RMB, the award at issue must be paid in RMB, and payment outside China would likely be viewed by the Chinese regulators as illegal. Mot. Mem. 13-14.

4. The Estate seeks an Order directing Stephany Yu to comply with the specific performance orders and to pay the Estate $750,824.53[10] (50% of the RMB award required by Order 9) with pre-judgment and post-judgment interest. *Id.*

On April 8, 2019, Stephany Yu filed a Motion to Dismiss the Amended Petition to Enforce an Arbitral Award, ECF No. 40. The Estate filed a response in opposition, ECF No. 43, and Stephany Yu filed a reply, ECF No. 45, which completed the motion briefing on May 20, 2019.[11] For the following reasons, Stephany Yu's Motion to Dismiss (ECF No. 40) shall be DENIED, and I shall GRANT the Amended Petition to Recognize and Enforce Foreign Arbitral Award (ECF No. 35).

## APPLICABLE LAW

A foreign arbitral award, or any award sought to be enforced in a signatory country other than the one in which the award has been made, falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (commonly referred to as the "New York Convention"). The United States is a signatory to the New York Convention and has an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *see also*

---

[10] Specified in United States dollars at an unknown exchange rate. In its response to Respondent's motion to dismiss, the Estate contends that Respondent should be directed to pay Order 9 in either United States dollars or in RMB that can be accepted by the Estate's Hong Kong bank. Resp. 21, ECF No. 43.

[11] Stephany Yu then filed a supplemental reply on August 8, 2019, reporting on related litigation in China. Suppl. Reply, ECF No. 46. The Estate objected to this supplemental briefing, and Stephany Yu has replied to the objection. ECF Nos. 47, 48. "Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D. Md. 2018). However, the supplemental filing was not intended to act as a surreply, and to the extent that it was relevant, I have considered the information regarding the related China litigation. Notably, "parties may bring suit to enforce awards notwithstanding the existence of ongoing proceedings elsewhere." *Steel Corp. of Philippines v. Int'l Steel Servs., Inc.*, 354 F. App'x 689, 694 (3d Cir. 2009) (citing *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*, 335 F.3d 357, 366-67 (5th Cir. 2003); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us*, Inc., 126 F.3d 15, 22 (2d Cir. 1997)).

*ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 (4th Cir. 2012). In the context of foreign arbitral awards, this policy includes "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes . . . ." *Mitsubishi Motors*, 473 U.S. at 629.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, implements the New York Convention. The FAA provides that:

> Within three years after an arbitral award falling under the [New York] Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court *shall confirm* the award *unless* it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added).[12]

Article V of the New York Convention sets forth the limited, exclusive grounds on which a court may decline to recognize or enforce the foreign award. First, recognition and enforcement may be refused if the party against whom the award is invoked demonstrates that:

> (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it

---

[12] One wishing to enforce an award in the United States under the New York Convention need only supply the authenticated original award or a certified copy thereof, the original or certified copy of the arbitration agreement, and official or sworn translations, if appropriate. New York Convention, Art. IV; 9 U.S.C. § 13.

> contains decisions on matters beyond the scope of the submission to arbitration . . . ; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, Art. V.1. Recognition and enforcement may also be refused if the reviewing court finds that:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country."

*Id.* Art. V.2. Recognition and enforcement of an arbitral award may also be deferred if an application to set aside or suspend an arbitral award has been made to the competent authority of the country in which, or under the law of which, that award was made. *Id.* Art. VI. "The party opposing confirmation bears the heavy burden of proving the applicability of the Convention's enumerated defenses." *AO Techsnabexport v. Globe Nuclear Services and Supply, Ltd.*, 656 F. Supp. 2d 550, 553-54 (D. Md. 2009) (citation omitted); *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) ("The burden is a heavy one, as the showing required to avoid summary confirmance is high.").

