Michael J. Baratz
202 429 6468
mbaratz@steptoe.com



1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

March 13, 2020

**By ECF**

Hon. Paul W. Grimm
United States District Court
District of Maryland
6500 Cherrywood Lane, Suite 465A
Greenbelt, Maryland 20770

**Re:** ***Estate of Ke Zhengguang v. Stephany Yu*, 8:18-cv-03546-PWG (D. Md.)**

Dear Judge Grimm:

As the Court directed (ECF No. 53, at 20), we write on behalf of Respondent Stephany Yu to urge the Court to enter her form of proposed judgment (Ex. A), instead of one from the Petitioner, the Estate of Ke Zhengguang (the "Estate") (Ex. B). A redline is attached as Exhibit C. There are three differences: (i) whether and (ii) at what rate to award prejudgment interest and (iii) whether the judgment should state that it applies only to the parties before the Court.

**The Court Should Award No Prejudgment Interest**

The Court has recognized that prejudgment interest is discretionary (ECF No. 53, at 19.) Since Ms. Yu has repeatedly tried to pay what is due, no prejudgment interest is appropriate.

Ms. Yu's efforts began with four letters between April and October 2018 offering to pay the arbitral award, if the Estate would only provide a bank account in China to receive the money. (ECF No. 40-2 (Yu Decl.) ¶¶ 31-38 & ECF Doc. 40-3 (Gu Decl.) Exs. 3, 7, 11 and 26).) The Estate refused, insisting on payment overseas. In November 2018, Ms. Yu attempted to wire the funds to an overseas account the Estate had provided, but the wire was blocked, likely for lack of regulatory approval (*i.e.*, the reason Ms. Yu was trying to pay in China in the first place). (Doc. 40-2 (Yu Decl.) ¶ 39 & Ex. B.) The next month, Ms. Yu mailed a check to the Estate's counsel in China, but the Estate refused to deposit it. (Doc. 40-2 (Yu Decl.) & Ex. C.)

We understand the Court has ruled that judgment is to be entered in U.S. Dollars, and may be enforced here. We respectfully submit, however, that Ms. Yu's view to the contrary is at a minimum based on a reasonable interpretation of an unsettled area of law — that paying a domestic Chinese obligation outside China risks exposing her to severe regulatory sanction.

While the Court's ruling states that "Stephany Yu simply asserts, without citing any authority, that she might be placed at legal risk" for paying outside China (ECF No. 53, at 14), we respectfully disagree. Ms. Yu provided translations of the relevant Chinese laws and regulations, along with two detailed expert declarations explaining their implications for Ms. Yu. (ECF Nos. 50-05, 45-04 (Wagner Declarations).) The cited authorities include a law prohibiting foreign exchange transactions "where such funds should be collected or paid in Renminbi."

(ECF No. 40-5 (Wagner Decl.) ¶¶ 12-14 & Ex. 8, at 10 (Art. 40)), and a regulation prohibiting "evading" the currency control laws by "any . . . means" — which has been applied to cover all manner of creative attempts to skirt currency restrictions. (*Id*. ¶¶ 12, 18-19 & Ex. 12, at 1; *see also* ECF 45-04 (Wagner Reply Decl.) ¶ 6.) The Estate ignored these authorities, instead submitting a declaration from a Chinese lawyer who opined, without any support, that "China's foreign currency control applies only to transactions within China (or related to Chinese territory)." (ECF 43-2 (Gao Decl.) ¶ 9.) That statement is contradicted by the above authorities, but, regardless, the payments at issue are clearly "related to Chinese territory," since they represent lost rent for Chinese real estate, owing from a Chinese business to a Chinese national.[1]

In sum, while the Court has concluded that Ms. Yu must make the payments in U.S. Dollars, Ms. Yu at all times acted reasonably and in good faith when she concluded that (i) she was legally required to pay in RMB, and (ii) that the Estate's representatives could easily accept payment in that form, and were simply trying to unfairly increase their award by avoiding Chinese tax and currency restriction obligations. Under these unique circumstances, the Court should exercise its discretion to decline awarding any prejudgment interest.

**Alternatively, Prejudgment Interest Should be Limited to the Federal Statutory Rate**

Alternatively, any prejudgment interest should be limited to the federal statutory rate under 28 U.S.C. § 1961, not the prime rate the Estate is urging.

