# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ESTATE OF KE ZHENGGUANG,

Petitioner,

—*against*—

YU NAIFEN STEPHANY
(a/k/a/ STEPHANY YU,
a/k/a/ STEPHANY NAIFEN YU
a/k/a/ STEPHANY N. DOMBROWSKI),

Respondent.

8:18-cv-03546-PWG

ESTATE OF KE ZHENGGUANG,

Petitioner,

—*against*—

YU NAIFEN STEPHANY
(a/k/a/ STEPHANY YU,
a/k/a/ STEPHANY NAIFEN YU
a/k/a/ STEPHANY N. DOMBROWSKI),

Respondent.

8:20-cv-2260-PWG

## BRIEF IN SUPPORT OF
## RESPONDENT STEPHANY YU'S PROPOSED FORM OF
## CONSOLIDATED FINAL JUDGMENT

November 16, 2020

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................. 3

    The 2010 Agreement............................................................................................ 3

    Arbitration in Hong Kong................................................................................... 4

    Efforts to Comply With the Specific Performance Aspects of the Award ......................... 5

    Shanghai Legal Proceedings .............................................................................. 6

    The Arbitral Tribunal Issues Its Costs and Interest Ruling, Including a Correction .......... 8

    Further Proceedings in Shanghai Civil Court ................................................... 10

    Procedural History ............................................................................................ 11

DISCUSSION ..................................................................................................... 12

    I.      The Court Should Not Impose Post-Award, Prejudgment Interest for Order 8.... 12

          A.      The Tribunal Did Not Impose Post-Award Interest for Order 8............... 12

          B.      Ms. Yu Should Not Be Forced to Pay Interest
for an Obligation That Has Preconditions She
Cannot Satisfy Without the Estate's Cooperation ................................... 13

          C.      The Estate Is Wrong to Read the March 2020 Costs|
and Interest Ruling as Imposing Post-Award Interest for Order 8 ........... 15

    II.     The Court Should Not Impose Post-Award Prejudgment Interest for Order 9..... 17

    III.    The Final Judgment Should State That It Binds
Only the Parties to This Proceeding.................................................................... 19

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambling Management. Co. v. Universal View Partners LLC*,
No. WDQ-07-2071, 2011 WL 4103098 (D. Md. Sept. 9, 2011) ..................................... 13

*Andrulonis v. United States*,
26 F.3d 1224 (2d Cir. 1994).................................................................................. 14

*CSX Transportation, Inc. v. Transportation–Communications International Union*,
413 F. Supp. 2d 553 (D. Md. 2006) ...................................................................... 12

*Dormitory Authority of New York v. Continental Casualty Co.*,
756 F.3d 166 (2d Cir. 2014)............................................................................ 13, 14

*In re Cybermech, Inc.*,
13 F.3d 818 (4th Cir. 1994) ............................................................................... 13

*Norwest Corp. v. Vulcan Capital Management, Inc.*,
06 Civ. 6342, 2008 WL 11516925 (S.D.N.Y. Oct. 7, 2008) ........................................ 12

*Otis v. City of Chicago*,
29 F. 3d 1159 (7th Cir. 1994) ............................................................................. 16

*Overbeek v. Heimbecker*,
101 F.3d 1225 (7th Cir. 1996) ............................................................................ 15

*Protogyrou v. Lines*,
No. 93-2271, 1994 WL 673635 (4th Cir. Dec. 2, 1994).................................................. 19

*Richards v. Jefferson County*,
517 U.S. 793 (1996)........................................................................................... 19

*STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*,
648 F.3d 68 (2d Cir. 2011)................................................................................... 12

*Trustmark Insurance Co. v. John Hancock Life Insurance Co.*,
No. 04 C 2649, 2004 WL 1376409 (N.D. Ill. June 17, 2004) ......................................... 16

**TREATISES**

Michael J. Moser, A Guide to the HKIAC Arbitration Rules § 11.01 (2016)............................. 16

**TABLE OF ABBREVIATIONS FOR CITED DOCUMENTS**

| Abbreviation | Document | Ex. to Yu Decl. |
|---|---|---|
| 2010 Agreement | Agreement on the Implementation of "The Preliminary Share Restructuring Agreement," dated April 28, 2010. The Petitioner has filed an English translation as 18-cv-03546, ECF 35-2. | Ex. 7 |
| Final Award | "Final Arbitration Award (excluding interest and arbitration fees)," HKIAC Case No. A13028, dated Feb. 28, 2020. The Petitioner has filed an English translation as 18-cv-03546, ECF 35-4. | Ex. 8 |
| First Yu Decl. | Declaration of Stephany Yu, dated April 5, 2019, 18-cv-03546, ECF 40-2 | Ex. 1 (without exhibits) |
| Gu Decl. | Declaration of Gu Yong, dated April 8, 2020, 18-cv-03546, ECF 40-3. | Ex. 5 (without exhibits) |
| Gu Reply Decl. | Declaration of Gu Yong, dated May 15, 2020, as 18-cv-03546, ECF 45-2. | Ex. 6 (without exhibits) |
| June 2020 Costs and Interest Ruling | "Decision of the Arbitral Tribunal on the Application of the Respondents for Correcting/Explaining 'Final Award on Arbitration Fees and Interest,'" HKIAC Case No. A13028, dated June 26, 2020. The Petitioner has filed an English translation as 20-cv-02260, ECF 1-4. | Ex. 20 |
| March 2020 Costs and Interest Ruling | "Final Award on Arbitration Fees and Interest," HKIAC Case No. A13028, dated Mar. 16, 2020. The Petitioner has filed an English translation as 20-cv-02260, ECF 1-4. | Ex. 19 |
| Wagner Decl. | Declaration of Richard Wagner, dated Feb. 15, 2019, 18-cv-3546, ECF 40-5 | Ex. 9 (without exhibits) |
| Wagner Reply Decl. | Declaration of Richard Wagner, dated May 19, 2019, 18-cv-3546, ECF 45-4 | Ex. 10 (without exhibits) |
| Yu Decl. | Declaration of Stephany Yu, dated November 16, 2020, submitted herewith | |