United States federal courts have secondary jurisdiction over a foreign award, so they may not vacate, set aside, or modify the award, but are limited to deciding whether the award may be enforced. *Fakhri v. Marriot Int'l Hotels, Inc.*, 201 F. Supp. 3d 696, 710-11 (D. Md. 2016) (citations omitted). The Fourth Circuit stated that the scope of judicial review is "among the

narrowest known at law" and indicated that "a court considering a complaint seeking confirmation of an arbitration award may determine only whether the arbitrators acted within the scope of their authority, and may not consider whether the arbitrators acted correctly or reasonably." *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS, Ltd.*, 404 F. App'x 793, 797 (4th Cir. 2010) (citations omitted).

**ANALYSIS**

Rather than asserting defenses under the New York Convention, Stephany Yu seeks to dismiss the Estate's petition on procedural grounds—*forum non conveniens* or for failure to join necessary parties under Federal Rule of Civil Procedure 19. Mot. Mem. 16-26. Stephany Yu also argues that the Court should refuse enforcement of Order 9 because the claim was mooted by her effort to tender payment. *Id.* at 26-28. She contends that the Court should accept her English translation of the Final Award Orders as being more accurate than the Petitioner's certified English translation, and she asks that if judgment is entered as to Order 9, it be entered in RMB rather than United States dollars. *Id.* at 34. Finally, Stephany Yu asserts a public policy defense under the New York Convention, Art. V.2(b), arguing that enforcement of Order 9 in the United States would violate the public policy of international comity. *Id.* at 31-33.

**I.      Procedural Grounds**

Stephany Yu asserts that a petition to enforce a foreign arbitral award may be dismissed on procedural grounds. Mot. Mem. 16-17 (citing *Base Metal Trading, Ltd. V. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002) (refusing enforcement for lack of personal jurisdiction); *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 496 (2d Cir. 2002) (concluding that the doctrine of *forum non conveniens* was consistent with the overall intent of New York Convention cases); *Intervest Int'l Equities*

9

*Corp. v. Aberlich*, 12 Civ. 13750, 2013 WL 1316997, at *2 (E.D. Mich. 2013) (deciding not to rule on the relative rights of the parties to the arbitration award without the presence of all parties to the arbitration)). The Estate argues that a confirmation proceeding under the New York Convention is intended to be a summary proceeding, and dismissal on procedural grounds such as *forum non conveniens* or Rule 19 would undermine the New York Convention, which has seven exclusive defenses enumerated under Article V. Resp. 12-17 (primarily citing *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 34 (D.D.C. 2013, *aff'd*, 794 F.3d 99 (D.C. Cir. 2015) and *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 18 (D.C. Cir. 2016) (rejecting *forum non conveniens* defense in foreign arbitral award case)).

The United States Court of Appeals for the Second Circuit and the D.C. Circuit appear to have different views regarding the propriety of dismissing a foreign arbitration enforcement proceeding on procedural grounds, and the United States Supreme Court has declined to weigh in. *Compare TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 105 (D.C. Cir. 2015) *cert. denied*, 137 S. Ct. 619 (Jan. 9, 2017); *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016) *cert. denied*, 137 S. Ct. 619; and *Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016) *cert. denied*, 137 S. Ct. 619; with *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384 (2d Cir. 2011), in which the majority rejected the D.C. Circuit's *forum non conveniens* analysis in *TMR Energy*.

In *Figueiredo Ferraz*, the Second Circuit asserted that the doctrine of *forum non conveniens* was a doctrine of procedure, citing *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994), and could be contemplated under the New York Convention's provision that says that States shall "recognize arbitral awards as binding and enforce them in accordance with the rules