There is no federal statutory rate for pre-judgment interest, but "[g]enerally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of a particular case require a different rate." *Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc*., 823 F. Supp. 2d 307, 326 (D. Md. 2011) (internal quotations and citation omitted) (ERISA action). It makes practical sense to use the formula Congress chose for post-judgment interest to prejudgment interest because the underlying purpose in both contexts is the same — to compensate a party for the time value of money.

Courts have applied this logic in the specific context of international arbitral awards under the New York Convention, and have thus used 28 U.S.C. § 1961 to fix the rate of

[1] As a fallback argument, the Estate argues, citing *zero* evidence, that as a Hong Kong estate, it is unable to accept RMB in China. In fact, the Estate is not a separate legal entity under Hong Kong law, and cannot negotiate payments in any country except via its Chinese administrators, Mr. Ke's wife and daughter. (ECF 45-4 (Wagner Reply Decl.) ¶¶ 7-16.) Ms. Yu put forth substantial and undisputed evidence that the Estate's administrators *can* receive RMB in China. Any other conclusion is inconceivable because (among other things) they: (i) control the daily operations of a large Chinese real estate business that is worth at least $100 million and whose General Manager is Mr. Ke's daughter (one of the Estate's administrators); (ii) have designated a Chinese company owned by Mr. Ke's wife (the other administrator) to receive certain highly valuable property covered by the award; and (iii) have engaged counsel based in China. (ECF 40-1 (Yu Mem. of Law), at 29-30; ECF 40-2 (Yu Decl.) ¶¶ 45-49 & Exs. E-I.) When prior to this case the Estate was refusing to accept payment in RMB in China, it never claimed that it would be impossible to do so. It argued only that it was free to demand payment anywhere it wanted. (ECF 40-3 (Gu Decl.), at Ex. 5, at 3, Ex. 10, at 3.) If payment in China were impossible all along, the Estate surely would have said so at the time.

prejudgment interest. *Sarhank Group v. Oracle Corp*., 01 Civ. 1285, 2004 WL 324881, at *5 (S.D.N.Y. Feb. 19, 2004); *In Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc*., 00 Civ. 7120, 2001 WL 38282, at *3 (S.D.N.Y. Jan. 16, 2001).

In fact, the Estate at the start of this case *agreed* that this is the correct approach, because its Amended Petition seeks "pre-judgment interest **at the statutory rate** from the date of the Final Arbitration Award to the date of entry of judgment." (ECF Doc. 35, at 10 (subparagraph (d)) (emphasis added).) We have tried to understand the Estate's grounds for its recent flip-flop on this issue, but have been unable to get any clear answer.

Any prejudgment interest should therefore follow 28 U.S.C. § 1961.

**The Judgment Should Make Clear that It Applies Only to the Parties Before the Court**

The underlying arbitration had six parties, but only two are before the Court. The others cannot be bound this Court's judgment because of the basic principle "that one is not bound by a judgment . . . in which he is not designated as a party." *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (citation omitted).

Ms. Yu's proposed judgment would make this point clear, via the following clause that the Estate insists on omitting: "The Final Award is confirmed, and its Orders are hereby entered as the judgment of the Court, but only insofar as those Orders by their terms impose obligations upon the parties before the Court, the Estate and Stephany Yu." (Ex. A, at 2.) The Estate does not dispute the merits of this point, but objects to including this clause because, according to the Estate, the Court has only authorized the parties to address issues relating to interest.

In our view, because any "judgment must designate the parties for and against whom it is rendered," 49 C.J.S. Judgments § 291, the issue of who is bound is a basic and intrinsic feature cannot be ignored. The Court did not direct the parties to include, for example, a caption or a signature block, but those features are both sides' proposed judgments because they are part and parcel of drafting a judgment. So too with specifying exactly the parties to be bound.

In addition, it would create needless confusion and potential mischief for this Court to purport to enter judgment against nonparties. For example, if the judgment is not clear as to who is bound, one of the arbitral parties could try to enforce it against another outside the United States, even if one or both of them were not parties to this proceeding. We believe any effort to enforce this Court's judgment by or against nonparties should ultimately fail, but why even create the risk of these sorts or problems down the road? There is no good reason. The judgment should be drafted clearly from the start, specifying who exactly is bound.

* * *

We thank the Court for its consideration of these matters, and would be happy to provide any further information that the Court believes would be helpful.

Respectfully,

/s/ *Michael J. Baratz*
Michael J. Baratz (Bar No. 16391)

/s/ *Charles Michael*
Charles Michael (*Pro Hac Vice)*

*Attorneys for Respondent Stephany Yu*

cc: Amiad Kushner (Counsel for the Estate)
(by ECF)