# INTRODUCTION

In these consolidated cases, the petitioner, the estate of Chinese businessman, Ke Zhengguang (the "Estate"), seeks to enforce a series of arbitral awards arising from a 2010 contract (the "2010 Agreement") in which the partners to a real estate business in China agreed to separate their interests. The first is a February 2018 "Final Award," which in large part directed the parties to carry out the terms of the 2010 Agreement, including requiring them to complete various corporate and real estate transactions, to be followed by a cash payment from the respondents to the claimants. The cash payment is denominated as "Order 8" (out of nine) in the Final Award, and is the primary focus of this motion. In February 2020, this Court ruled the Final Award was enforceable as a judgment against the respondent here, Stephany Yu. (Ms. Yu is the only arbitral respondent before the Court.) After the Court's decision, but before entry of judgment, the tribunal issued two rulings in March and June 2020 relating to the costs of the arbitration, and interest (the "Costs and Interest Rulings"). The Estate then filed with this Court a second petition to enforce those rulings, and the parties agreed to submit briefing to the Court to resolve their disputes as to the proper form of a single, consolidated judgment for both cases.

The primary question before the Court is: should any judgment include post-award, prejudgment interest for Order 8 (which would be approximately $1.8 million to date, or approximately $1,700 per day)? The answer is no, because, first, the Costs and Interest Rulings contain a clear Order providing only for 36 months of pre-award interest, and, second, post-award interest would make no sense given the contingent nature of Order 8. Under the Final Award, the Order 8 payment is due only if and when the other Orders are completed, and those preconditions require the cooperation of the Estate and its co-claimant (who is not a party here), as well as regulatory approvals in Hong Kong and China. The tribunal could not possibly have intended to rule that Ms. Yu would be automatically responsible for any delay going forward.

This is not a hypothetical concern. To date, the Estate has obstructed efforts to comply with the Orders because the status quo works to its advantage. It has already received a key aspect of the consideration from the 2010 Agreement (control and the economic benefits of a large real estate development referred to as "SJHC"), and is trying to force Ms. Yu to accede to its demands to formally transfer SJHC in a manner that would allow it to shift its tax obligations onto Ms. Yu and her companies. Most recently, when Ms. Yu filed litigation in China to force the Estate to cooperate in carrying out the award, the Estate contrived a meritless excuse, that it had never raised in the past seven years of legal proceedings, to block the transactions.

The Estate's stated basis for seeking post-award interest on Order 8 is its misreading of an isolated passage in one of the Costs and Interest Rulings referring to the accrual of interest until the funds due are paid. But that language was never incorporated into the tribunal's Orders, which clearly set a narrower period. At most, the language means that, if an enforcement court is later awarding discretionary interest (if, say, there is a payment delay after the Order 8 conditions are satisfied), the rate should be the same one the tribunal specified for pre-award interest.

Ms. Yu should not be required to pay Order 8 now to stop the interest from running. She is entitled to insist that the Order 8 preconditions are satisfied—that she gets her end of the bargain—before paying Order 8. The Estate and its co-claimant have controlled SJHC and have been installed as its beneficial owners since 2010, while Ms. Yu remains in the perilous position of holding bare legal title to its shares. To incentivize the speedy transfer of SJHC, Order 8's payment was specifically made a conditional, final step in both the 2010 Agreement and the Final Award. Now, the Estate is trying exploit its misreading of the arbitral rulings to obtain the opposite result, so that its stalling tactics pay off. The Court should not allow it.

The parties have a similar dispute concerning Order 9, which is a damages payment relating certain commercial real estate in Shanghai that the tribunal found should have been transferred to the claimants sooner. The relevant Order of the Costs and Interests Rulings specifies that interest on Order 9 should be based on a period of 204 days, not, as the Estate argues, indefinitely into the future. In addition, as a matter of discretion, the Court should decline to award post-award interest for Order 9 because Ms. Yu tried repeatedly to pay the amount to the Estate in China, which she reasonably believes is mandated by Chinese law.

Finally, the judgment should reflect that it does not bind nonparties. Given that there are four arbitral parties who are not parties to this case, clarifying this uncontroversial point will avoid future mischief or confusion.

## BACKGROUND

### The 2010 Agreement

The petitioner in this case is the estate of a deceased Chinese businessman, Ke Zhengguang, who, in the early 2000s, was among a group of business partners that formed Oasis Investment Group Limited ("Oasis") to buy and develop real estate in China. (Yu Decl. ¶ 13.) The other partners were Xu Hongbiao, Stephany Yu (the respondent here), and Ms. Yu's two sisters. (*Id.*)  In April 2010, the Oasis partners entered into the 2010 Agreement to separate their business interests. (*Id.* ¶ 15 & Ex. 7.) The 2010 Agreement has three primary components: (a) the subsidiary transfer, (b) the property swap, and (c) the cash payments.