10

of procedure of the territory where the award is relied upon." 665 F.3d at 392 (quoting New York Convention, Art. III); *but see id.* at 399, (Lynch, J., dissenting) ("the 'procedure' provisions of the treaties permit variation with regard to the manner in which signatory states enforce international arbitration awards; they do not provide a means by which a state may decline to enforce such awards at all."). The only Fourth Circuit decision discussing the recognition and enforcement of an arbitral award on procedural grounds was cited by Stephany Yu as support for her position: *Base Metal*, 283 F.3d 208. In that 2002 decision, the Fourth Circuit affirmed the district court's refusal to recognize a foreign arbitral award based on lack of personal jurisdiction over the debtor. *Id.* at 213-15. Personal jurisdiction is "an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999) (citing *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). However, in this case, Stephany Yu is a Maryland resident, and there is no dispute regarding whether this Court has personal jurisdiction over her. And there is no question whether this Court has subject matter jurisdiction, since the FAA allows for recognition and enforcement of foreign arbitral awards in district courts. *See* 9 U.S.C. § 203 ("An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.").

With regard to failure to join necessary parties, the FAA explicitly states that "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. In fact, the Estate, as prevailing party, could seek to enforce the award against Stephany Yu in multiple concurrent enforcement proceedings. *See, e.g.*, *Karaha Bodas Co., L.L.C. v. Perusahaan*

*Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 281 (5th Cir. 2004) (commenting on the filing of enforcement actions in the federal district court in Texas as well as filing actions in Hong Kong and in Canada). This is not an action to adjudicate the merits of the case, but an action to enforce a final and binding award. I am constrained to determine only whether Stephany Yu, as Respondent, has a legitimate defense to the enforcement proceeding, because judgment has already been imposed by the arbitral tribunal.

The bottom line is that the New York Convention lists seven exclusive defenses to enforcement, and neither *forum non conveniens* nor failure to join necessary parties under Rule 19 is one of them. An enforcing court is not reviewing the merits of the case such that a discussion of the most convenient forum for resolution is needed; the merits of the dispute have already been decided in the forum chosen by the parties.[13] Rather, courts have an obligation under the treaty to grant enforcement unless one of the Article V defenses is successfully invoked. *See* New York Convention, Art. V ("Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, *only if* that party furnishes to the competent authority where the recognition and enforcement is sought, proof that [one of the enumerated defenses applies]." (emphasis added); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974) ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."); Restatement (Third) U.S. Law of Int'l Comm. Arb. § 4.11 cmt. c, TD No 2 (2012) ("In the interest of uniformity and certainty, and consistent with U.S. obligations under the Conventions, a court may not vacate or

---

[13] In this case, the parties chose to arbitrate their dispute in Hong Kong.

deny confirmation, recognition, or enforcement of a Convention award on a ground other than those specified in the New York or Panama Convention.").

Accordingly, I will not dismiss the Petition under the procedural grounds set forth by Stephany Yu.

**II.     Public Policy Consideration**

Stephany Yu has raised only one of the available defenses under the New York Convention Article V; she asserts that recognition and enforcement of the Final Award would be contrary to public policy. Mot. Mem. 31 (citing New York Convention, Art. V.2(b); 9 U.S.C. § 207). Stephany Yu contends that requiring her to pay the award outside China would violate China's currency control laws, which, in turn, violates the fundamental policy of international comity[14]. *Id.*

The New York Convention's public policy defense is "construed extremely narrowly." *BCB Holdings Limited v. Government of Belize*, 110 F. Supp. 3d 233, 250 (D.D.C. 2015) (citations omitted). Courts recognize the presumption that favors upholding international arbitral awards and denies enforcement only when it "would violate the forum state's most basic notions of morality and justice." *Id.* "Such a public policy . . . must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* Stephany Yu has not met this substantial burden.

Stephany Yu argues that *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 715-16 (2d Cir. 1987) provides authority for this Court to refuse enforcement. Mot. Mem. 32.

---

[14]     "Comity is a doctrine that takes into account the interests of the United States, the interests of the foreign state, and those mutual interests the family of nations have in just and efficiently functioning rules of international law." *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1048 (2d Cir. 1996) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 555 (1987) (Blackmun, J., concurring)).