First, Messrs. Xu and Ke were to receive 100% of an Oasis subsidiary, Shanghai Greencourt Four-Season-Flower-City Property Development Co., Ltd., or Siji Huacheng ("SJHC") through a multi-step process. SJHC owns a property development in China and today is worth at least $100 million. (Yu Decl. ¶ 14.) Under the 2010 Agreement, an Oasis subsidiary, Greencourt Properties Ltd. ("Greencourt Properties") would transfer its 80% ownership stake in

SJHC to a newly formed company, Shibang Company Ltd. ("Shibang"). (2010 Agreement at 5 (§ 2.3.1).) Next, the parties would sign contracts that would give Messrs. Xu and Ke the right to control Shibang for a three-year "entrustment period," after which Shibang, and the remaining 20% of SJHC, would be transferred to entities of Messrs. Xu and Ke. (*Id*. §§ 2.3.2, 2.3.3.)

The purpose of this indirect transfer mechanism was to make the overall transaction more tax efficient. (Yu Decl. ¶ 19.) Under Chinese law, an equity transfer between affiliates can be treated as a tax-free "reorganization" if certain conditions are met. (*Id*.) One condition, for example, is that the seller of the equity (here, Greencourt Properties) must directly own 100% of the buyer (here, Shibang) and must agree not to sell the equity within three years. (*Id*.) That is why the parties utilized the "entrustment period" structure. (*Id.*) This tax benefit was essential to the economics of—and Ms. Yu's willingness to agree to—the transaction. (*Id*.)

Second, for the property exchange, an Oasis subsidiary was to transfer approximately 8,000 square meters of commercial space (the "Jiuting Shops") in Shanghai to nominees of Messrs. Xu and Ke, and, in exchange, was to receive two villas. (2010 Agreement at 7 (§ 3.1).)

Third, for the cash component, Oasis was to buy back the interests of Messrs. Xu and Ke via three cash installments. (*Id*. at 2-7 (Arts. 1-2).) The third and final installment of RMB 150 million (as adjusted) was to be paid only when the other steps in the separation process were complete. (*Id*. at 4-7 (§ 2.2.1(4)).) This was to incentivize Messrs. Xu and Ke, who already controlled SJHC, to complete the transfer and relieve Oasis and Ms. Yu of the liability risks associated with holding title to a company over which they had no control. (Yu Decl. ¶ 21.)

## Arbitration in Hong Kong

In February 2013, the Messrs. Ke and Xu filed a Notice of Arbitration against Oasis, Ms. Yu and her sisters relating to various disputes that arose in attempting to implement the 2010 Agreement. (Final Award at 4 (¶ 13).) In December 2013, Mr. Ke died suddenly. (*Id*. at 7 (¶ 32).)

In April 2016, the arbitration tribunal authorized the wife and daughter of Mr. Ke to participate in the arbitration as administrators of his estate. (*Id*. at 22 (¶ 100).)

In February 2018, the tribunal issued its "Final Award," which can be summarized as follows. First, Orders 1-3, concern the property exchange, and settling certain intercompany debts, and direct various parties to carry out those provisions, as set forth in the 2010 Agreement. (*Id*. at 95-96.) Second, Orders 4-7 concern the mechanics for transferring of SJHC. (*Id*. at 96.) Third, Order 8 requires Oasis to make the final payment, subject to adjustments, when the conditions have been completed. (*Id*.) Finally, Order 9 requires the respondents to pay damages for delaying in transferring a portion of the Jiuting Shops. (*Id*.)

## Efforts to Comply With the Specific Performance Aspects of the Award

The arbitral respondents have endeavored to comply with the Award, but have been impeded at nearly every step along the way by the Estate and Mr. Xu fighting with one another or otherwise not cooperating and by the Estate's outright obstruction. (Yu Decl. ¶ 28.)

**The SJHC Transaction**. One of the biggest challenges has been the SJHC transaction, which has been beset with issues arising from disputes between Mr. Ke's heirs and Mr. Xu over control of the company. (*Id*. ¶ 29; Gu Decl. ¶¶ 5-13; Gu Reply Decl. ¶¶ 1-2) (detailed summary of disputes, with corroborating correspondence).) While the formal transfer of the shares of SJHC has not been completed, Oasis ceded control of SJHC to the claimants even before the 2010 Agreement. (Yu Decl. ¶ 29.) Oasis has had no control over, nor gained any economic benefit from, SJHC since then. (*Id*.) For reasons that are unclear, however, Mr. Ke's heirs have apparently seized from the other claimant, Xu Hongbiao, control of the SJHC board, and have gained control of the corporate seal necessary to execute legal documents. (*Id*. ¶ 30.) Mr. Xu has complained vociferously about having been pushed aside, and, as a result, will not cooperate with Mr. Ke's representatives unless they give him joint control over SJHC. (*Id*.)

**The Property Exchange**. The claimants' infighting has impeded the property exchange, too. (*Id*. ¶ 32; *see* Gu Decl. ¶¶ 14-16; Gu Reply Decl. ¶ 4 (detailed summary of disputes, with corroborating correspondence).) They have provided conflicting instructions as to what company is to be the buyer, and as to how to divide the property. (Gu Decl. ¶ 16.) The respondents cannot proceed without a consensus path forward. (Yu Decl. ¶ 32.)