13

However, *Vitrix* does not stand for the proposition that she asserts. In *Vitrix*, the respondent, Salen, had entered into bankruptcy in Sweden. 825 F.2d at 711. Vitrix filed a claim in the foreign bankruptcy proceeding, and simultaneously obtained an arbitration award in London and a money judgment. *Id.* Vitrix then sought to attach property in New York, seeking to enforce both a foreign judgment and the arbitral award, thus undertaking two methods of securing a remedy at the same time in different jurisdictions. *Id.* In the bankruptcy context, "American courts have long recognized the need to extend comity to foreign bankruptcy proceedings," because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *Id.* at 713–14. "U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005). This case presents no similar circumstances. Rather, Stephany Yu simply asserts, without citing any authority, that she might be placed at legal risk for potentially violating China's currency control laws if the Court were to require her to pay the Final Award from China to a bank account outside of China. This Court is not being asked to enforce a judgment in China, but rather, in the United States, so any decision in this case would not undermine the interests of China in enforcing its own currency control laws.

Therefore, Stephany Yu has not met the high bar of showing that the Final Award, nor my confirmation of it, would violate the "basic notions of morality and justice," and I shall not dismiss the Petition under the asserted public policy consideration. *See BCB Holdings*, 110 F. Supp. 3d at 250.

**III.     Payment Considerations**

Stephany Yu contends that she has already tendered the funds for payment under Order 9, mooting the relief sought by the Estate. Mot. Mem. 26. She also argues that any judgment as to Order 9 should be entered in RMB, not U.S. dollars. *Id.* at 33 (citing cases in which federal courts entered judgments in the currency of the parties' transactions rather than in U.S. dollars). The Estate notes that payment currency is not an appropriate dismissal argument but asks that I direct Stephany Yu to pay Order 9 in either United States dollars or in RMB that can be accepted by the Estate's Hong Kong bank. Resp. 21. It adds that Stephany Yu's attempts at payment in a form that the Estate cannot accept does not make the issue moot. *Id.* at 22.

Of the multiple cases cited by Stephany Yu in support of her argument that the judgment should be entered in RMB, two of the discussions were in the context of enforcing a foreign arbitral award—*Mitsui & Co., Ltd. v. Oceantrawl Corp.*, 906 F. Supp. 202, 203 (S.D.N.Y. 1995) and *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213 (D.C. Cir. 2018). The *Mitsui* court discussed the earlier policy of American courts entering money judgments in American currency but noted that there was no longer a bar to judgment in foreign currencies and observed that "courts should enter judgment in the currency in which the parties conducted their transactions." 906 F. Supp. at 203 (citing *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279 (7th Cir. 1992) (*per curiam*)). The court also cited the Restatement (Third) of the Foreign Relations Law of the United States § 823(1) (1986), which "states that American courts 'are not precluded from' entering judgment in the foreign currency of an underlying obligation." *Id.* at 204 (noting that comment b counsels that "a judgment in a foreign currency should be issued only when requested by the judgment creditor, and only when it would best accomplish the objective [of making the injured party whole and avoiding rewarding a debtor who has delayed in carrying out the obligation]."). In the *Mitsui* case,

the parties had conducted all their transactions in yen and agreed that judgment should be entered in yen, so the court entered the judgment in yen. *Id.*

In *Leidos*, the D.C. Circuit reversed the district court's grant of a motion to convert the original judgment's award in euros into United States dollars.[15] 881 F.3d 213. The *Leidos* court also discussed the trend towards recognizing judgments in foreign currencies in some circumstances, citing the Restatement, and noting that "[r]ecent cases have endorsed judgment in a foreign currency if the petitioner requests payment in that currency." *Id.* at 218. The *Leidos* court also noted that the creditor could have asked for dollars instead of euros at any time before judgment, but it chose to explicitly request judgment in euros. *Id.* Citing to an earlier decision that had affirmed a post-judgment conversion of an arbitration award to dollars, the court allowed the conversion because the complaint had not specified the currency sought. *Id.* at 220 (quoting *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 162 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015)). The court stated that the conversion was allowed "primarily because 'a judgment in a foreign currency should be issued only when requested by the judgment creditor.'" *Id.* (quoting *Cont'l Transfert*, 603 F. App'x at 4). These cases support the Estate's request for the award to be paid in United States dollars.