**Damages Under Order 9**. Even the damages award in Order 9 has been the subject of the Estate's games. (*Id*. ¶ 33.) While Mr. Xu has accepted his portion of the payment, the Estate has refused to provide payment instructions for a bank in Mainland China. (*Id*.) As the Estate well knows, under China's strict currency control laws, it is illegal to pay obligations arising from events in China (such as the damages here, associated with Chinese real estate) outside China in foreign currency. (*Id*.; *see* Wagner Decl.; Wagner Reply Decl.) Ms. Yu tried twice to tender payment to the Estate, but the first attempt (via wire) was rejected, and the second attempt (via check) failed because the Estate refused to deposit the check. (Yu Decl. ¶¶ 33-35.)

## Shanghai Legal Proceedings

On April 3, 2019, at Ms. Yu's direction, Greencourt Properties filed a Civil Complaint in Shanghai, China against SJHC (which the Estate has controlled at relevant times) to force it to cooperate in the first step of the share transfer, namely the transfer of 80% of SJHC's equity to Shibang. (Yu Decl. ¶ 36 & Ex. 13, 14.) The transfer was properly authorized by the SJHC shareholders (Oasis and Greencourt Properties), but SJHC, under the day-to-day control of the Estate, refused to cooperate. (*Id*.) Mr. Xu authorized Shibang to join the lawsuit because, at least as to this aspect of the dispute, he was in agreement with Ms. Yu. (*Id*.)

The Estate's response (via SJHC) reflects more of its obstruction. SJHC argued that any transfer to Shibang was improper because the 2010 Agreement supposedly required Shibang to be a *direct* subsidiary of Oasis, as opposed to being an indirect subsidiary via Greencourt

Properties. (*Id*. ¶ 37.) This would take the transaction outside the special tax rules discussed above, meaning the SJHC transfer to Shibang would be taxable, forcing Oasis to pay substantial tax up front. (*Id*. ¶ 38.)[1] The Estate prefers this approach because it would increase the tax basis of SJHC, resulting in the Estate having a lower taxable gain after the entrustment period. (*Id*.) In short, the Estate wants to avoid taxes at the expense of Ms. Yu and her companies. (*Id*.)

The Estate's position on this point is ridiculous (so much so that even the Estate's co-claimant, Mr. Xu, has rejected it). As an initial matter, it is inconsistent with the Final Award in the arbitration, which directs Oasis to cause its "subsidiary, **Greencourt Properties**, to jointly sign, the Equity Purchase Option Agreement and Entrustment Agreement concerning Shibang Company." (Final Award, at 96 (Order 6) (emphasis added).) Greencourt Properties was to sign these agreements concerning Shibang because it was (and was always supposed be) the parent company of Shibang. (Yu Decl. ¶ 40.) Through five years of the arbitration neither Mr. Ke nor his representatives suggested once that Shibang was supposed to be re-formed under a different parent company. (*Id*.) In fact, Shibang was established as a subsidiary of Greencourt Properties (not Oasis) back in 2009 when both Messrs. Ke and Xu were directors. (*Id*. Ex. 15; Ex. 16.) They agreed to its formation for exactly the purpose of holding the SJHC equity. (Yu Decl. ¶ 41.) The 2010 Agreement states that Greencourt Properties (not Oasis) is the company that is to "entrust[]" control of Shibang to the companies of Messrs. Ke and Xu: "Cheergain International Group Limited and Focus Town Limited are entrusted **by Greencourt Properties** to manage Shibang Company." (2010 Agreement § 2.3.2 (emphasis added).) The Estate's new position, first advanced after 10 years of never questioning Shibang's formation or the transfer structure, is

---

[1] To qualify, the seller must directly own 100% equity in the buyer (among other requirements) and agree not to transfer the buyer's equity within three years. (Yu Decl. ¶ 38.) Greencourt Properties transferring SJHC's equity to its own subsidiary, Shibang, would qualify, but transferring the equity to its parent, Oasis, would not. (*Id*.; *see also* Yu Decl. Ex. 21, at 8-9.)

contrived. Even beyond the points above, there are clear procedural problems with SJHC trying

to have the Shanghai court re-write the 2010 Agreement and the Final Award:

- The Shanghai civil court had no power to enforce the 2010 Agreement because that Agreement makes clear that disputes are to be resolved in arbitration (which already resulted in a clear Order reflecting Shibang as a Greencourt Properties subsidiary).

- SJHC is the defendant in the case, but is *not* a party to the 2010 Agreement, and hence lacks standing to enforce its terms.

- Similarly, while Messrs. Ke and Xu were the parties to the 2010 Agreement, they were not parties to the civil case in Shanghai.

(Yu Decl. Ex. 17, at 9-10; Ex. 18, at 6-7; Ex. 23, at 2-4; Ex. 23, at 2.)

**The Arbitral Tribunal Issues Its Costs and Interest Ruling, Including a Correction**

While the proceedings were ongoing in Shanghai, the arbitral tribunal issued two rulings

(an initial decision and a clarification) that the Estate is seeking to enforce here.

The first is a ruling dated March 16, 2020, in which the arbitral tribunal awarded the

claimants certain of the costs of the arbitration, and interest. (the "March 2020 Costs and

Ruling"). (*Id*. Ex. 19.) As is relevant here, the Estate argued that the respondents should pay

pre-award interest on Order 8 from December 2012 through the date of the award in February

2018 (a period of over five years) and should pay pre-award interest on Order 9 (the damages

award) for a period of approximately six months. (*Id*. at 15 (¶ 39).) The pre-award interest rate

the Estate proposed was the Hong Kong "prime" rate (currently 5%), plus 1%, compounding

annually. (*Id*. 15-16 (¶¶ 40-41).) The Estate argued that post-award interest should accrue at the

Hong Kong statutory rate of 8%. (*Id*. at 16 (¶¶ 42-43).)