A recent unpublished decision from the D.C. district court is also instructive. In *LLC Komstroy v. Republic of Moldova*, Case No. 14-cv-01921 (CRC), 2019 WL 3997385, at *1 (D.D.C., Aug. 23, 2019), the court was petitioned to confirm an arbitral award in one of multiple jurisdictions. After summarily dismissing the respondent's *forum non conveniens* argument[16] and

---

[15] Because the value of the euro had declined significantly against the dollar over the course of the litigation, converting the judgment increased its value. *Leidos*, 881 F.3d at 216.

[16] "[T]he D.C. Circuit has clearly held that '*forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations.'" *LLC Komstroy*, 2019 WL 3997385, at *6 (quoting *BCB Holdings*, 650 F. App'x at 19 (D.C. Cir. 2016)).

analyzing its New York Convention defenses, the court concluded that it must confirm the award, which led to a discussion on currency. *Id.* at *6-13. The court granted petitioner's pre-judgment request to convert the award to United States dollars, noting that conversion into dollars at judgment "is the norm, rather than the exception." *Id.* at 13 (quoting *Cont'l Transfert*, 932 F. Supp. 2d at 158); *see also ReliaStar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 874, 882 (8th Cir. 2002) (noting that the Restatement "suggests that United States courts ordinarily enter judgments in U.S. dollars"). The exchange rate applied was from the date of the award because the petitioner's cause of action to confirm the award arose under United States law at that date. *Id.* (nominally applying the breach day rule from *Hicks v. Guinness*, 269 U.S. 71 (1925)). "Under the 'breach day' rule, the applicable exchange rate is the one that was in effect on the date that the defendant breached its obligations to the plaintiff." *Cont'l Transfert*, 932 F. Supp. 2d at 159 (citing *Reliastar*, 303 F.3d at 883). The alternate date for fixing the applicable exchange rate is known as the "judgment day rule," which applies the prevailing rate on the date that the court enters judgment. *Id.* (citing *Die Deutsche Bank Fialiale Nurnberg v. Humphrey*, 272 U.S. 517 (1926)). The court explained that "in the context of international arbitration awards, . . . the defendant is deemed to have breached its obligation on the date the arbitral award issued, which is when the defendant's obligation arose." *Id.* (citations omitted).

On a claim for recognition of a foreign judgment, the Restatement suggests that courts consider equitable reasons, with an intent "to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation." *Id.* (citing Restatement § 823 cmts. c & d). Thus, a court should apply the "breach day" rule if the currency in which the foreign judgment is denominated has depreciated in value, "[u]nless the interests of justice require otherwise." *Id.*

17

Here, the Petitioner requests the award in a specific amount of United States dollars, but it is not clear how the Estate calculated the exchange rate. Am. Petition 10, (c). Based on the Estate's original petition, the request was for an award in United States dollars "at the exchange rate effective on the date of issuance of such judgment, or upon the date of issuance of the Final Award, whichever is greater." Petition 7, (a). Stephany Yu suggests that the exchange should be based on the judgment day rule, based on the claim arising under foreign law. Mot. Mem. 35 n.6 (citing *Vlachos v. M/V/ Proso*, 637 F. Supp. 1354, 1376 (D. Md. 1986), applying the judgment day rule in an admiralty case based on governing foreign law). However, as discussed, the cause of action here arises under the FAA.[17] I am persuaded by the cases cited above that the Final Award Order 9 payment of RMB 5,173,105.50 shall be made in United States dollars at an exchange rate based equitably on the breach day rule, i.e., the date of the Final Award, February 28, 2018, unless the RMB has depreciated in value.