The respondents argued that, if any interest is to be awarded for Order 8, the interest rate

should be lower, and the interest period should be 36 months only. (*Id*. at 35 (¶ 72).) The

proposal of 36 months was based on taking the length of arbitration proceedings, and subtracting

the period when, through no fault of the respondents, the arbitration was delayed by proceedings associated with the Estate substituting for Mr. Ke. (*Id*. at 26 (¶ 61(2)).)

The tribunal largely adopted the respondents' position, and stated: "The arbitration tribunal holds the opinion that the method of calculation of the Respondents is reasonable and adopted." (*Id*. at 41 (¶ 102).) The relevant Order directed the respondents to pay "[s]imple interest with the principal amount of RMB 145,974,006 multiplied by the interest rate which is the most preferential loan interest rate of HSBC in Hong Kong plus 1%." (*Id*. at 42 (¶ 108).)

The respondents asked the tribunal to clarify and correct the award, because (among other things) the initial decision did not properly distinguish the interest and payment obligations between Orders 8 and 9. (Yu Decl. ¶ 48.)

On June 26, 2020, the tribunal issued its ruling on the respondents' application (*Id*. Ex. 20 (the "June 2020 Costs and Interest Ruling").) Here, too, the tribunal largely sided with the respondents, and modified the paragraph concerning interest to state as follows:

> According to the 8th and 9th orders of the arbitral tribunal in the Final Award (Except Interest and Arbitration fees), the respondents must pay interest. The calculation method of the interest is: (i) RMB 135,627,795 of the principal × simple interest (HSBC prime rate + 1%) × 36 months of interest period (applicable to the 8th order of the Final Award); + (ii) RMB 10,346,211 of the principal × simple interest (HSBC prime rate + 1%) × 204 days of interest period (from 8 August 2017 to 28 February 2018) (applicable to the order of the Final Award).

(*Id*. at 12 (¶ 44).) Most important for purposes of this motion, the interest period for the Order 8 payment is a fixed "36 months"; the period does not run indefinitely into future. There is nothing in the Costs and Interest Rulings, nor did anything occur in the arbitration, to suggest that the tribunal was blaming all the delays, past and future, on the respondents. (Yu Decl. ¶ 50.)

**Further Proceedings in Shanghai Civil Court**

On June 30, 2020, just a few days after the June 2020 Costs and Interest Ruling from the arbitral tribunal, the civil court in Shanghai issued its judgment. (*Id.* Ex. 21.) The court found that the SJHC transfer would have negative tax implications for the claimants, and so the court directed the parties to "negotiate" to come up with a "new agreement" as to how to allocate the tax burdens before the SJHC transfer occurs:

> [T]he court holds that the controlling shareholder and the participating shareholders should negotiate on the tax burden under the circumstance that special tax treatment may be applied to the equity transfer involved in the case, in order to reach a new agreement, and the plaintiff may not separately request the equity transfer before a new agreement is formed.

(*Id.* at 9.) Additionally, the court found that the transfer of SJHC's equity could not be accomplished without unanimous consent of the board; a resolution from all the shareholders was not enough. (*Id.* at 10.)

Greencourt Properties and Shibang have appealed. (Ex. 22, 23 (appeal briefs).) Among the many errors in this ruling is that, as discussed above, Messrs. Ke and Xu agreed from the start to structure the transaction to take advantage of special tax treatment that they are now disputing. (*Id.*) And, as discussed, the lower court did not have authority to re-write the arbitral award, or to enforce the SJHC's supposed interests in the 2010 Agreement, when it is not even a party to that contract. (*Id.*) A hearing on the appeal took place on October 27, 2020, and Greencourt Properties and Shibang expect to prevail. (Yu Decl. ¶ 53.)

Even if the appeal is unsuccessful, and the lower court judgment is upheld, the broader point remains that Ms. Yu requires cooperation from the other stakeholders to complete the transaction—and hence cannot be presumed to be responsible for delays going forward. If the parties are required to "negotiate" the tax consequences, those negotiations will be heavily impacted by a ruling that Ms. Yu is responsible for paying 6% throughout the negotiations, no

matter what. (Yu Decl. ¶ 54.) Further, it is highly doubtful that the SJHC board, which includes Mr. Xu and representatives of the Estate, will agree to proceed as outlined in the 2010 Agreement and Final Award, meaning that, if the decision stands and if this Court agrees to award post-award interest on Order 8, Ms. Yu faces the prospect of accruing interest indefinitely, while the Estate holds out for a more advantageous transaction. (*Id.*)

**Procedural History**

In November 2018, the Estate filed a Petition, and later an Amended Petition, to enforce the Final Award against Ms. Yu in Maryland, where she lives. (18-cv-03546, ECF 1, 35.) Ms. Yu moved to dismiss based on *forum non conveniens* (enforcing the award involves complex regulatory issues that cannot be adjudicated here), Rule 19 joinder (Mr. Xu is a necessary party), mootness (Ms. Yu tendered the Order 9 payment), and public policy (paying Order 9 here would cause Ms. Yu to break Chinese law). (*See generally* 18-cv-03546, ECF 40-01.)

In February 2020, the Court denied Ms. Yu's motion and ruled that the Final Award should be enforced as a judgment. (18-cv-03546, ECF 53.) The Court noted that "[f]ederal courts have discretion to award post-award, prejudgment interest in actions under the New York Convention," and directed the parties to submit letter briefs on the that issue. (*Id* at. 19-20.) The parties provided the Court with competing forms for a judgment, and several letters addressing their divergent positions. (18-cv-03546, ECF 54-58.) The primary dispute with respect to this form of judgment was and remains whether and at what rate to award post-award interest.