I do not agree that Stephany Yu's efforts to tender payment from her China-based company in a form that was unacceptable to the Estate constitutes an unconditional tender that moots this case. *See* Mot. Mem. 26. Even if the Estate had accepted the payment, it is still entitled to an order recognizing the Final Award and the ability to pursue pre- and post-judgment interest. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (holding that whether the award at issue had been satisfied was not relevant to whether the court should confirm the award); *Southside Hosp. v. New York State Nurses Assoc.*, CV 15-2282 (JS) (GRB), 2017 WL 9485721, at *5 (E.D.N.Y.

---

[17] As in *Cont'l Transfert*, "this is not an action in which a plaintiff has come to a United States court to adjudicate rights arising under foreign law. Rather, this action arises under the Federal Arbitration Act . . . . The FAA implements the New York Convention by allowing international arbitral awards to be enforced in United States courts, 9 U.S.C. § 201, and it provides that '[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.' " 932 F.Supp.2d at 160 (quoting 9 U.S.C. § 203).

Jan. 26, 2017) ("A court may confirm an arbitration award even when the party has fully complied with that award."). The Estate indicated it was willing to accept payment in RMB, but it required a negotiable instrument capable of being deposited into its Hong Kong bank account. Am. Petition ¶ 25. Stephany Yu did not provide a payment that could be accepted by the Estate's Hong Kong bank account as requested. *Id.* at ¶ 25-26.

The Estate has also requested pre-judgment and post-judgment interest at the statutory rate. Am. Petition 10 (d), (e).[18] Federal courts have discretion to award post-award, prejudgment interest in actions under the New York Convention. *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 665 F.3d 1091, 1102-1103 (9th Cir. 2011). This discretion "must be exercised in a manner consistent with the underlying arbitration award." *Id.* at 1103. The Final Award excludes interest and arbitration fees, which were specifically exempted from the award, presumably to be determined later. *See* Final Award ¶ 325; Clarified Award ¶ 1 (16).

The Fourth Circuit has stated that "awarding post-judgment interest on the entire [damages] amount . . . including pre-judgment interest, most closely comports with the purpose of post-judgment interest articulated by the Supreme Court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990)).

The parties did not discuss either pre- or post-judgment interest in their briefs. Therefore, if the parties do not agree on the propriety or form of interest due to the Petitioner, I shall require

---

[18] Initially, the Petitioner requested only post-judgment interest in accord with 28 U.S.C. § 1961(a). Pet. 7.

them to provide me with letter briefs not to exceed three pages, single space (as described below), detailing their positions on the matter before I make a decision.

Accordingly, I direct the parties to submit a proposed judgment with all conversions consistent with this opinion and agreed interest calculations. If the parties cannot agree, they shall each provide a proposed judgment together with a letter (not to exceed three pages, single spaced) containing a concise summary of their position and the legal support for it.

## CONCLUSION

In sum, the Petitioner has provided the required documentation for recognition and enforcement of the Final Award. The Respondent has not sought to modify or annul or vacate the award, and the award has not been set aside or suspended in Hong Kong, where it was rendered. The Respondent asserted only one defense under the New York Convention—enforcement would violate public policy—but she did not satisfy the substantial burden to overcome the presumption favoring enforcement. Therefore, I shall GRANT Petitioner's request to recognize and enforce the Final Award. Respondent's dismissal motion shall be DENIED.

Judgement shall be entered by separate Order. There remain outstanding questions related to the exchange rate to be applied as well as the parties' positions on pre- and post-judgment interest. Accordingly, the parties shall provide an agreed proposed judgment order, consistent with the Final Award and this opinion, no later than Friday, March 13, 2020. If the parties cannot agree on a proposed judgment order, on or before Friday, March 13, 2020, each shall provide their proposed order together with a letter (not to exceed three pages, single spaced) containing a concise summary of their position with respect to the exchange rate and pre- and post-judgment interest, and the legal support for it.

Date: <u>February 21, 2020</u>

                                                                              /S/
                                                      Paul W. Grimm
                                                      United States District Judge