On August 5, 2020, before the Court resolved disputes as to post-award interest or issued a judgment in the first case, the Estate filed a second petition to enforce the new Costs and Interest Rulings. (20-cv-02260, ECF 1.) On October 19, 2020, the Court "so ordered" a stipulation by which the parties agreed to (i) consolidate the two cases, (ii) preserve Ms. Yu's arguments on the first petition for purposes of the second, and (iii) establish a briefing schedule

for the Court to rule on their competing forms of a consolidated final judgment. (20-cv-02260, ECF 19; 18-cv-03546, ECF 69.) This brief is submitted pursuant to that stipulation and order.

## DISCUSSION

### I. THE COURT SHOULD NOT IMPOSE POST-AWARD, PREJUDGMENT INTEREST FOR ORDER 8

As detailed below, the Court should not impose post-award prejudgment interest for Order 8 because the (1) tribunal's Orders provide for 36 months' of *pre*-award interest *only*, and because (2) the tribunal cold not have possibly intended otherwise, given the conditional nature of Order 8. The Estate's primary response relies, as discussed below, on a misreading of a portion of the March 2020 Costs and Interest Ruling that was not part of the operative Orders.

### A. The Tribunal Did Not Impose Post-Award Interest for Order 8

The Court has recognized that it has discretion to impose post-award, prejudgment interest. (18-cv-03546, ECF 53, at 19.) However, an important qualifier is that when an arbitral award "give[s] pre-award interest . . . its 'silence' on the subject of post-award interest strongly suggests by negative implication that the arbitrators contemplated and rejected a similar treatment of the interest received after the award was rendered." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 83 (2d Cir. 2011); *see also*, *e.g.*, *CSX Transp., Inc. v. Transportation–Comm. Int'l Union*, 413 F. Supp. 2d 553, 572 (D. Md. 2006), *aff'd*, 480 F.3d 678 (4th Cir. 2007) (no prejudgment interest where underlying awards did not provide for it). And when an arbitral tribunal decides "not to award prejudgment interest," courts are appropriately "loathe to disturb" that decision. *Norwest Corp. v. Vulcan Cap. Mgmt., Inc.*, 06 Civ. 6342, 2008 WL 11516925, at *1 (S.D.N.Y. Oct. 7, 2008).

Here, the arbitral tribunal chose to award pre-award interest for Order 8, but declined to award post-award interest, as the claimants had sought. The relevant Order from the June 2020

Costs and Interest Ruling states plainly that the interest period for Order 8 is "36 months." (June 2020 Costs and Interest Ruling at 12 (¶ 44).) That was based on a proposal by Ms. Yu and the other respondents focused on *pre-award* events. Specifically, 36 months was the length of the arbitration, less delays for which the respondents could not be responsible. (March 2020 Costs and Interest Ruling at 26 (¶ 61(2)).) If the tribunal wanted interest on Order 8 to carry forward indefinitely, it would have said so, instead of fixing a specified period.

### B.     Ms. Yu Should Not Be Forced to Pay Interest for an Obligation That Has Preconditions She Cannot Satisfy Without the Estate's Cooperation

This reading of the Costs and Interest Rulings is the only one that is consistent with the basic purpose adding interest to judgments—to compensate the prevailing party for its "inability to use the funds that should have been in its hands at some earlier time." *Ambling Mgmt. Co. v. Univ. View Partners LLC*, No. WDQ-07-2071, 2011 WL 4103098, at *10 (D. Md. Sept. 9, 2011) (alteration and citation omitted); *see also In re Cybermech, Inc.*, 13 F.3d 818, 823 (4th Cir. 1994) (interest compensates prevailing party for "use of those funds that were wrongfully withheld"). Here, the Order 8 payment is concededly "*conditional* on completion of [the] other steps" (*see* 18-cv-03546, ECF 43-1 [Decl. of Ke Yeying] ¶ 14 n.5 (emphasis added)), and, as discussed, the other steps require the cooperation of various stakeholders, including the Estate.

It is inconceivable that the tribunal would have imposed interest obligations on the respondents immediately, as if the conditions had been satisfied already or as if the respondents were to be deemed fully responsible for all future delays. In other contexts, courts refuse to impose interest on conditional obligations before the conditions are satisfied. We have not found a Fourth Circuit case directly on point, but other courts have recognized this commonsense logic.

For example, in *Dormitory Authority of New York v. Continental Casualty Co.*, 756 F.3d 166 (2d Cir. 2014), a college sued it architects for having underestimated the steel necessary for

a building and, separately, for designing a facade that caused excessive ice and snow to fall onto the sidewalks below. *Id*. at 168. The architecture firm's insurer agreed to a settlement with the college by which it paid $3 million up front, and, if the court were to determine the steel and facade problems were "related" (and hence fell under one policy limit) the insurer would pay another $3 million. *Id*. at 169. The district court found the issues were not related, but awarded pre-judgment interest on the second $3 million dating back to the settlement. The Second Circuit held this was an abuse of discretion: "Interest does not start accruing until there is an obligation to pay. The obligation to pay under the settlement agreement was not triggered until the district court entered a judgment . . . on the relatedness issue." *Id*. at 170.

Similarly, in *Andrulonis v. United States*, 26 F.3d 1224 (2d Cir. 1994), both the United States and New York State governments were liable under a judgment in a wrongful death case arising from a lab accident. *Id*. at 1227. The judgment called for the United States to make a payment to the plaintiff of approximately $5.3 million, and then for New York State to contribute to the United States approximately $3.6 million, as an offset. *Id*. Because of an appeal and other delays, the United States did not pay the plaintiff until three-and-one-half years later, but nonetheless sought post-judgment interest against New York for the intervening period, on the theory that interest should run from entry of the judgment. *Id.* at 1229-30. The Second Circuit rejected this argument, concluding that the original judgment should be construed as "one awarding damages conditioned upon the [federal] Government's payment to" the plaintiff. *Id*. at 1234-35. Accordingly, interest could not be "calculated on the contingent amount awarded in the judgment before the date the contingency was satisfied." *Id*. at 1235. The court added: "To hold otherwise would obligate [litigants] to pay interest on judgments before they incurred any obligation to pay the principal," which would be "an absurd result." *Id*.

Here, too, requiring Ms. Yu to pay interest on Order before she "incurred any obligation to pay the principal" would be "an absurd result." And the result would be even more absurd considering that, as detailed above, the Estate has for years *impeded* the satisfaction of the conditions to Order 8, so as to gain an advantageous tax position, at the expense of Ms. Yu and her companies. Courts recognize that it is "grossly unfair to make [one party] pay interest which accrued solely due to the intransigence" of the other side. *Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996), and that is exactly the situation here.

To be sure, whether the Court finds that the Estate is responsible for the delay, the broader point holds: neither the arbitral tribunal nor this Court can be expected to decree in advance that all post-award delay, past and future, should be blamed on Ms. Yu, so that she must pay interest indefinitely. Nor should Ms. Yu be forced to choose between finally achieving the transfer of SJHC and paying Order 8 early to stop the interest. To the extent the Court concludes that the award as written leaves room for the Court to exercise any discretion on these issues, these same reasons counsel against awarding post-award interest with respect to Order 8.

C.     **The Estate Is Wrong to Read the March 2020 Costs and Interest Ruling as Imposing Post-Award Interest for Order 8**

The Estate's apparent basis for seeking post-award interest is one paragraph in the March 2020 Costs and Interest Ruling which refers to the respondents paying interest "until [they] pay off the money": "[T]he arbitral tribunal may, at its discretion, determine the interest to be paid for the amount awarded not at the judgment rate (currently 8% per annum) . . . [A] more reasonable approach should be to adopt the most preferential loan interest rate of Hong Kong HSBC plus 1% as the applicable interest rate after the arbitration award until the Respondents pay off the money." (March 2020 Costs and Interest Ruling, at 41 (¶ 103).)

At the outset, whatever the tribunal intended by this passage, the language above did not make it into the "Orders" section of the either of the Costs and Interest. The governing Order could not be clearer that the interest period is 36 months, not an open-ended period. (June 2020 Costs and Interest Ruling at 12 (¶ 44).) This is important because under the practice of the arbitral tribunal, an award will typically include separately-denominated section, as here, setting forth exactly the "orders to be carried out by the parties." Michael J. Moser, A Guide to the HKIAC Arbitration Rules § 11.01(5) (2016) (excerpt attached as Ex. A).

The Estate has recognized the primacy of the "Orders" component of Hong Kong arbitral rulings because it asks the Court here to enter judgment as follows: "The Costs and Interest Award is confirmed, and **its Orders** are hereby entered as the judgment of the Court." (Yu Decl. Ex. 2 ¶ 3 (emphasis added); *see also* 18-cv-03546, ECF 54, at attachment ¶ 1 (prior form or proposed judgment from the Estate with similar language).) In the same way that, under Rule 58, a judgment in federal court "should be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition," *Otis v. City of Chicago*, 29 F. 3d 1159, 1163 (7th Cir. 1994), the Orders of an arbitral ruling provide the "self-contained" statement of the relief awarded. Consistent with that point, the Court cannot be expected enter a judgment that incorporates by reference the 160-plus pages of arbitral rulings at issue, but instead the Court will need to set forth directly the relief awarded. *Trustmark Ins. Co. v. John Hancock Life Ins. Co*., No. 04 C 2649, 2004 WL 1376409, at *1 (N.D. Ill. June 17, 2004) (a proper judgment confirming arbitral award is one that "says who is liable for how much, then stops") (citation omitted). That is exactly the information the Orders are designed to supply.

Even if the passage above were considered part of the tribunal's Orders (and it is not), it is best read as intending to vary the statutory interest rate under Hong Kong law of 8%, which

the Estate wanted to apply. What the tribunal appears to be saying is that, *if* an enforcement court were to later apply post-award interest, the rate should be *lower* than the 8% statutory rate. Thus, for example, if the conditions for Order 8 were satisfied at some point in the future, the tribunal may be indicating that the interest rate from that time would vary from the default statutory rule (assuming enforcement in Hong Kong). Notably, there is nothing in either of the Costs and Interest Rulings to suggest that the tribunal was expecting Ms. Yu to unilaterally satisfy the preconditions under Order 8, or to suggest that future delays were her responsibility.

Finally, it is telling that, earlier in this litigation, the Estate appeared to *assume* there would be no post-award interest for Order 8. Before the Costs and Interest Rulings were issued, the Court directed the parties to submit competing forms of judgement as to the Final Award. (18-cv-03546, ECF 53, at 19-20.) The Estate's proposed judgment sought post-award interest *for Order 9 only*, seemingly recognizing that no interest could accrue on the *contingent* obligation in Order 8. (18-cv-03546, ECF 54.) That was the correct position then, and should still be now.

## II.    THE COURT SHOULD NOT IMPOSE POST-AWARD PREJUDGMENT INTEREST FOR ORDER 9

The same Order that specifies a fixed (not open-ended) period of interest for Order 8 also specifies a fixed period for Order 9: "204 days of interest period (from 8 August 2017 to 28 February 2018)." (June 2020 Costs and Interest Ruling at 12 (¶ 44).) For the same reasons as above, this clear directive should be enforced as written.

To the extent the Court concludes that post-award interest nonetheless falls within its discretion, the Court should decline to award any post-award interest for Order 9, because Ms. Yu has repeatedly acted in good faith in trying to pay the Estate. (Yu Decl. ¶¶ 35-36.) Ms. Yu recognizes and respects that the Court has conclude that Order 9 may be enforced in the United States, but Ms. Yu's view to the contrary is at a minimum based on a reasonable interpretation of

an unsettled area of law. While the Court's ruling states that "Stephany Yu simply asserts, without citing any authority, that she might be placed at legal risk" for paying outside China (18-cv-03546, ECF No. 53, at 14), Ms. Yu provided translations of the relevant Chinese laws and regulations, along with two detailed expert declarations explaining their implications for Ms. Yu. (Wagner Decl; Wagner Reply Decl.) The cited authorities include a law prohibiting foreign exchange transactions "where such funds should be collected or paid in Renminbi" (or, "RMB," the Chinese currency) (Wagner Decl. ¶¶ 12-14 & Ex. 8, at 10 (Art. 40)), and a regulation prohibiting "evading" the currency control laws by "any . . . means"—which has been applied to all manner of creative attempts to skirt currency restrictions. (*Id.* ¶¶ 12, 18-19 & Ex. 12, at 1; *see also* Wagner Reply Decl. ¶ 6.) In response, the Estate ignored these authorities, instead submitting a declaration from a Chinese lawyer who opined, without any support, that "China's foreign currency control applies only to transactions within China (or related to Chinese territory)." (18-cv-03546, ECF 43-2 [Gao Decl.] ¶ 9.) That statement is contradicted by the above authorities, but, regardless, the payment is clearly "related to Chinese territory," since it represents lost rent for Chinese real estate, owing from a Chinese business to a Chinese national.

The Estate has also argued, citing zero evidence, that as a Hong Kong estate, it is unable to accept RMB in China. In fact, the Estate is not a separate legal entity under Hong Kong law, and cannot negotiate payments in any country except via its Chinese administrators, Mr. Ke's wife and daughter. (Wagner Reply Decl. ¶¶ 7-16.) Ms. Yu put forth substantial and undisputed evidence that, contrary to their representations to the Court, the Estate's administrators *can* receive RMB in China, including that they control the daily operations SJHC, a large real estate business in China. (First Yu Decl. ¶¶ 45-49 & Exs. E-I.) While we recognize that interest might ordinarily accrue for unconditional payment obligation such as Order 9, under these unique

circumstances, where it is clear Ms. Yu acted in good faith in the face of severe legal risks, the Court should exercise its discretion to decline awarding any prejudgment interest for Order 9. *See Protogyrou v. Lines*, No. 93-2271, 1994 WL 673635, at *2 (4th Cir. Dec. 2, 1994) (court may deny prejudgment interest where "'peculiar circumstances' would make it inequitable").

## III. THE FINAL JUDGMENT SHOULD STATE THAT IT BINDS ONLY THE PARTIES TO THIS PROCEEDING

The underlying arbitration had six parties, but only two are before the Court. The others cannot be bound this Court's judgment because of the basic principle "that one is not bound by a judgment . . . in which he is not designated as a party." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996) (citation omitted). Ms. Yu's proposed judgment would make this point clear, via the following clause that the Estate insists on omitting: "The Final Award and Costs and Interests Rulings are confirmed, and their Orders are hereby entered as the judgment of the Court, **but only insofar as those Orders by their terms impose obligations upon the parties before the Court, the Estate and Stephany Yu**." (Yu Decl. Ex. 1 ¶ 1 (emphasis added).)

The Estate does not dispute the merits of this point, but objects to including this clause for reasons that are unclear. Particularly because a judgment here may be enforced abroad, the Court should avoid the risk of mischief or confusion by making clear who is bound.

## CONCLUSION

For the stated reasons, the Court should enter Ms. Yu's proposed form of consolidated, final judgment.

Dated: November 16, 2020

Respectfully submitted,

STEPTOE & JOHNSON LLP

By: ___/s/ Michael J. Baratz_____
    Michael J. Baratz (Bar No. 16391)
    1330 Connecticut Ave NW
    Washington, D.C.
    (202) 429-3000
    mbaratz@steptoe.com

Charles Michael*
(signed by Michael J. Baratz with permission
of Charles Michael)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com
*Admitted pro hac vice

*Counsel for Respondent Stephany Yu*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2020, copies of the foregoing

Brief in Support of Respondent Stephany Yu's Proposed Form of Consolidated Final Judgment,

accompany exhibit, Declaration of Stephany Yu and accompany exhibits were served via the

Court's CM/ECF system to all counsel and parties receiving electronic notice of pleadings filed

in this case.

    */s/ Michael J. Baratz*
Michael J. Baratz (Bar No. 16391)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
mbaratz@steptoe.com

*Counsel for Respondent Stephany Yu*